## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALLISON GAY, SANDAHL NELSON, MOLLY MARTIN and GENEVIEVE GAMEZ, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) |  **No**: **14-cv-60604-KMM** |

ALLISON GAY, SANDAHL NELSON, MOLLY MARTIN and GENEVIEVE GAMEZ, On Behalf of Themselves and All Others Similarly Situated, )))))

Plaintiffs,

vs.

TOM'S OF MAINE, INC.,

Defendant

**No**: **14-cv-60604-KMM**

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, Allison Gay, Sandahl Nelson, Lorette Kenney, Claudia Morales, Molly Martin and Genevieve Gamez (collectively, "Plaintiffs"), allege, upon personal knowledge as to themselves and their own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as follows:

## NATURE OF ACTION

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices engaged in by Defendant Tom's of Maine, Inc. ("Tom's" or "Defendant"), with respect to the marketing and sales of its "natural" consumer products that include toothpaste, deodorant/antiperspirant, soap, body wash, shampoo, hand/body lotion, and mouthwash (the

"Product(s)") that were sold without providing consumers with adequate information to determine whether he/she deemed the Products "natural."[1]  Specifically, when Plaintiffs purchased the Products, neither the website nor Product labels contained sufficient information as to what "natural" means to Defendant.

2.       Defendant manufactured, marketed, sold, and distributed the Products using a marketing, advertising and labeling campaign that centered on representations that are intended to, and do, convey to consumers that the Products are "natural" products that contain only "natural" ingredients ("Natural Claims").  However, Defendant's representations are false and misleading because the Products contain numerous ingredients (as detailed below) that are synthetic or heavily processed, and Defendant fails to provide adequate information for a reasonable consumer to determine whether he/she believes the Products are "natural."

3.       When Plaintiffs purchased the Products they relied on Defendant's Natural Claims and misrepresentations, which were intended to convey the message that the Products are natural.  Plaintiffs were not provided with sufficient information regarding Defendant's intended meaning of "natural." Plaintiffs and the Class (defined below) paid premium prices for the Products over comparable products that do not purport to be "natural."

4.       By relying on the representations that the Products are natural, Plaintiffs and the Class have been damaged and suffered an ascertainable loss in that they purchased Products that cost more per ounce than products that do not claim to be natural.  Plaintiffs and the members of the Class did not receive the benefit of the bargain when they purchased the Products.  Instead, they received products that, contrary to Defendant's representations, were, they did not believe were natural because Defendant failed to provide adequate information for a consumer to determine to whether he/she deems the Products "natural."

---

[1] The full universe of Products encompassed by this litigation are listed in Exhibits A – F, attached hereto.

5.      Through the marketing and sale of the Products, Defendant deliberately conveyed a singular message: the Products are natural.  However, Defendant does not adequately explain what natural means in the context of the Products.  Accordingly, a reasonable consumer would not expect the Products to contain synthetic or heavily processed ingredients.

6.      Defendant knows that consumers are willing to pay a premium for natural, healthy products and advertised its Products with the intention that consumers rely on the Natural Claims made on the label.  Defendant's claims are deceptive and misleading as they failed to provide adequate information to the consumer to evaluable the alleged "natural" quality of the Products.  Defendant knew, at the time it began selling the Products, that they contained synthetic and/or heavily processed ingredients and still failed to provide information to consumers explaining its definition of "natural."

7.      Reasonable consumers, such as Plaintiffs, do not have the specialized knowledge necessary to identify the ingredients in the Products as being inconsistent with the Natural Claims.  Plaintiffs read and relied on the Natural Claims made by Defendant in connection with purchasing the Products.

8.      This class action seeks to provide redress to consumers who have been harmed by the false and misleading marketing practices Defendant has engaged in with respect to the Products.  Defendant's conduct includes the practice of disseminating false and misleading information concerning the Products through its advertising and via the Product labels.  These efforts by Defendant were intended to induce unsuspecting consumers, including Plaintiffs and the members of the Class, into purchasing the Products at a premium price.

9.      Plaintiffs assert claims on behalf of themselves and the Class for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. ("FDUPTA" or the

"Act"); Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §325F.69; Unlawful Trade

Practices Act, Minn. Stat. §325D.13; Deceptive Trade Practices Act, Minn. Stat. §325D.44; and

False Statement in Advertising Act, Minn. Stat. §325F.67; California Consumers Legal

Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*; California False Advertising

Law, California Business & Professions Act, section 17500, *et seq.*; California Unfair

Competition Law, California Business & Professions Code, section 17200, *et seq.*; breach of

express warranty and unjust enrichment.

10.     Through this action, Plaintiffs seek injunctive relief, actual damages, restitution,

and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief

available to the Class as a result of Defendant's unlawful conduct.

## PARTIES

11.     Plaintiff, Allison Gay ("Plaintiff Gay"), is, and at all times relevant to this action

has been, a resident and citizen of Fort Lauderdale, Florida.

12.     Plaintiff, Sandahl Nelson ("Plaintiff Nelson"), is, and at all times relevant to this

action has been, a resident and citizen of San Diego, California.

13.     Plaintiff, Lorette Kenney ("Plaintiff Kenney"), is, and at all times relevant to this

action has been, a resident and citizen of Manteca, California.

14.     Plaintiff, Claudia Morales ("Plaintiff Morales"), is, and at all times relevant to this

action has been, a resident and citizen of Monrovia, California.

15.     Plaintiff, Molly Martin ("Plaintiff Martin"), is, and at all times relevant to this

action has been, a resident and citizen of Minneapolis, Minnesota.

16.     Plaintiff, Genevieve Gamez ("Plaintiff Gamez"), is, and at all times relevant to

this action has been, a resident and citizen of La Mirada, California.

17.     Tom's is a Maine corporation and, at all times relevant to this action, has maintained its principal place of business in Kennebunk, Maine.  Tom's, thus, is a citizen of Maine.  Tom's sold the Products (touting the Natural Claims) through retail stores, the Internet, and also through television and other advertisements, all of which led consumers to purchase the Products.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class members and Defendant are citizens of different states.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Plaintiff Gay is a resident of this judicial district, Defendant regularly conducts business throughout this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this judicial district.

## FACTUAL BACKGROUND

**The Products**

20.     This action is brought against Tom's for the benefit and protection of all purchasers of the Products.

21.     The market for natural products is large and growing.  In recent years, consumers have been willing to pay a premium for products they believe to be natural, healthy and/or organic.  *Natural Foods Merchandiser* magazine's 2010 Market Overview reported significant growth for the natural and organic products industry.  With more than $81 billion in total revenue in 2010, the industry grew seven percent during 2009—thus motivating companies like

Tom's to market its products as "natural." *See* http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-sales-hit-81-billion-122958763.html.

22.     The Products are manufactured by Defendant and purport to contain only natural ingredients with no further explanation as to the nature of the ingredients in the Products. Unbeknownst to Plaintiffs, however, the Products purchased during the Class Period contained unnatural, synthetic and chemically-processed ingredients.

23.     The labeling and marketing communicated a straightforward, material message – that the Products are natural.

24.     The core representations alleged to be false and misleading, that the Products are natural, are contained on the principal display panel ("PDP") of the labels for every purchaser to read.

25.     Throughout the United States, Tom's markets and sells toothpaste products ("Toothpaste Products") that conspicuously state on the labels that they are "natural." Furthermore, at the time of Plaintiffs' purchases, on its website, located at www.tomsofmaine.com, Tom's represented that its Toothpaste Products are "natural" and contain only "natural ingredients" that are subject to only "minimal processing." Tom's failed to disclose any additional information regarding the processing of the ingredients contained in the Products. In addition, the packaging on some of the Toothpaste Products incorporates phrases reinforcing the image that the Products are natural. For example, Peppermint Fluoride-Free Antiplaque & Whitening states "Embrace the Power of Mother Nature!" and Wicked Cool! Fluoride claims ". . . it cleans your teeth using natural ingredients."

26.     Throughout the United States, Tom's markets and sells deodorant/antiperspirant products ("Deodorant/Antiperspirant Products") that conspicuously state on the labels that they

are "natural."  Furthermore, at the time of Plaintiffs' purchases, on its website, located at

www.tomsofmaine.com, Tom's represented that its Deodorant/Antiperspirant Products are

"natural" and contain only "natural ingredients" that are subject to only "minimal processing."

Tom's failed to disclose any additional information regarding the processing of the ingredients

contained in the Products.

27.     Throughout the United States, Tom's markets and sells soap products ("Soap

Products") that conspicuously state on the labels that they are "natural."  Furthermore, at the time

of Plaintiffs' purchases, on its website, located at www.tomsofmaine.com, Tom's represented

that its Soap Products are "natural" and contain only "natural ingredients" that are subject to only

"minimal processing."  Tom's failed to disclose any additional information regarding the

processing of the ingredients contained in the Products.

28.     Throughout the United States, Tom's markets and sells hand and body lotion

products ("Hand and Body Lotion Products") that conspicuously state on the labels that they are

"natural."  Furthermore, at the time of Plaintiffs' purchases, on its website, located at

www.tomsofmaine.com, Tom's represented that its Hand and Body Lotion Products are

"natural" and contain only "natural ingredients" that are subject to only "minimal processing."

Tom's failed to disclose any additional information regarding the processing of the ingredients

contained in the Products.

29.     Throughout the United States, Tom's markets and sells mouthwash products

("Mouthwash Products") that conspicuously state on the labels that they are "natural."

Furthermore, at the time of Plaintiffs' purchases, on its website, located at

www.tomsofmaine.com, Tom's represented that its Mouthwash Products are "natural" and

contain only "natural ingredients" that are subject to only "minimal processing." Tom's failed to

disclose any additional information regarding the processing of the ingredients contained in the Products.

**The Products Are Not Natural Because They Contain Synthetic and/or Highly-Processed Ingredients, and a Reasonable Consumer Would Not Deem the Products Natural**

30.     As shown above, the PDP on the Products prominently display the word "natural" without sufficient qualification.  The dictionary definition of "natural" includes "existing in or formed by nature (opposed to artificial); not artificially dyed or colored."  *See* http://dictionary.reference.com/browse/natural.

31.     While there is no uniform definition of "natural" ingredients in over-the-counter drugs, no reasonable definition of "natural" includes ingredients that, even if sourced from "nature," are subjected to extensive, transformative chemical processing before their inclusion in a product.  Industry and regulatory definitions of natural are instructive in defining a reasonable consumer standard.  For example, the National Advertising Division of the Better Business Bureau has found that a "natural" ingredient does not include one that, while "literally sourced in nature (as is every chemical substance), . . . is, nevertheless subjected to extensive processing before metamorphosing into the" ingredient that is included in the final product.  *Tom's of Maine (Tom's of Maine Natural Mouthwash)*, Report #3470, NAD/CARU Case Reports 4 (June 1998). In addition, the United States Food and Drug Administration ("FDA") has issued guidance on the term "natural" in the context of food, "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  *Food Labeling*: 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

32.     The United States Department of Agriculture ("USDA") has issued a Food Standards and Labeling Policy Book (Aug. 2005), which states that the term "natural" may be

- 8 -

used on labeling for products that contain processed ingredients only where such ingredients are subjected to "minimal" processing. The policy book recognizes that "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing." Office of Pol'y, Program & Emp. Dev. Food Safety & Inspection Serv., U.S. Dep't of Agric., *Food Standards and Labeling Policy Book* (2005), *available at* http://www.fsis.usda.gov/wps/wcm/connect/7c48be3e-e516-4ccf-a2d5-b95a128f04ae/Labeling_Policy_Book_082005.pdf.

33.    The USDA also defines "Nonsynthetic (natural)" as "[a] substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process. . . ." 7 C.F.R. § 205.2. In contrast, "Synthetic" means "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral sources, . . . ." 7 U.S.C. § 6502 (21).

34.    Given that Defendant's Products include various synthetic, highly processed, and otherwise unnatural ingredients, as detailed below, with no qualification, the PDP labels are false and misleading.

**The Unnatural Ingredients**

35.    Contrary to Defendant's representations, Tom's Toothpaste Products contain the following ingredients, which, a reasonable consumer without any explanation as to the meaning of "natural" would consider non-natural:

a. ***Xylitol and Sorbitol***. Xylitol and sorbitol are sweeteners derived from the crushed fibers of sugar cane using a multi-step chemical reaction that involves the use of sulfuric acid, calcium oxide, phosphoric acid and active charcoal.

b. ***Sodium Lauryl Sulfate (SLS)***.  SLS is a highly chemically-processed surfactant, detergent, and emulsifier sourced from fatty acids that are extracted from coconut or palm oil, which are then chemically converted into esters and hydrogenated through the addition of chemicals to produce fatty alcohol.  The fatty alcohol is then sulfated and neutralized through further chemical processing to yield the final ingredient.

c. ***Glycerin***.  Glycerin is an emollient, a compound that helps a product retain water.  According to the FDA, glycerin is a synthetic substance.  7 C.F.R. 205.603(a)(12).  The glycerin used in the Toothpaste Products is not "natural," but is instead manufactured through a chemical process known as saponification, in which fat molecules in vegetable oil are chemically altered using sodium hydroxide, a highly toxic chemical.

d. ***Xanthan Gum***.  Xanthan gum is a thickening agent that, according to FDA regulations, is a synthetic substance.  7 C.F.R. 205.605(b).  Xanthan gum is not "natural" but is instead manufactured through the fermentation of carbohydrates and subsequent treatment of the byproduct with isopropyl alcohol.

e. ***Sodium Hydroxide***.  Sodium hydroxide, commonly known as lye, is used to reduce the acidity of a product.  Sodium hydroxide is not "natural," but instead is manufactured by breaking down saltwater into sodium, chlorine, hydrogen, and hydroxide ions through electrolysis, and then recombining the sodium and hydroxide ions to form sodium hydroxide.

36.     Contrary to Defendant's representations, Tom's Deodorant/Antiperspirant Products contain the following ingredients, which are not natural:

a. ***Propylene Glycol***.  Propylene glycol is a stabilizer that is manufactured from petroleum through a complex, multi-step process that changes the substance's chemical composition and involves the use of toxic chemicals.  Propylene glycol is not "natural"; it is a

man-made, synthetic ingredient.

b. *Propanediol*.  Propanediol is a stabilizer that is manufactured by fermenting corn sugar using genetically modified bacteria.  Upon information and belief, Plaintiffs allege that the corn sugar itself is derived from genetically modified corn.  Genetically modified organisms ("GMO") is one in which the organism's genetic material has been altered so that the organism displays traits that do not occur in nature.  GMOs are not "natural," but instead are synthetic, man-made organisms.

c. *Glycerin*.  Glycerin is an emollient, a compound that helps a product retain water.  According to the FDA, glycerin is a synthetic substance.  7 C.F.R. 205.603(a)(12).  The glycerin used in the Deodorant/Antiperspirant Products is not "natural" but is instead manufactured through a chemical process known as saponification, in which fat molecules in vegetable oil are chemically altered using sodium hydroxide, a highly toxic chemical.

d. *Sodium Stearate*.  Sodium stearate is a thickening agent that, like glycerin, is manufactured through the process known as saponification, which involves the chemical alteration of fat molecules.

e. *Ascorbic Acid*.  Ascorbic acid is a preservative that, according to FDA regulations, is a synthetic substance.  7 C.F.R. 205.605(b).  Plaintiffs allege, upon information and belief, that the ascorbic acid that Tom's uses in the Deodorant/Antiperspirant Products is derived from genetically modified corn using genetically modified bacteria.

f. *Aluminum Chlorohydrate*.  Aluminum chlorohydrate absorbs moisture and is manufactured by treating aluminum with hydrochloric acid, thereby changing its chemical composition.

37.     Contrary to Defendant's representations, Tom's Soap Products contain the following ingredients, which, a reasonable consumer without any explanation as to the meaning of "natural" would consider non-natural:

a. **Tocopheryl Acetate**.  Tocopheryl acetate is a preservative that is not natural, but is instead manufactured by combining tocopheryl with acetic acid, thereby changing the chemical composition of both.  Furthermore, upon information and belief, Plaintiffs allege that the acetic acid that Tom's uses in this formula is produced by combining methanol with carbon monoxide, both of which are toxic substances.

b. **Sodium Gluconate**.  Sodium gluconate is a preservative.  Upon information and belief, Plaintiffs allege that the sodium gluconate used in the Soap Products is derived from genetically modified corn.  GMOs are not "natural"; they are synthetic, man-made organisms.

c. **Glycerin**.  Glycerin is an emmolient that, according to the FDA, is a synthetic substance.  7 C.F.R. 205.603(a)(12).  The glycerin used in the Soap Products is not "natural" but is instead manufactured through saponification, whereby fat molecules in vegetable oil are chemically altered using sodium hydroxide, a highly toxic chemical.

38.     Contrary to Defendant's representations, Tom's Mouthwash Products contain the following ingredients, which are not natural:

a. **Poloxamer 335**.  Poloxamer 335 is a surfactant, a substance that allows oil-based ingredients to be dissolved into a water-based solution.  Poloxamer 335 is derived from natural gas through a complex, multi-step manufacturing process.  Poloxamer 335 is not natural; it is a synthetic, highly-processed substance.

      ***b.  Xylitol and Sorbitol***.  Xylitol and sorbitol are sweeteners derived from the crushed fibers of sugar cane using a multi-step chemical reaction that involves the use of sulfuric acid, calcium oxide, phosphoric acid and active charcoal.

      ***c.  Propanediol***.  Propanediol is a stabilizer that is manufactured by fermenting corn sugar using genetically modified bacteria.  Upon information and belief, Plaintiffs allege that the corn sugar itself is derived from genetically modified corn.  GMOs are not "natural," but instead are synthetic, man-made organisms.

      ***d.     Glycerin.***  Glycerin is an emollient that, according to the FDA, is a synthetic substance.  7 C.F.R. 205.603(a)(12).  The glycerin used in the Soap Products is not "natural" but is instead manufactured through saponification, whereby fat molecules in vegetable oil are chemically altered using sodium hydroxide, a highly toxic chemical.

**Plaintiffs' Experiences**

     39.     The labeling of the Products and the representations therein, were made by Defendant.  Prior to purchase, Plaintiff Gay viewed the labeling of Tom's Whole Care and Cavity Protection toothpastes.  Based on viewing the labeling, Plaintiff Gay reasonably expected that the Toothpaste Products would be natural, which is precisely the message Tom's intended to convey.

     40.     Between August 2013 and October 2013, Plaintiff Gay purchased Tom's Toothpaste Products at a Publix grocery store and Whole Foods grocery store located in Plantation, Florida.  While shopping at the Publix and/or the Whole Foods, Plaintiff Gay shopped for toothpaste and, specifically, was interested in purchasing a natural toothpaste. While shopping for toothpaste, Plaintiff Gay saw boxes of the Toothpaste Products on the store shelf.  Plaintiff Gay took a box of Tom's Whole Care toothpaste off the shelf and read the label.

Plaintiff Gay also examined a box of Tom's Cavity Protection toothpaste.  In doing so, Plaintiff Gay read certain representations on the label, including representations that the Toothpaste Products were "natural" toothpastes.  Based on viewing these representations on the labels, Plaintiff Gay understood that the Toothpaste Product was an natural toothpaste.  As a result of this understanding, and in reliance on the label's claims that the Toothpaste Product was natural, she purchased the Toothpaste Product from the Publix for approximately $3.99, or 84.89 cents per ounce, and from Whole Foods for approximately $4.99, or $1.06 per ounce.  This purchase price was a premium over and above other toothpaste that did not purport to be natural,[2] which Plaintiff Gay was willing to, and did, pay because she understood from the labeling that the Toothpaste Product was natural.

41.    Within the relevant statute of limitations, Plaintiff Nelson purchased Defendant's Toothpaste Products, Deodorant/Antiperspirant Products, Soap Products, and Mouthwash Products from various retail locations in San Diego, California.  Plaintiff Nelson purchased the Products in reliance on the representations on the product label that the Products were "natural." Plaintiff Nelson paid purchase prices for the Products that were a premium over and above other similar products that did not purport to be natural, which Plaintiff Nelson was willing to, and did, pay because she understood from the labeling that the Products were natural.

42.    At various times in 2013 and 2014, Plaintiff Kenney purchased Defendant's Products, including Tom's Clean and Gentle Toothpaste and Tom's Travel Natural Toothpaste. Certain of these purchases were made at the CVS in Manteca, California.  Plaintiff Kenney purchased the Products in reliance on the representations on the Product label that the Products were "natural."  Plaintiff Kenney paid purchase prices for the Products that were a premium over

---

[2] For instance, Crest Complete, Multi-Benefit Whitening toothpaste costs 60.48 cents per ounce at Publix.

and above other similar products that did not purport to be natural, which Plaintiff Kenney was willing to, and did, pay because she understood from the labeling that the Products were natural.

43.     At various times in 2013 and 2014, Plaintiff Morales purchased Defendant's Products, including Tom's Children Toothpaste, Tom's Cavity Protection Toothpaste, and Tom's Simply White Toothpaste.  Certain of these purchases were made at the CVS in Monrovia, California.  Plaintiff Morales purchased the Products in reliance on the representations on the product label that the Products were "natural."  Plaintiff Morales paid  prices for the Products that were a premium over and above other similar products that did not purport to be natural, which Plaintiff Morales was willing to, and did, pay because she understood from the labeling that the Products were natural.

44.     Throughout 2012 and 2013, Plaintiff Martin purchased Defendant's Fennel Fluoride-Free Antiplaque & Whitening Toothpaste and one other variety of Tom's Toothpaste Products.  Plaintiff Martin purchased the Products in reliance on the representations on the Product label that the Products were "natural."  Plaintiff Martin paid purchase prices for the Products that were a premium over and above other similar products that did not purport to be natural, which Plaintiff Martin was willing to, and did, pay because she understood from the labeling that the Products were natural.  Plaintiff Martin would not have purchased Defendant's products had she known they are not, in fact, natural.

45.     In February, 2014, Plaintiff Gamez purchased Defendant's Toothpaste from Walmart in Whittier, California.  Plaintiff Gamez purchased the Products in reliance on the representations on the product label that the Products were "natural."  Plaintiff Gamez paid purchase prices for the Products that were a premium over and above other similar products that

did not purport to be natural, which Plaintiff Gamez was willing to, and did, pay because she understood from the labeling that the Products were natural.

46.     After using the Products as directed, Plaintiffs determined that the Products were not natural as represented and, in fact, contained synthetic, unnatural ingredients.

47.     Had Plaintiffs known that the Products contained synthetic and highly processed ingredients, they would not have purchased the Products and/or paid a premium price for them.

48.     Plaintiffs suffered an ascertainable loss in either the amount of the purchase price of the Products, or the premium they paid for the Products, as a result of the conduct of Defendant described herein, including the fact that the Products were not natural as Defendant represented.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

50.     The Class that Plaintiffs seek to represent is defined as follows:

> All persons who purchased, for personal use and not for resale or distribution, any Tom's of Maine, Inc. toothpaste, deodorant/antiperspirant, soap, body wash, shampoo, hand/body lotion, mouthwash or any other personal or oral care product sold in the United States between March 25, 2009 and the date of the Preliminary Approval of the Settlement of this Action, that contains one or more Covered Ingredients[3] and is labeled as natural. ("Class").[4]

---

[3] "Covered Ingredients" shall include the following specific ingredients: sodium lauryl sulfate, sorbitol and xylitol, glycerin, xanthan gum, sodium hydroxide, titanium dioxide, calcium carbonate, maltodextrin, propylene glycol, propanediol, glycerin, sodium stearate, ascorbic acid, aluminum chlorohydrate, tocopheryl acetate, glycerin, poloxamer 335, sunflower seed oil, beeswax, coconut oil, peppermint oil, tocopherol, menthol, cottonseed oil, hydrogenated castor oil, shea butter, hydrated silica, jojoba seed oil, carnauba wax, caplylic/capric triglyceride, stearic acid, cetearyl alcohol, glyceryl stearate citrate, cetyral olivate, sorbitol olivate, aloe leaf juice, lactic acid, xanthan gum, sodium hydroxide, benzoic acid, rice powder, sodium haluronate, glycerol caprylate, gluconic acid and decyl glucoside.
[4] The Products which are the subject of this definition are listed in Exhibits A – F, attached hereto.

Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Products; and (c) the Judge to whom this case is assigned.

51.     **Numerosity/Impracticability of Joinder:**  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, hundreds of thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

52.     **Commonality and Predominance:**  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

a.      whether Defendant engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, labeling and sale of the Products;

b.      whether Defendant's acts and omissions constitute violations of consumer fraud statutes and common law;

c.      whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiffs and the Class regarding the marketing, promotion, advertising, labeling and sale of the Products;

d.      whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Products were intended to deceive the public;

e.      whether, as a result of Defendant's misconduct, Plaintiffs and the Class

are entitled to equitable relief and other relief, and, if so, the nature of such relief;

and

f.      whether Plaintiffs and the members of the Class have sustained

ascertainable loss and damages as a result of Defendant's acts and omissions, and

the proper measure thereof.

53.      **Typicality:**  The representative Plaintiffs' claims are typical of the claims of the

members of the Class they seek to represent.  Plaintiffs and all Class members have been injured

by the same wrongful practices in which Defendant has engaged.  Plaintiffs' claims arise from

the same practices and course of conduct that give rise to the claims of the Class members, and

are based on the same legal theories.

54.      **Adequacy:**  Plaintiffs are representatives who will fully and adequately assert and

protect the interests of the Class, and have retained Class counsel who are experienced and

qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests

which are contrary to or conflicting with the Class.

55.      **Superiority:**  A class action is superior to all other available methods for the fair

and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class

members is economically unfeasible and procedurally impracticable.  While the aggregate

damages sustained by the Class are likely in the millions of dollars, the individual damages

incurred by each Class member resulting from Defendant's wrongful conduct are too small to

warrant the expense of individual suits.  The likelihood of individual Class members prosecuting

their own separate claims is remote, and, even if every Class member could afford individual

litigation, the court system would be unduly burdened by individual litigation of such cases.

Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

56.     Plaintiffs will not have any difficulty in managing this litigation as a class action.

## FIRST CAUSE OF ACTION

**FOR VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLORIDA STATUTES 501.201 *ET SEQ.***

57.     Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

58.     This cause of action is brought pursuant to the FDUPTA.  The stated purpose of the Act is to "protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

59.     Plaintiffs are consumers as defined by Fla. Stat. § 501.203.  The Products are goods within the meaning of the Act.  Tom's is engaged in trade or commerce within the meaning of the Act.

60.     Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

61.     Defendant has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

62.     Plaintiffs and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid more for the Products than they otherwise would have as a result of Defendant's misrepresentations.

63.     The damages suffered by Plaintiffs and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

64.     Pursuant to Fla. Stat. § 501.211(1), Plaintiffs and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant, as well as for restitution and disgorgement.

65.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs and the Class make claims for damages, attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF MINN. STAT. § 325F.69**
**PREVENTION OF CONSUMER FRAUD ACT**
**(By the Minnesota Class)**

66.     Plaintiff Martin realleges and incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

67.     Minnesota Statute §325F.69, subd. 1, makes it unlawful for any person to use "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive

practice, with intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

68.     Defendant's business practices, in advertising, marketing and selling its Products as "natural" constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. §325F.69, subd. 1.

69.     Defendant's wrongful conduct and use of false pretenses, false promises, misrepresentations and misleading statements, all with the intent that others rely on those statements, include, by way of example and not by limitation as limitations:

   a.   Defendant's fraudulent, misleading and deceptive statements and practices relating to its Products;

   b.   Defendant's warranty-related misconduct, including its fraudulent, deceptive and unfair practice of misrepresenting its Products' characteristics;

   c.   Defendant's concealment of the true characteristics of its Products; and

   d.   Defendant's continued sale of the Products after it knew about the misleading representations.

70.     Defendant's omissions and misrepresentations set forth in this Complaint are material because they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff Martin and the Minnesota Class members, regarding whether or not to purchase Defendant's Products.

71.     Had Plaintiff Martin and the Minnesota Class known that Defendant's Products were not natural, they would not have purchased the Products and/or paid a premium for the Products.

72.     Defendant fraudulently, negligently, recklessly and/or intentionally concealed and/or failed to disclose the true characteristics of the Products for the purpose of inducing

Plaintiff and the Minnesota Class to rely on its representations, and Plaintiff and the Minnesota Class justifiably relied, to their detriment upon the truth and completeness of Defendant's representations about its Products.  Plaintiff and the Minnesota Class relied on Defendant to disclose all material facts and not omit any material information regarding its Products.  That Plaintiff Martin and the Minnesota Class members were deceived is evidenced by their purchases of the Products.  Had they known the truth, Plaintiff Martin and the Minnesota Class members would not have bought Defendant's Products and/or paid a premium for the Products. Defendant's fraudulent and deceptive practice of advertising, marketing and selling the Products repeatedly occurred in Defendant's trade or business and was capable of deceiving a substantial portion of the purchasing public.

73.     Where, as here, Plaintiff Martin's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

74.     As a result of Defendant's fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices relating to the sale of its Products, Plaintiff Martin and the Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known the falsity of the representations that the Products are "natural."

75.     If Defendant's conduct is not enjoined, Plaintiff Martin and the other members of the Minnesota Class will continue to suffer injury, including, but not limited to the purchase price of the Products and/or the premium paid for the Products.

76.     As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff Martin and the other Minnesota Class members sustained damages.

77.     THEREFORE, Plaintiff Martin prays for relief as set forth below.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF MINN. STAT. § 325D.13**
**UNLAWFUL TRADE PRACTICES ACT**
**(By the Minnesota Class)**

78.     Plaintiff Martin realleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth fully herein.

79.     Minnesota Statute §325D.13 provides that "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

80.     By engaging in the conduct described above, Defendant violated and continues to violate Minn. Stat. §325D.13.

81.     Where, as here, Plaintiff Martin's claims inure to the public benefit, Minnesota's private attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

82.     Defendant's wrongful conduct and misrepresentation of the true quality of its Products includes, by way of example and not by limitation as follows:

   a.   Defendant's fraudulent, misleading and deceptive statements and practices relating to its Products;

   b.   Defendant's warranty-related misconduct, including its fraudulent, deceptive and unfair practice of misrepresenting its Products' characteristics;

   c.   Defendant's concealment of the true characteristics of the Products; and

     d.  Defendant's continued sale of the Products after it knew about the misleading representations.

83.     Defendant and its agents and distributors also misrepresented the true characteristics of Defendant's Products by making the various statements about the alleged quality of the Products as stated above.

84.     As a result of Defendant's practices relating to misrepresentation of the true characteristics of the Products, Plaintiff Martin and the Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known the falsity of the representations that the Products are "natural."

85.     As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff Martin and the other Minnesota Class members sustained damages.

86.     THEREFORE, Plaintiff Martin prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF MINN. STAT. § 325D.44
## DECEPTIVE TRADE PRACTICES ACT
### (By the Minnesota Class)

87.     Plaintiff Martin realleges and incorporates by reference all allegations as set forth in the preceding paragraphs as if set forth fully herein.

88.     Minnesota Statutes §325D.44, subd. 1 provides in part:

> A person engages in deceptive trade practices when, in the course of business, vocation, or occupation, the person . . .
>
> (5)   Represents that goods or services have...characteristics, ingredients, uses, benefits...that they do not have...
>
> (7)   Represents that goods or services are of a particular standard, quality, or grade,...if they are of another. . . . and

(13) Engages in any other conduct which
similarly creates a likelihood of confusion or
of misunderstanding.

89.     By engaging in the conduct described above, Defendant violated and continues to

violate Minn. Stat. §325D.44.

90.     Where, as here, Plaintiff Martin's claims inure to the public benefit, Minnesota's

private attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been

injured through a violation of these consumer protection statutes to bring a civil action and

recover damages, together with costs and disbursements, including reasonable attorneys' fees.

91.     Defendant's wrongful conduct and misrepresentation of the true characteristics,

standards, quality and grade of the Products includes, by way of example and not by limitation:

a.  Defendant's fraudulent, misleading and deceptive statements relating to the true
    characteristics, standards, quality and grade of its Products;

b.  Defendant's fraud and misrepresentation of information about the characteristics
    of its Products, and its knowledge of those misrepresentations; and

c.  Defendant's concealment of the true characteristics of its Products.

92.     Defendant and its agents and distributors also misrepresented the true

characteristics, standards, quality and grade of the Products by making various statements about

the alleged quality and availability of the Products as described above.

93.     As a result of the Defendant's practices relating to misrepresentation of the true

characteristics, standards, quality and grade of its Products, Plaintiff Martin and the Minnesota

Class members have suffered actual damages in that they would not have purchased the Products

and/or paid a premium for the Products if they had known the falsity of the representations that

the Products are "natural."

- 25 -

94.     As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff Martin and the other Minnesota Class members sustained damages.

95.     THEREFORE, Plaintiff Martin prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF MINN. STAT. § 325F.67**
**FALSE ADVERTISING**
**(By the Minnesota Class)**

96.     Plaintiff Martin realleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth fully herein.

97.     Minnesota Statutes §325F.67 provides in part:

> Any person, firm, corporation, or association who, with intent to sell or in any way dispose of merchandise, . . . service, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or place before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or places before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, in any other way, an advertisement of any sort regarding merchandise, . . . service or anything so offered to the public for use, consumption, purchase, or sale, which advertising contains any material assertion, representation or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any other person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

98.     By engaging in the conduct described above, Defendant violated and continues to violate Minn. Stat. §325F.67.

99.     Where, as here, Plaintiff Martin's claims inure to the public benefit, Minnesota's private attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

100.    Defendant's untrue, deceptive and misleading assertions and representations about its Products include, by way of example and not by limitation:

    a.    Defendant's fraudulent, misleading and deceptive statements relating to the true characteristics, standards, quality and grade of Defendant's Products;

    b.    Defendant's fraud and misrepresentation of information about the characteristics of Defendant's Products and its knowledge of those misrepresentations; and

    c.    Defendant's concealment of the true characteristics of the Products.

101.    Defendant and its agents and distributors also made untrue, deceptive and misleading assertions and representations about its Products by making the various statements about the alleged characteristics of the Products discussed above.

102.    As a result of the Defendant's untrue, deceptive and misleading assertions and representations about its Products, Plaintiff Martin and the other Minnesota Class members have suffered actual damages because they would not have purchased the Products and/or paid a premium price for the Products if they had known the falsity of the representations that the Products are "natural."

103.    Plaintiff Martin and the Minnesota Class seek to enjoin Defendant from untrue, deceptive and misleading assertions and representations about the Products.

THEREFORE, Plaintiff Martin prays for relief as set forth below.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE CAL. CONSUMER LEGAL REMEDIES ACT
### (By the California Class Members)

104.    Plaintiff Nelson realleges and incorporates by reference the allegations set forth above as if set forth fully herein.

105.    Plaintiff Nelson brings the sixth, seventh, and eighth claims on behalf of those Class members who purchased the Products in the State of California during the applicable limitations period (the "California Class members").

- 27 -

106.   Plaintiff Nelson and the California Class members are "consumers" under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1761(d).

107.   The Products are "goods" under California Civil Code § 1761(a).

108.   The purchases by Plaintiff Nelson and the California Class members of the Products are "transactions" under California Civil Code § 1761(e).

109.   Within the applicable limitations period, Defendant has violated California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9) by making a false representation on the Product label that the Products were "natural" when, in fact, they contain artificial and/or synthetic ingredients.

110.   Plaintiff Nelson and the California Class members reasonably relied on the "natural" representation on the Product label.  Plaintiff Nelson and the California Class members were not aware that the Products contained artificial and/or synthetic ingredients and had no ability to ascertain that information at the point of sale.  Plaintiff Nelson and the California Class members would not have purchased the Products at the price offered, or at all, if they had known that, contrary to Defendant's representation, the Products contained artificial and/or synthetic ingredients.  As a result of Defendant's misrepresentation, Plaintiff Nelson and the California Class members have been damaged in an amount to be proved at trial.

111.   Pursuant to California Civil Code § 1782(a), Plaintiff Nelson served by certified mail a pre-filing demand letter on Defendant and its agent for service of process that notified Defendant of its unlawful practices and demanded that Defendant remedy those practices.  More than thirty (30) days have elapsed since the service of the letter, and Defendant has not fully remedied its unlawful practices.

112.   Pursuant to California Civil Code §§ 1780 and 1782, Plaintiff Nelson and the California Class members seek monetary relief in an amount to be proved at trial, as well as reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE CAL. FALSE ADVERTISING LAW**
**(By the California Class Members)**

113.  Plaintiff Nelson realleges and incorporates by reference the allegations set forth above as if set forth fully herein.

114.  The California False Advertising Law ("FAL"), California Business & Professions Code §§ 17500 *et seq.*, makes it unlawful for a defendant to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the products.

115.  Defendant's representation that the Products were "natural," as alleged above, was untrue and misleading. Defendant's representation was likely to deceive reasonable consumers. Reasonable consumers could not ascertain the truthfulness of Defendant's representation at the point of sale.  Defendant knew, or reasonably should have known, that its representation concerning the Products was untrue and misleading, since it knew how the Products and their ingredients were sourced and manufactured.  Defendant made its representation with the intent to induce Plaintiff Nelson and the California Class members to purchase the Products. Plaintiff Nelson and the California Class members purchased the Products in reliance on the untrue and misleading representation by Defendant.  Plaintiff Nelson and the California Class members would not have purchased the Products at the price offered, or at all, if they had known that Defendant's "natural" representation was false.

116.  Pursuant to California Business & Professions Code § 17535, Plaintiff Nelson and the California Class members seek monetary relief in an amount to be proved at trial.

117.  Within a reasonable time after they knew or should have known of such breach, Plaintiff Nelson, on behalf of herself and the other California Class members, placed Defendant on notice thereof.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF THE CAL. UNFAIR COMPETITION LAW
### (By the California Class Members)

118.  Plaintiff Nelson realleges and incorporates by reference the allegations set forth above as if set forth fully herein.

119.   The California Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

120.   Defendant's conduct is unlawful because, as set forth above, it violates the CLRA and the FAL.

121.   Plaintiff NELSON and the California Class members have suffered injury in fact and lost money as a result of Defendant's conduct, since they purchased the Products in reliance on Defendant's "natural" representation and would not have purchased the Products at the price offered, or at all, if they had known that the representation was false.

122.   Pursuant to California Business & Professions Code § 17203, Plaintiff NELSON and the California Class members seek restitution in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (By the Nationwide Class)

123.   Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs as if set forth fully herein.

124.   Plaintiffs and the Nationwide Class members formed a contract with Defendant at the time they purchased the Products.  As part of that contract, Defendant represented that the Products were "natural," as described above.  These representations constitute express warranties and became part of the basis of the bargain between Plaintiffs and the Nationwide Class members, on the one hand, and Defendant, on the other.

125.   Defendant made the above-described representations to induce Plaintiffs and the Nationwide Class members to purchase the Products, and Plaintiffs and the Nationwide Class members did rely on the representations in purchasing these Products.

126.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the other Nationwide Class members.

- 30 -

127.    Defendant breached its express warranties about the Products because, as alleged above, the Products are not "natural."  Defendant breached the following state warranty laws:

A.      Alaska Stat. section 45.02.313;

B.      A.R.S. section 47-2313;

C.      A.C.A. section 4-2-313;

D.      Cal. Comm. Code section 2313;

E.      Colo. Rev. Stat. section 4-2-313;

F.      Conn. Gen. Stat. section 42a-2-313;

G.      6 Del. C. section 2-313;

H.      D.C. Code section 28:2-313;

I.       O.C.G.A. section 11-2-313;

J.      HRS section 490:2-313;

K.      Idaho Code section 28-2-313;

L.      810 ILCS 5/2-313;

M.      Ind. Code section 26-1-2-313;

N.      K.S.A. section 84-2-313;

O.      KRS section 355.2-313;

P.      11 M.R.S. section 2-313;

Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.      Minn. Stat. section 336.2-313;

S.      Miss. Code Ann. section 75-2-313;

T.      R.S. Mo. Section 400.2-313;

U.      Mont. Code Anno. Section 30-2-313;

V.      Neb. Rev. Stat. section 2-313;

W.      Nev. Rev. Stat. Ann. section 104.2313;

X.      RSA 382-A:2-313;

Y.      N.J. Stat. Ann. section 12A:2-313;

Z.      N.M. Stat. Ann. section 55-2-313;

AA.     N.Y. U.C.C. Law section 2-313;

AB.     N.C. Gen. Stat. section 25-2-313;

AC.     N.D. Cent. Code section 41-02-30;

AD.     ORC Ann. section 1302.26;

AE.     12A Okl. St. section 2-313;

AF.     Or. Rev. Stat. section 72-3130;

AG.     13 Pa.C.S. section 2313;

AH.     R.I. Gen. Laws section 6A-2-313;

AI.     S.C. Code Ann. section 36-2-313;

AJ.     S.D. Codified Laws, section 57A-2-313;

AK.     Tenn. Code Ann. section 47-2-313;

AL.     Tex. Bus. & Com. Code section 2.313;

AM.     Utah Code Ann. section 70A-2-313;

AN.     9A V.S.A. section 2-313;

AO.     Va. Code Ann. section 59.1-504.2;

AP.     Wash. Rev. Code Ann. section 62A.2-313;

AQ.     W. Va. Code section 46-2-313; and

AR.     Wyo. Stat. section 34.1-2-313.

128.   As a result of Defendant's breaches of express warranty, Plaintiffs and the other members of the Nationwide Class were damaged in the amount of the purchase price and/or the premium they paid for the Products, in amounts to be proven at trial.

129.   Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the Nationwide Class, placed Defendant on notice thereof.

**TENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(By the Nationwide Class)**

130.   Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs as if set forth fully herein.  Plaintiffs assert this claim in the alternative.

131.   By the acts and conduct described above, Plaintiffs and the other members of the Nationwide Class conferred a benefit on Defendant by purchasing its Products, proceeds of which were retained by Defendant.

132.   By the acts and conduct described above, Defendant knowingly accepted and retained the benefit of the money paid by Plaintiffs and the other Nationwide Class members. Defendant's retention of the money is inequitable and unjust for the reasons stated above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendant granting the following relief:

A.     An order certifying this case as a class action and appointing Plaintiffs as Class representatives and Plaintiffs' counsel to represent the Class;

B.      Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C.      All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

D.      Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and in the maximum amount permitted by applicable law;

E.      An order (1) requiring Defendant to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendant from misrepresenting and concealing material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective notice campaign; and (4) requiring Defendant to pay to Plaintiffs and all members of the Class the amounts paid for the Products;

F.      Statutory pre-judgment and post-judgment interest on any amounts;

G.      Payment of reasonable attorneys' fees and costs; and

H.      Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: July 24, 2015

SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP


 /s/ Nathan C. Zipperian
Nathan C. Zipperian (#61525)
Scott R. Shepherd (#69655)
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
Email:  nzipperian@sfmslaw.com
          sshepherd@sfmslaw.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (866) 300-7367
Email: jshah@sfmslaw.com
          nfinkelman@sfmslaw.com

Jeffrey Feinberg
THE FEINBERG LAW FIRM
382 Springfield Ave, Suite 201
Summit, NJ 07901
Telephone: (212) 372-0297
Email: jfeinberg@nfcounsel.com

James F. Clapp
James T. Hannink
Zach P. Dostart
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
San Diego, CA 92122-1253
Telephone:  (858) 623-4200
Facsimile:  (858) 623-4299
Email: jclapp@sdlaw.com
          jhannink@sdlaw.com
          zdostart@sdlaw.com

Clayton D. Halunen (Bar No. 219721)
Melissa Wolchansky (Bar No. 0387900)
HALUNEN LAW
1650 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099
Email: Halunen@halunenlaw.com
        wolchansky@halunenlaw.com

Michael R. Reese
REESE LLP
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-5272
Email: mreese@reesellp.com

Aashish Desai
DESAI LAW FIRM, P.C.
3200 Bristol Street, Suite 650
Costa Mesa, CA 92626
Telephone: (949) 614-5830
Facsimile: (949) 271-4190
Email: aashish@desai-law.com

Attorneys for Plaintiffs and the Proposed
Class