# EXHIBIT A

# JOINT STIPULATION OF SETTLEMENT

## I. RECITALS

A. This Joint Stipulation of Settlement ("Agreement") is entered into by and among Plaintiffs, Allison Gay, Sandahl Nelson, Lorette Kenney, Claudia Morales, Molly Martin and Genevieve Gamez (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class Members, and Defendant, Tom's of Maine, Inc. ("Tom's," "Tom's of Maine," or "Defendant"), and resolves in full the Actions. Capitalized terms used herein are defined in Section II of this Agreement or indicated in parentheses elsewhere in this Agreement. Subject to Court approval as required by the applicable Federal Rules of Civil Procedure, and as provided herein, Plaintiffs and Defendant ("the Parties") hereby stipulate and agree that, in consideration for the promises and covenants set forth in the Agreement and upon the entry by the Court of a Final Judgment and Order Approving Settlement and the occurrence of the Effective Date, the Actions shall be settled and compromised upon the terms and conditions contained herein.

B. WHEREAS, on March 25, 2013, Plaintiff Nelson served a letter pursuant to the California Consumers Legal Remedies Act, Civ. Code § 1750, *et seq*. ("CLRA") regarding certain of Tom's products. On April 9, 2013, Plaintiff Martin, likewise, served a CLRA letter regarding certain of Tom's products. Thereafter, on March 7, 2014, Plaintiff Gay filed a class action complaint against

Tom's of Maine, Inc. in the United States District Court for the Southern District of Florida, captioned *Gay et al. v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM, on behalf of herself and all other consumers who purchased Tom's of Maine Toothpaste containing xylitol and/or sodium lauryl sulfate within the United States, which action will be amended to incorporate additional allegations related to Tom's products. On April 30, 2014, Plaintiff Gamez filed a lawsuit in the U.S. District Court for the Central District of California, captioned *Gamez v. Toms of Maine, Inc.*, CV-14-03336-CAS, regarding certain Tom's of Maine products. On May 12, 2014, counsel for Plaintiffs Kenney and Morales served a CLRA letter regarding certain of Tom's products, on behalf of themselves and all others similarly situated who purchased Tom's of Maine products containing sodium lauryl sulfate, propylene glycol, poloxamer 335, aluminum chlorohydrate, and titanium dioxide; and

C. WHEREAS, counsel for all Parties have reached the resolution set forth in this Agreement, providing for, among other things, the settlement of the Actions between and among Plaintiffs, on behalf of themselves and the Settlement Class, and Tom's of Maine on the terms and subject to the conditions set forth below; and

D. WHEREAS, Class Counsel have determined that a settlement of the Actions on the terms reflected in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class; and

E. WHEREAS, Tom's of Maine, Inc. to avoid the costs, disruption and distraction of further litigation, and without admitting the truth of any allegations made in the Actions, or any liability with respect thereto, has concluded that it is desirable that the claims against it be settled and dismissed on the terms reflected in this Agreement; and

F. NOW, THEREFORE, this Agreement is entered into by and among the Parties, by and through their respective counsel and representatives, and in consideration of the mutual promises, covenants and agreements contained herein and for value received, the Parties agree that: (1) upon the Effective Date, the Actions and all Released Claims shall be settled and compromised as between Plaintiffs and the Settlement Class on the one hand, and Tom's of Maine on the other hand; and (2) upon final approval of the Agreement, the Final Judgment and Order Approving Settlement shall be entered dismissing the Actions with prejudice and releasing all Released Claims against the Released Parties.

## II. DEFINITIONS

A. As used in this Agreement and the attached exhibits (which are an integral part of the Agreement and are incorporated in their entirety by reference),

the following terms shall have the meanings set forth below, unless this Agreement specifically provides otherwise:

1. "Actions" means *Gay et al. v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM (S.D. Fla.) and *Gamez v. Tom's of Maine, Inc.*, Case No. CV-14-03336-CAS (C.D. Cal.).

2. "Agreement" means this Joint Stipulation of Settlement (including all exhibits attached hereto).

3. "Attorneys' Fees and Expenses" means such attorneys' fees and expenses as may be awarded by the Court based on this Agreement to compensate Class Counsel and all other Plaintiffs' Counsel as agreed upon by the Parties (subject to Court approval), as described more particularly in Section X of this Agreement.

4. "Authorized Claimant(s)" means any Settlement Class Member who submits a valid Claim Form.

5. "Award" means the relief obtained by Settlement Class Members pursuant to Section IV of this Agreement.

6. "Claim" means a request for relief submitted by a Settlement Class Member on a Claim Form to the Settlement Administrator in accordance with the terms of the Agreement.

7. “Claim Form” means the form to be used by a Settlement Class Member to submit a Claim to the Settlement Administrator. The proposed Claim Form is subject to Court approval and attached hereto as Exhibit 8.

8. “Claims Deadline” means the date by which all Claim Forms must be postmarked or submitted online to the Settlement Administrator to be considered timely. The Claims Deadline shall be stated in the Class Notice, on the Settlement Website, and in the Claim Form, and shall be no later than 100 days after the date the Court enters the Final Judgment and Order Approving Settlement.

9. “Claim Period” means the time period during which Settlement Class Members may submit a Claim Form to the Settlement Administrator for review. The Claim Period shall run for a period of time ordered by the Court, and last at least one-hundred and twenty (120) calendar days from the date of the first publication of the Long-form Notice or Short-form Notice, whether online, via print publication, or via press release, whichever is earlier.

10. “Class Counsel” means James F. Clapp of Dostart Clapp & Coveney, LLP, James C. Shah of Shepherd, Finkelman, Miller & Shah, LLP, Michael Reese of Reese LLP, Melissa Wolchansky of Halunen Law, and Jeffrey Feinberg of The Feinberg Law Firm.

11. “Class Notice” or “Notice” means the forms of notice to be disseminated to Settlement Class Members informing them about the Settlement

Agreement. Copies of each of the proposed Notices are attached respectively as Exhibits 7 ("Long-form Notice") and 6 ("Short-form Notice").

12. "Class Period" means March 25, 2009, up to and including the date the Court enters the Preliminary Approval Order.

13. "Class Representatives" or "Plaintiffs" means Allison Gay, Sandahl Nelson, Molly Martin, Lorette Kenney, Claudia Morales and Genevieve Gamez.

14. "Court" means the U.S. District Court for the Southern District of Florida, in which the *Gay, et al. v. Tom's of Maine, Inc.* matter was filed and where the parties will seek approval of the Settlement.

15. "Covered Ingredients" shall include the following specific ingredients: Acacia, Acacia gum, Acacia senegal gum, Aloe barbadensis leaf juice, Aloe vera leaf juice, Aluminum Chlorohydrate, Anthemis nobilis flower oil, Apricot fragrance, Arginine, Ascorbic acid, Ascorbyl palmitate, Bay fragrance, Beeswax, Bentonite, Benzoic acid, Benzyl Alcohol, Butyrospermum parkii (shea) butter, Calcium carbonate, Calendula fragrance, Calendula glycerite, Caprylic/capric triglyceride, Carnauba wax, Carrageenan, Cetearyl Alcohol, Cetearyl Olivate, Cetyl Alcohol, Chamomile (Anthemis nobilis) flower oil, Chamomile Extract, Charcoal powder, Cinnamomum cassia (cinnamon) leaf oil and other natural flavors, Cinnamon oils with other natural flavors, Citric Acid,

Citrus aurantifolia and other natural oils, Citrus aurantium dulcis (orange) peel oil, Clove oils, Cocamidopropyl betaine, Coco-glucoside, Cocos nucifera (coconut) oil, Commiphora myrrha resin extract, Copernicia cerifera (carnauba) wax, Cottonseed oil, Coriander fruit oil, Cucumber fragrance, Cymbopogon flexuosus oil, Daucus spp. (carrot), Daudecyl Glucoside, Dicaprylyl ether, Euphorbia cerifera (candelilla) wax (organic), Fir needle oil, Fluoride, Foeniculum vulgare (fennel) oil, Fragaria vesca (strawberry) juice, Fruit extracts, Gaultheria procumbens (wintergreen) leaf oil, Galactoarabinan, Ginger, Gluconic Acid, Glycerin, Glyceryl Caprylate, Glyceryl laurate, Glyceryl Stearate Citrate, Glycyrrhiza uralensis (licorice) root extract, Glycyrrhizic acid, Green tea leaf extract, Hectorite clay, Helianthus annuus (sunflower) seed oil, Honeysuckle rose fragrance, Hops extract, Hydrated silica, Hydrogenated Castor Oil, Hydrogenated Soybean Oil, Hydrolyzed wheat protein and hydrolyzed wheat gluten, Iron Oxides, Jojoba (Simmondsia chinensis) seed oil, Jojoba wax, Lactic Acid, Lauryl Glucoside, Lavandin oil, Lavender oil, Licorice root (glycyrrhiza uralensis) extract, Lime fragrance, Magnolia spp. (magnolia), Maltodextrin, Marigold extract, Melaleuca spp. (tea tree), Mentha piperita (peppermint) oil, Mentha viridis (spearmint) leaf oil, Menthol, Mica, Monosodium phosphate, Speamint, Mentha piperita (peppermint) oil, Mentha viridis (spearmint) leaf oil, Spearmint, Olea europaea fruit oil, Olive Leaf Extract, organic Cymbopogon flexuosus oil, Oryza Sativa (Rice) Powder, Palm Kernel Oil, PDO,

Phytic acid (potassium phythate), Poloxamer 335, Poloxamer 407, Potassium alum, Potassium cocoate, Potassium nitrate 5%, Potassium phytate, Potassium stearate, Propanediol (vegetable derived), Propolis cera, Propolis extract, Propylene glycol (vegetable derived), Prunus Armeniaca (apricot) seed powder, Pumice, Purified water, Rheum spp. (rhubarb), Ricinus communis (castor) seed oil, Roman chamomile oil, Rosemary extract, Safflower Oil, Salvia officinalis (sage) extract, Sambucus spp. (elderberries), Silica shells, Silica, hydrated Simmondsia chinensis (Jojoba) seed oil, Soap of coconut oil, Soap of palm or palm kernel oil, Soaps of coconut and palm, sodium benzoate, Sodium bicarbonate, Sodium chloride, Sodium cocoate, Sodium Cocoyl Glutamate, Sodium dilinoleate, Sodium fluoride, Sodium gluconate, Sodium Hyaluronate, Sodium Hydroxide, Sodium Lactate, Sodium lauryl sulfate, Sodium monofluorophosphate, Sodium Palm Kernelate, Sodium palmate, Sodium phosphate, Sodium stearate, Sorbitan Olivate, Sorbitol, Star anise oil, Stearic acid, Stearyl Alcohol, Stevia rebaudiana extract, Sucrose cocoate, Talc, Theobrama cacao (cocoa) seed butter, Titanium dioxide, Tocopherol, Tocopheryl acetate, Triethyl citrate, Usnea spp. (lichen, tree moss), vaccinium spp. (blueberry, cranberry), Vitis spp. (grape), Water, White grapefruit fragrance, Wintergreen (Gaultheria procumbens) leaf oil, Wintergreen oil, Witch hazel, Witch hazel water, Woodspice fragrance (natural), Xanthan gum, Xylitol, Zinc chloride, Zinc citrate, and Zinc ricinoleate.

16. "Covered Product(s)" means any Tom's of Maine toothpaste, deodorant/antiperspirant, soap, sunscreen, diaper cream, body wash, shampoo, hand/body lotion, lip gloss/shimmer, lip balm, mouthwash or any other personal or oral care product sold in the United States during the Class Period that contains one or more Covered Ingredients, and which is labeled, advertised or promoted as "natural," or, in the case of deodorant/antiperspirant, is labeled, advertised or promoted as "naturally dry."

17. "Defendant," "Tom's" and "Tom's of Maine" mean Tom's of Maine, Inc.

18. "Effective Date" means:

(a) if no appeal is taken from the Order and Final Judgment, thirty (30) days after the Court enters the Order and Final Judgment of this Class Settlement Agreement; or

(b) if an appeal is taken from the Order and Final Judgment, the date on which all appellate rights (including petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and proceedings in the United States Supreme Court or any other appellate court) have expired, been exhausted, or been finally disposed of in a manner that affirms the Order and Final Judgment.

19. "Eligible Claims" means claims submitted by Authorized Claimants against the Settlement Fund.

20. "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator.

21. "Escrow Agent" means the escrow agent agreed upon by the parties and approved by the Court to hold funds pursuant to the terms of this Agreement.

22. "Final Approval Hearing" means the hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Agreement.

23. "Final Judgment and Order Approving Settlement" means the Final Judgment and Order Approving Settlement to be entered by the Court (which will be agreed upon by the Parties and submitted prior to the Final Approval Hearing) approving the Settlement as fair, adequate, and reasonable, confirming the certification of the Settlement Class, and issuing such other findings and determinations as the Court and/or the Parties deem necessary and appropriate to implement the Settlement Agreement.

24. "Initial Claim Amount" means the amount a Settlement Class Member claims on a Claim Form that is timely, valid, and approved by the Settlement Administrator. The value basis of the Initial Claim Amount is

described in Section IV. The Initial Claim Amount is subject to pro rata increase or decrease, depending on the value of all approved Claims submitted, pursuant to Section IV.

25. "Motion for Preliminary Approval of Settlement" means the motion, to be filed by Plaintiffs, and not opposed by Tom's of Maine, for Preliminary Approval of this Agreement.

26. "Natural Certification Organizations" mean the numerous organizations that examine ingredients for use in food, cosmetic and natural care products, including particularly ECOCERT, NATRUE, BDIH, COSMOS, and the Natural Products Association, and other public or private organizations that may do so in the future. The parties recognize and acknowledge that each of these Natural Certification Organizations have worked to develop and promote strict standards, definitions and guidance for "natural" ingredients and products, along with the processes used to make such ingredients and products, and that these organizations are recognized as providing useful and accurate information to consumers and to the industry.

27. "Notice and Claim Administration Expenses" means all costs and expenses incurred by the Settlement Administrator, including all notice expenses, the cost of administering the notice program and the costs of processing all Claims made by Settlement Class Members.

28. "Notice Date" means the date by which the Settlement Administrator completes dissemination of the Class Notice as provided in the Agreement and shall be no later than 30 days after the Court enters a Preliminary Approval Order.

29. "Objection Date" means the date by which Settlement Class Members must file and serve objections to the Settlement and shall be no later than 30 days before the date first set for the Final Approval Hearing or as required by applicable law.

30. "Opt-Out Date" means the postmark date by which a Request for Exclusion must be submitted to the Settlement Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and shall be no later than 30 days before the date first set for the Final Approval Hearing.

31. "Plaintiffs' Counsel" means James F. Clapp of Dostart Clapp & Coveney, LLP, James C. Shah of Shepherd, Finkelman, Miller & Shah, LLP, Michael Reese of Reese LLP, Melissa Wolchansky of Halunen Law, Jeffrey Feinberg of The Feinberg Law Firm, Shireen Mohsenzadegen and Aashish Desai of Desai Law Firm, P.C.

32. "Preliminary Approval Order" means the order to be entered by the Court, substantially in the form of Exhibit 1, preliminarily approving the Settlement, certifying the Settlement Class, setting the date of the Final Approval

Hearing, approving the Notice Program, Class Notice, and Claim Form, and setting the Opt-Out Date, Objection Date, and Notice Date.

33. "Released Claim(s)" and "Released Parties" mean those claims and parties released of liability under Section IX.

34. "Request(s) for Exclusion" means the written communication that must be submitted to the Settlement Administrator and postmarked on or before the Opt-Out Date by a Settlement Class Member who wishes to be excluded from the Settlement Class.

35. "Residual Settlement Amount" means the funds remaining in the Settlement Fund after the payment of all Eligible Claims and escrow charges and any taxes related to the Settlement Fund.

36. "Service Award(s)" means the payment, subject to Court approval, of $2,000 each to Plaintiffs Allison Gay, Sandahl Nelson, Lorette Kenney, Claudia Morales, Genevieve Gamez and Molly Martin.

37. "Settlement Administrator" means the entity(ies) retained by the Parties and approved by the Court to design and implement the program for disseminating Notice to the Class, administer the claims portion of this Settlement, and perform overall administrative functions.

38. "Settlement Class" and "Settlement Class Member(s)" each means all persons who purchased Covered Products in the United States from

March 25, 2009 to the date the Court enters the Preliminary Approval Order. Excluded from the Settlement Class are: (i) those who purchased Covered Products for purpose of resale; (ii) those with claims for personal injuries arising from the use of Covered Products; (iii) Defendant and its officers, directors and employees; (iv) any person who files a valid and timely Request for Exclusion; and (v) the Judge(s) to whom this Action is assigned and any members of his/her/their immediate families.

39. "Settlement Fund" means the amount of $4,500,000 to be funded by Defendant and from which Eligible Claims, Attorneys' Fees and Expenses, costs of notice and class administration, and Service Awards are to be paid. The Settlement Fund is non-reversionary, and any monies remaining in the Settlement Fund after all Eligible Claims have been paid will be distributed through a *cy pres* process to an entity mutually agreed to by the Parties and approved by the Court.

40. "Settlement Website" means the Internet website to be established for this Settlement by the Settlement Administrator to provide information to the public and the Settlement Class about this Agreement and to permit Settlement Class Members to submit Claims online.

41. "Tom's of Maine's Counsel" means David K. Callahan of Latham & Watkins, LLP.

B. Other capitalized terms in this Agreement but not defined in Section II(A) shall have the meanings ascribed to them elsewhere in this Agreement.

## III. CERTIFICATION OF THE SETTLEMENT CLASS AND DISMISSAL OF ACTION

### A. Certification of the Settlement Class

1. This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute or be construed as an admission of: (a) the validity of any claim or allegation by Plaintiffs, or of any defense asserted by Tom's, in the Action, or (b) any wrongdoing, fault, violation of law, or liability on the part of any Party, Released Party, Settlement Class Member, or their respective counsel.

2. As part of the Motion for Preliminary Approval of Settlement, Plaintiffs will seek certification of the Settlement Class. Tom's hereby consents, solely for purposes of the Agreement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Plaintiffs as suitable representatives of the Settlement Class; provided, however, that if the Court fails to approve this Agreement or the Agreement otherwise fails to be consummated, then Tom's shall retain all rights it had immediately preceding the execution of this Agreement to object to the maintenance of the Action as a class action.

**B. Dismissal of Actions**

Upon final approval of the Settlement by the Court, the Final Judgment and Order Approving Settlement will be entered by the Court, providing for the dismissal of the Actions with prejudice.

**IV. SETTLEMENT RELIEF**

**A. Settlement Fund and Cash Payments**

1. Tom's shall establish the Settlement Fund in the amount of $4,500,000 by depositing with the Escrow Agent this amount no later than 30 court days after entry of the Preliminary Approval Order. Until such time as these funds have been deposited with the Escrow Agent, Tom's shall be responsible for payment of any costs of administration, with any such amounts paid to be deducted from the $4,500,000 deposited with the Escrow Agent.

2. Upon the establishment of the Escrow Account, the Settlement Fund may be invested in interest-bearing, short-term instruments—to be agreed upon by Class Counsel and Defendant—that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments"). The interest proceeds and the principal may thereafter be reinvested as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees,

costs, expenses, and other required disbursements, in a timely manner. Any interest proceeds will be added to the Settlement Fund. Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account.

3. The Settlement Fund at all times will be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendant or its counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), will be paid out of the Settlement Fund. Defendant and its counsel, and Plaintiffs and Class Counsel, will have no liability or responsibility for any of the Taxes. The Settlement Fund will indemnify and hold Defendant and its counsel, and Plaintiffs and Class Counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

4. A Settlement Class Member is eligible to obtain $4.00 for each purchase of a Covered Product for up to seven (7) Covered Products purchased during the Class Period defined in the Agreement, without the need to present proof of purchase. To receive Settlement relief, each claimant must submit a valid

and timely Claim Form either by mail or electronically. The actual amount paid to individual claimants will depend upon the number of valid claims made. For each Claim made for a subject purchase or purchases, the claimant must include in the Claim the number within each category (toothpaste, antiperspirant/deodorant, soap, lip balm/gloss, sunscreen, body lotion, body wash, hand cream, or mouthwash) of Covered Products purchased and a representation that the purchase(s) occurred in the United States during the Class Period.

**B. Injunctive Relief**

In connection with this Settlement, the service of the CLRA letters and the filing of the Actions, and as a result thereof, Tom's has agreed to the following labeling and advertising changes regarding the Covered Products to address concerns raised by Plaintiffs. For a period of at least three years:

1. Tom's will provide information about each of the ingredients in its products on its website (presently located at www.tomsofmaine.com) in an easy-to-access manner, such as the manner identified in the screenshots located at Exhibit 2. These changes will, as noted in Exhibit 2, include at least the following:

(a) mention of "what's inside" Tom's products (or a word or words conveying a similar meaning) on the front page of Tom's main website, along with a link to a page or pages providing information about each of the ingredients in the Covered Products ; and

(b) mention of Tom's "standard" as guided by its Stewardship Model (or a word or words conveying a similar meaning) for the use of terms including at least "natural," "sustainable," and "responsible," along with a link to a page or pages providing information about those terms as used relative to the Covered Products.

2. Tom's will provide the address of its website in a conspicuous location on all of its product packaging, such as the manner identified in the photographs located at Exhibit 3.

3. Tom's shall, where practical, print on its product packaging language identifying Tom's stewardship model and providing a quick way for consumers to access it and Tom's definition of "natural," such as the examples identified in Exhibit 4.

**C. Disbursements from the Settlement Fund**

1. In accordance with the payment schedule set forth in this Agreement, money from the Settlement Fund shall be applied as follows:

a. First, to pay any Escrow charges and taxes incurred by the Settlement Fund;

b. Next, to pay the Notice and Claims Administration Expenses and the Attorneys' Fees and Expenses, all as approved by the Court; and

c. Next, to pay Eligible Claims.

The money remaining in the Settlement Fund after deduction of Escrow charges, taxes, the Notice and Claims Administration Expenses, and the Attorneys' Fees and Expenses is the "Net Settlement Fund."

2. If the total amount of the timely, valid, and approved Eligible Claims submitted by Settlement Class Members exceeds the available relief, considering any fees, payments, and costs set forth in this Agreement that must also be paid from the Settlement Fund, each eligible Settlement Class Member's Initial Claim Amount shall be proportionately reduced on a *pro rata* basis, such that the aggregate value of the cash payments does not exceed the Settlement Fund balance. If the total amount of the timely, valid, and approved eligible Claims submitted by Settlement Class Members results in there being any remaining value in the Settlement Fund, it shall be used to increase eligible Settlement Class Members' relief on a *pro* rata basis such that Settlement Class Members shall receive an increased payment of up to one hundred percent (100%) of the Eligible Class Members' Initial Claim Amount. The Settlement Administrator shall determine each authorized Settlement Class Member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid Claims. Accordingly, the actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all Claims have been calculated.

3. If, after the payment of all valid Claims, Notice and Administration Expenses, Attorneys' Fees and Expenses, Service Awards, and any other claim, cost, or fee specified by this Agreement, value remains in the Settlement Fund, it shall be called the Residual Settlement Amount.

4. In accordance with the *cy pres* doctrine, any amount remaining in the Net Settlement Fund (the Residual Settlement Amount) shall, subject to Court approval, be paid to Consumer Union.

## V. CLAIM FORM SUBMISSION AND REVIEW

A. Settlement Class Members may submit a Claim for Settlement relief and the Settlement Administrator shall review and process the Claim pursuant to the guidelines set forth below. Because the claims process will not require proof of purchase, each Settlement Class Member shall sign and submit a Claim Form that states, to the best of his or her knowledge, the total number and type of purchased Covered Products, and location of his or her purchases. The Claim Form shall be signed under an affirmation stating the following or substantially similar language: "I declare, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Covered Products claimed above during the Class Period for personal or household use and not for resale. I understand that my Claim Form may be subject to audit, verification, and Court review."

B. Claim Forms will be distributed as part of the Notice Program as described below, will be available for on-line submission from the Settlement Website and available for download from the Settlement Website. Upon request, Claim Forms will be mailed or emailed to Settlement Class Members by the Settlement Administrator. The Claim Form will also be available for download, at the option of Settlement Class Members, from Class Counsel's website and may be submitted to the Settlement Administrator by U.S. mail or other regularly maintained mail delivery service.

C. The Settlement Administrator shall provide periodic updates to Class Counsel and Tom's regarding Claim Form submissions beginning not later than two weeks after the date the Court enters the Preliminary Approval Order and continuing on a weekly basis thereafter.

D. The Settlement Administrator shall not begin to pay Eligible Claims until the later in time of (i) thirty (30) days after the Claims Deadline or (ii) fourteen (14) days after the Effective Date. The Settlement Administrator shall complete payment of Eligible Claims within thirty (30) days after the Claims Deadline.

E. Claim Form Protocol

The Settlement Administrator shall gather and review the Claim Forms received pursuant to the Agreement, and fulfill valid claims.

1. Settlement Class Members who submit a timely and valid Claim Form shall be designated as Authorized Claimants. The Settlement Administrator shall examine the Claim Form before designating the Settlement Class Member as an Authorized Claimant to determine that the information on the Claim Form is reasonably complete and contains sufficient information to enable the mailing of the Settlement payment to the Settlement Class Member.

2. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member ("Duplicate Claims"). The Settlement Administrator shall determine whether there is any duplication of claims, if necessary by contacting the claimant(s) or their counsel. The Settlement Administrator shall designate any such Duplicative Claims as invalid Claims to the extent they allege the same damages or allege damages on behalf of the same Settlement Class Member.

3. The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The

Settlement Administrator may, in its discretion, deny in whole or in part, any Claim to prevent actual or possible fraud or abuse.

4. By agreement of the Parties, the Parties can instruct the Settlement Administrator to take whatever steps they deem appropriate to preserve the Settlement Fund to further the purposes of the Agreement if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of Claims, including, but not limited to, denying in whole or in part, any Claim to prevent actual or possible fraud or abuse.

5. Class Counsel shall have the authority to direct the Settlement Administrator to accept a Claim Form submitted after the Claims Deadline that is otherwise complete, provided that the acceptance does not delay payments to other Authorized Claimants.

6. The Settlement Administrator shall provide periodic reports to Class Counsel and Defendants' counsel regarding the implementation of the Agreement and this protocol.

7. If a Claim Form cannot be processed without additional information, the Settlement Administrator shall promptly mail a letter that advises the claimant of the additional information and/or documentation needed to validate the Claim. The claimant shall have thirty (30) days from the postmark date of the letter sent by the Settlement Administrator to

respond to the request from the Settlement Administrator and the claimant shall be so advised.

(a) In the event the claimant timely provides the requested information, the Claim shall be deemed validated and shall be processed for payment.

(b) In the event the claimant does not timely provide the information, the Claim may be denied or reduced to the Claim amount reasonably supported by the documentation without further communication with the claimant.

8. If a Claim is reduced or denied because the Settlement Administrator determined that the additional information and/or documentation was not sufficient to support or prove the Claim, the Settlement Administrator shall provide a report to Class Counsel and Defendant's counsel. Class Counsel shall have the authority to direct the Settlement Administrator to accept any Claim that was denied for lack of sufficient information and/or documentation, except in the case of possible fraud or abuse, in which case Defendant must give its consent to acceptance of the Claim (which consent shall not be unreasonably withheld).

F. All Notice and Claim Administration Expenses shall be paid by Tom's. The Parties have agreed that the funds deposited in the Settlement Fund will be used to cover Notice and Claim Administration Expenses.

## VI. RETENTION OF THE SETTLEMENT ADMINISTRATOR

A. The Parties have retained Dahl Administration (the "Settlement Administrator") to help implement the terms of the proposed Agreement. As provided herein, Tom's shall pay all costs associated with the Settlement Administrator (to be paid out of the Settlement Fund), including costs of providing notice to the Settlement Class Members and processing claims.

1. The Settlement Administrator shall assist with various administrative tasks, including, without limitation: (1) mailing or arranging for the mailing, emailing or other distribution of the Long-form Notice and Claim Forms to Settlement Class Members who so request, (2) arranging for publication of the Short-form Notice, (3) handling returned mail and email not delivered to Settlement Class Members, (4) attempting to obtain updated address information for Settlement Class Members and for any notices returned without a forwarding address or an expired forwarding address, (5) making any additional mailings required under the terms of this Agreement, (6) answering oral and written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee, (7) receiving and maintaining, on behalf of the

Court and the Parties, any Settlement Class Member correspondence regarding Requests for Exclusion to the Settlement, (8) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (9) establishing a toll-free telephone number that will provide Settlement-related information to Settlement Class Members, (10) receiving and processing Claims and distributing payments to Settlement Class Members, and (11) otherwise assisting with administration of the Agreement.

B. The contract(s) with the Settlement Administrator(s) shall obligate the Settlement Administrator to abide by the following performance standards:

1. The Settlement Administrator shall accurately and objectively describe, and shall train and instruct its employees and agents to accurately and objectively describe, the provisions of this Agreement in communications with Settlement Class Members;

2. The Settlement Administrator shall provide prompt, accurate and objective responses to inquiries from Class Counsel or their designee, Tom's and/or Tom's' Counsel.

3. The Settlement Administrator shall keep a clear and careful record of all communications with Settlement Class Members, all Claims decisions, all expenses, and all tasks performed in administering the notice and Claims review processes.

## VII. NOTICE TO THE SETTLEMENT CLASS

### A. Notice

1. No later than ten (10) days after entry of the Preliminary Approval Order, Tom's shall provide the Settlement Administrator with a database containing the names, last-known addresses, and last-known telephone numbers of any individuals who purchased any Covered Product directly from Tom's during the Class Period with shipping addresses in the United States.

2. No later than fourteen (14) days after the entry by the Court of a Preliminary Approval Order, the Settlement Administrator shall cause the Class Notice to be disseminated to potential Settlement Class Members. The Parties agree that internet notice, directed website notice, national publication notice and, where practicable, direct mail notice, are the best means under the circumstances of this case to effect notice to the Settlement Class and that the Notice Program outlined in Exhibit 5 comports with the requirements of due process. Notice shall be disseminated pursuant to the Notice Program set forth in Exhibit 5 on or before the Notice Date. Copies of the proposed forms of Class Notice and the Notice Program are attached as Exhibits 6 and 7.

3. At or prior to the Final Approval Hearing, the Settlement Administrator shall provide the Court with an affidavit attesting that Notice was disseminated pursuant to the Notice Program.

**B. Long-form Notice**

The Class Notice shall be in substantially the form of Exhibit 7, attached hereto. At a minimum, the Long-form Notice shall: (a) include a short, plain statement of the background of the Action and the proposed Agreement; (b) describe the proposed Settlement relief as set forth in this Agreement; (c) inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief; (d) describe the procedures for participating in the Settlement, including all applicable deadlines, and advise Settlement Class Members of their rights, including their right to submit a Claim to receive an Award under the Agreement by submitting the Claim Form; (e) explain the scope of the Release; (f) state that any Award to Settlement Class Members under the Agreement is contingent on the Court's final approval of the Agreement; (g) state the identity of Class Counsel and the amount sought in Attorneys' Fees and Expenses; (h) explain the procedures for opting out of the Settlement Class, including the applicable deadline for opting out; (i) explain the procedures for objecting to the Agreement, including the applicable deadline; and (j) explain that any judgment or orders entered in the Action, whether favorable or unfavorable to the Settlement Class, shall include and be binding on all Settlement Class Members who have not been excluded.

**C. Short-form Notice**

The Short-form Notice shall be in substantially the form attached hereto as Exhibit 6, attached hereto. At a minimum, the Short-form Notice shall: (a) include the web address of the Settlement Website and a telephone number for the Settlement Administrator; (2) include the class definition; (3) include a brief description of relief available to the Settlement Class Members; and (4) inform of the right to object and/or opt-out of the Settlement Class and the deadlines to exercise these rights.

**D. Notice Program and Dissemination of the Class Notice**

1. Publication Notice: The Short-form Notice shall be published in accordance with the Notice Program set forth in Exhibit 5 no later than thirty (30) days from entry of a Preliminary Approval Order. As set forth in Exhibit 5, publication will include online media, national publication, electronic notice and, where practicable, direct mail notice.

2. Posting of the Notice: No later than five (5) days from an Order of Preliminary Approval, the Settlement Administrator will post the Long-form Notice and Claim Form on the Settlement Website. The Long-form Notice and Claim Form shall remain available by these means until the Effective Date. The Long-form Notice and/or the Short-form Notice and the Claim Form may also be posted on the website(s) of Class Counsel, at its option.

3. Upon Request: The Long-form Notice and the Claim Form shall also be sent via electronic mail or U.S. mail to Settlement Class Members who so request.

## VIII. OBJECTIONS, REQUESTS FOR EXCLUSION, AND MEDIA COMMUNICATIONS

### A. Objections

1. Any Settlement Class Member who intends to object to the fairness of the Settlement must do so in writing no later than the Objection Date. The written objection must be filed with the Court and served on Class Counsel identified in the Notice and Tom's Counsel no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, of his/her counsel; (c) a statement that the objector purchased Covered Products during the period of time described in the Settlement Class definition; (d) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (e) a statement of the objection and the grounds supporting the objection; (f) copies of any papers, briefs, or other documents upon which the objection is based; (g) the name and case number of all objections to class action settlements made by the objector in the past five (5) years; and (h) the objector's signature.

2. Any Settlement Class Member who files and serves a written objection, as described in the preceding Section, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Agreement, including Attorneys' Fees and Expenses. Settlement Class Members or their attorneys who intend to make an appearance at the Final Approval Hearing must serve a notice of intention to appear on the Class Counsel identified in the Class Notice, and to Tom's Counsel, and file the notice of appearance with the Court, no later than twenty (20) days before the Final Approval Hearing, or as the Court may otherwise direct.

3. Any Settlement Class Member who fails to comply with the provisions of Section VIII(A) above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

**B. Requests for Exclusion**

1. Any member of the Settlement Class may request to be excluded from the Settlement Class. A Settlement Class Member who wishes to opt out of the Settlement Class must do so no later than Opt-Out Date. In order to opt out, a Settlement Class Member must send to the Settlement Administrator a

written Request for Exclusion that is postmarked no later than the Opt-Out Date. The Request for Exclusion must be personally signed by the Settlement Class Member requesting exclusion and contain a statement that indicates a desire to be excluded from the Settlement Class.

2. Any Settlement Class Member who does not file a timely written Request for Exclusion shall be bound by all subsequent proceedings, orders and the Final Judgment and Order Approving Settlement in this Action, even if he or she has pending, or subsequently initiates, litigation, arbitration or any other proceeding against Defendant relating to the Released Claims.

3. Any Settlement Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Action or the other actions relating to the Agreement; (b) be entitled to an Award from the Settlement Fund, or be affected by the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Agreement.

4. The Settlement Administrator shall provide Class Counsel and Tom's Counsel with a final list of all timely Requests for Exclusion within five (5) business days after the Opt-Out Date. Plaintiffs shall file the final list of all timely Requests for Exclusion prior to or at the Final Approval Hearing.

**C. Media Communications**

1. Following the issuance of a Preliminary Approval Order providing for dissemination of the Class Notice, the Parties agree that they may issue a joint press release, the content of which is in the form of Exhibit 9. Defendant and Class Counsel may post the joint press release on Defendant's website and Class Counsel's website, if they so choose.

2. The Parties agree that representatives of Class Counsel are the sole people authorized to respond on behalf of Plaintiffs to media inquiries or requests for comments with respect to the Settlement or the underlying subject matter. Class Counsel will consult with Tom's Counsel about the content of any such proposed response and they will reach an agreement with respect to the same, which agreement shall be consistent with the content and purposes of this stipulation and the proposed Settlement. Nothing herein shall prevent Class Counsel from responding to class member inquiries regarding the Settlement in a manner consistent with the terms and conditions of this Agreement.

## IX. RELEASES

A. The Agreement shall be the sole and exclusive remedy for any and all Released Claims of all Releasing Parties against all Released Parties. No Released Party shall be subject to liability of any kind to any Releasing Party with respect to any Released Claim. Upon the Effective Date, and subject to fulfillment of all of

the terms of this Agreement, each and every Releasing Party shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim against any Released Party in any court or any forum.

B. The following terms have the meanings set forth herein:

1. "Released Claims" means any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature that could reasonably have been, or in the future might reasonably be asserted by Plaintiffs or members of the Settlement Class either in the Actions or in any action or proceeding in this Court or in any other court or forum, against the Released Persons, including damages, costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity arising out of or relating to legal claims made by the Plaintiffs or Members of the Settlement Class arising out of or relating to the allegations in the Actions or Tom's labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution of all Covered Products as alleged in the Actions. For avoidance of doubt, this includes, *inter alia*, all such claims that related in any way to "natural" or "naturally dry" statements that are contained on the Covered Products or otherwise relate to the labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution of the Covered Products as "natural" in connection with the Released Persons' advertising, marketing, packaging, promotion, manufacture, sale and distribution

of all Covered Products (as well as future identical statements about Covered Products), which have been asserted or which could reasonably have been asserted by the Releasing Parties in the Action, including but not limited to claims alleging any type of fraud, misrepresentation, breach of warranty, unjust enrichment or unfair trade practice under any state or federal law (including all claims for injunctive or equitable relief), but not including claims for personal injury. If future identical statements are made about Covered Products, Settlement Class Members release only claims related to Covered Ingredients. Plaintiffs and the Settlement Class agree that the labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution modifications described herein related to the Covered Products are satisfactory to the Plaintiffs and the Settlement Class and alleviate the alleged deficiencies with regard to labeling, marketing, advertising, packaging, promotion, manufacture, sale and distribution of the Covered Products as set forth in or related to the Complaints.

2. “Released Parties” means Tom’s, including all of its respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and affiliates, and any and all of their past, present and future officers, directors, employees, stockholders, partners, agents, servants, successors, attorneys, insurers, representatives, licensees, licensors, subrogees and assigns. It is expressly

understood that, to the extent a Released Party is not a Party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

3. "Releasing Parties" means Plaintiffs and each and every Settlement Class Member.

C. On the Effective Date, each Releasing Party shall be deemed to have released and forever discharged each of the Released Parties of and from any and all liability for any and all Released Claims.

D. With respect to any and all Released Claims, and upon the Effective Date without further action, for good and valuable consideration, Plaintiffs, on behalf of themselves and the Settlement Class and as the representatives of the Settlement Class, shall fully, finally, and forever expressly waive and relinquish with respect to the Released Claims, any and all provisions, rights, and benefits of Section 1542 of the California Civil Code and any and all similar provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

E. On the Effective Date, each of the Released Parties shall be deemed to have released and forever discharged each of the Releasing Parties and their respective counsel, including Plaintiffs' Counsel, for all claims arising out of or relating to the institution, prosecution and resolution of the Action, except to enforce terms and conditions contained in this Agreement.

F. The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Parties and the Settlement Class Members to interpret and enforce the terms, conditions, and obligations under the Agreement.

## X. ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS SERVICE AWARDS

A. The award of Attorneys' Fees and Expenses will be paid from the Settlement Fund and as set forth in Section IV(C) above. Class Counsel shall make, and Tom's agrees not to oppose, an application for an award of Attorneys' Fees and Expenses not to exceed $1.5 million. The application for an award of Attorneys' Fees and Expenses will be made by Class Counsel on behalf of themselves and Plaintiffs' Counsel. Class Counsel shall be responsible for allocating and distributing the Attorneys' Fees and Expenses award to Plaintiffs' Counsel. Class Counsel must make application for any such award at least fourteen (14) days before the deadline for Class Members to object to the Settlement or be excluded from the Settlement Class.

B. The Attorneys' Fees and Expenses awarded by the Court shall be paid to Class Counsel within ten (10) calendar days after the Effective Date. If the Final Judgment and Order Approving Settlement is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Final Judgment and Order Approving Settlement, then Class Counsel and Plaintiffs' Counsel shall, within fifteen (15) days of such event, re-pay to the Escrow Account, as applicable, the full amount of the Attorneys' Fees and Expenses or re-pay the amount by which the award has been reduced.

C. Tom's agrees not to oppose an application for Plaintiffs' Service Awards in the amount of $2,000 to each of the Plaintiffs. The Service Awards to these Plaintiffs will be in addition to the other consideration to the Settlement Class Members, as set forth in Section III above.

D. Tom's will pay the Service Awards approved by the Court up to the amount identified above in addition to the benefits that these Plaintiffs are entitled to receive as Settlement Class Members and Authorized Claimants. Tom's will pay the Service Awards within ten (10) days of the Effective Date.

## XI. FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT

This Agreement is subject to and conditioned upon the issuance by the Court of the Final Judgment and Order Approving Settlement that finally certifies the

Settlement Class for the purposes of this Settlement, grants final approval of the Agreement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.

## XII. PERMITTED CONDUCT

A. Subject to the modifications set forth in this Agreement, Class Members and Class Counsel agree that nothing in this Agreement shall prevent Tom's from labeling, marketing, and advertising its products as being "natural" when they are made of ingredients listed as "natural," "approved" "certified," or that have been validated or designated as "natural" by ECOCERT, NATRUE, BDIH, COSMOS, the Natural Products Association, the United States Department of Agriculture (USDA), the National Standards Foundation (NSF), or any other like Natural Certification Organization.

B. Nothing in this Agreement shall prohibit or limit Tom's right or ability to use or permit others to use, in accordance with all applicable laws and regulations, its licenses, logos, taglines, product descriptors, or registered trademarks.

C. Nothing in this Agreement shall preclude Tom's from making "natural" claims in accordance with applicable FDA, USDA or other federal regulations, or in accordance with any like state regulations.

D. Nothing in this Agreement shall preclude Tom's from making any product formulation, labeling, marketing, advertising, or packaging changes to its products that (i) Tom's reasonably believes are necessary to comply with any changes to any applicable statute, regulation, pronouncement, guidance, or other law of any kind (including but not limited to the Federal Food, Drug and Cosmetic Act, FDA regulations, U.S. Department of Agriculture regulations, Federal Trade Commission regulations, and/or the California Sherman Food, Drug, and Cosmetic Law); or (ii) are necessitated by product changes and/or reformulations to ensure that Tom's provides accurate product descriptions; and do not significantly differ from the changes agreed to in this Agreement, including particularly the utilization of "natural" ingredients discussed in Section XII. A. above as substitutes for ingredients presently used in the Covered Products.

## XIII. REPRESENTATIONS AND WARRANTIES

A. Tom's represents and warrants: (1) that it has the requisite corporate power and authority to execute, deliver and perform the Agreement and to consummate the transactions contemplated hereby; (2) that the execution, delivery and performance of the Agreement and the consummation by it of the actions

contemplated herein have been duly authorized by necessary corporate action on the part of Tom's; and (3) that the Agreement has been duly and validly executed and delivered by Tom's and constitutes its legal, valid and binding obligation.

B. Plaintiffs represent and warrant that they are entering into the Agreement on behalf of themselves individually and as proposed representative of the Settlement Class Members, of their own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court. Plaintiffs represent and warrant that they have reviewed the terms of the Agreement in consultation with Class Counsel and believe them to be fair and reasonable. Class Counsel represent and warrant that they are fully authorized to execute the Agreement on behalf of Plaintiffs.

C. The Parties warrant and represent that no promise, inducement or consideration for the Agreement has been made, except those set forth herein.

## XIV. NO ADMISSIONS, NO USE

The Agreement and every stipulation and term contained in it is conditioned upon final approval of the Court and is made for settlement purposes only. Whether or not consummated, this Agreement shall not be: (a) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by Plaintiffs, Tom's, any Settlement Class Member or Releasing or Released Party, of the truth of any fact alleged or

the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party; or (b) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or in any way referred to for any other reason, by Plaintiffs, Tom's, any Releasing Party or Released Party in the Action or in any other civil, criminal or administrative action or proceeding other than such proceedings as may be necessary to effectuate the provisions of the Agreement.

## XV. MISCELLANEOUS PROVISIONS

A. Entire Agreement: The Agreement, including all Exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the Agreement and shall supersede any previous agreements, representations, communications and understandings among the Parties with respect to the subject matter of the Agreement. The Agreement may not be changed, modified, or amended except in a writing signed by one of Class Counsel and one of Tom's Counsel and, if required, approved by the Court. The Parties contemplate that the Exhibits to the Agreement may be modified by subsequent agreement of Tom's and Class Counsel, or by the Court. The Parties may make non-material changes

to the Exhibits to the extent deemed necessary, as agreed to in writing by all Parties.

B. Governing Law: The Agreement shall be construed under and governed by the laws of the state in which the Court is located, applied without regard to laws applicable to choice of law.

C. Execution in Counterparts: The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures scanned to PDF and sent by e-mail shall be treated as original signatures and shall be binding.

D. Notices: Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class U.S. Mail and email to:

1. If to Plaintiffs or Class Counsel:

James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063
jshah@sfmslaw.com

James F. Clapp
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Dr. Ste. 970
San Diego, CA 92122
jclapp@sdlaw.com

2. If to Tom's or Tom's Counsel:

David K. Callahan
LATHAM & WATKINS, LLP
233 South Wacker drive, Suite 5800
Chicago, IL 60600
david.callahan@lw.com; and

Tom's of Maine
Division General Counsel for North America
300 Park Avenue
New York, New York 10022

E. Stay of Proceedings: Upon the execution of this Agreement, all discovery and other proceedings in the Actions shall be stayed until further order of the Court, except for proceedings that may be necessary to implement the Agreement or comply with or effectuate the terms of this Settlement Agreement.

F. Good Faith: The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement.

G. Binding on Successors: The Agreement shall be binding upon, and inure to the benefit of, the heirs of the Released Parties.

H. Arms'-Length Negotiations: The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel. This Agreement shall not be

construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

I. Waiver: The waiver by one Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

J. Variance: In the event of any variance between the terms of this Agreement and any of the Exhibits hereto, the terms of this Agreement shall control and supersede the Exhibit(s).

K. Exhibits: All Exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

L. Taxes: No opinion concerning the tax consequences of the Agreement to any Settlement Class Member is given or will be given by Tom's, Tom's Counsel, Class Counsel, or Plaintiffs' Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Agreement as to any Settlement Class Member. Each Settlement Class Member is responsible for his/her tax reporting and other obligations respecting the Agreement, if any.

M. Implementation Before Effective Date: The Parties may agree in writing to implement the Agreement, or any portion thereof, after the entry of the Final Judgment and Order Approving Settlement, but prior to the Effective Date.

N. Modification in Writing: This Agreement may be amended or modified only by written instrument signed by one of Class Counsel and one of Tom's Counsel. Amendments and modifications may be made without additional notice to the Settlement Class Members unless such notice is required by the Court.

O. Integration: This Agreement represents the entire understanding and agreement among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings related to the subject matter of this Agreement. The Parties acknowledge, stipulate and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or undertaking concerning any part or all of the subject matter of this Agreement has been made or relied upon except as set forth expressly herein.

P. Retain Jurisdiction: The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the agreement embodied in this Agreement.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

Dated: July 24, 2015

By: David Callahan / mm
David Callahan, Esq.
Latham & Watkins, LLP
Attorneys for Tom's of Maine, Inc.

Dated: July 24, 2015

By: Betsy [signature]
Betsy Fishbone
Vice President and Senior Associate General Counsel
Defendant Tom's of Maine, Inc.

Dated:____________________

By:______________________________
Melissa Wolchansky, Esq.
Halunen Law
Attorneys for Plaintiff Martin and the Settlement Class Members

Dated:____________________

By:______________________________
Michael R. Reese, Esq.
Reese LLP
Attorneys for Plaintiff Martin and

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

Dated:____________________ By:______________________________
David Callahan, Esq.
Latham & Watkins, LLP
Attorneys for Tom's of Maine, Inc.

Dated:____________________ By:______________________________
Betsy Fishbone
Senior Vice President and Senior
Associate General Counsel
Defendant Tom's of Maine, Inc.

Dated: July 24, 2015 By:______________________________
Melissa Wolchansky, Esq.
Halunen Law
Attorneys for Plaintiff Martin and the
Settlement Class Members

Dated:____________________ By:______________________________
Michael R. Reese, Esq.
Reese LLP
Attorneys for Plaintiff Martin and

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

Dated:______________________ By:______________________________
David Callahan, Esq.
Latham & Watkins, LLP
Attorneys for Tom's of Maine, Inc.

Dated:______________________ By:______________________________
Betsy Fishbone
Senior Vice President and Senior Associate General Counsel
Defendant Tom's of Maine, Inc.

Dated:______________________ By:______________________________
Melissa Wolchansky, Esq.
Halunen Law
Attorneys for Plaintiff Martin and the Settlement Class Members

Dated: July 24, 2015 By: [signature]
Michael R. Reese, Esq.
Reese LLP
Attorneys for Plaintiff Martin and the Settlement Class Members

the Settlement Class Members

Dated:____________________

By: ________________________________
James F. Clapp, Esq.
Dostart Clapp Hannink & Coveney, LLP
Attorneys for Plaintiff Nelson and for the Settlement Class Members

Dated:____________________

By:________________________________
James C. Shah, Esq.
Shepherd, Finkelman, Miller & Shah LLP
Attorneys for Plaintiff Gay and for the Settlement Class Members

Dated:____________________

By:________________________________
Shireen Mohsenzadegen, Inc.,. Esq.
Attorneys for Plaintiffs Morales and Kenney

Dated:____________________

By:________________________________
Aashish Desai, Esq.
Desai Law Firm, P.C.
Attorney for Plaintiff Gamez

Dated:____________________

By:________________________________
Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
Attorney for Plaintiff Gay and for the Settlement Class Members

the Settlement Class Members

Dated:____________________ By:______________________________
James F. Clapp, Esq.
Dostart Clapp Hannink & Coveney, LLP
Attorneys for Plaintiff Nelson and for the Settlement Class Members

Dated: 7/24/15____________ By: [signature]
James C. Shah, Esq.
Shepherd, Finkelman, Miller & Shah LLP
Attorneys for Plaintiff Gay and for the Settlement Class Members

Dated:____________________ By:______________________________
Shireen Mohsenzadegen, Inc.,. Esq.
Attorneys for Plaintiffs Morales and Kenney

Dated:____________________ By:______________________________
Aashish Desai, Esq.
Desai Law Firm, P.C.
Attorney for Plaintiff Gamez

Dated:____________________ By:______________________________
Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
Attorney for Plaintiff Gay and for the Settlement Class Members

LLP
Attorneys for Plaintiff Nelson and for the Settlement Class Members

Dated:____________________ By:______________________________

James C. Shah, Esq.
Shepherd, Finkelman, Miller & Shah LLP
Attorneys for Plaintiff Gay and for the Settlement Class Members

Dated: 7/23/15 By: [signature]

Shireen Mohsenzadegen, Inc.,. Esq.
Attorneys for Plaintiffs Morales and Kenney

Dated:____________________ By:______________________________

Aashish Desai, Esq.
Desai Law Firm, P.C.
Attorney for Plaintiff Gamez

Dated:____________________ By:______________________________

Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
Attorney for Plaintiff Gay and for the Settlement Class Members

the Settlement Class Members

Dated:____________________ By:________________________________
James F. Clapp, Esq.
Dostart Clapp Hannink & Covenery, LLP
Attorneys for Plaintiff Nelson and for the Settlement Class Members

Dated:____________________ By:________________________________
James C. Shah, Esq.
Shepherd, Finkelman, Miller & Shah LLP
Attorneys for Plaintiff Gay and for the Settlement Class Members

Dated:____________________ By:________________________________
Shireen Mohsenzadegen, Inc.,. Esq.
Attorneys for Plaintiffs Morales and Kenney

Dated: 7/24/15 By: [signature]
Aashish Desai, Esq.
Desai Law Firm, P.C.
Attorney for Plaintiff Gamez

Dated:____________________ By:________________________________
Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
Attorney for Plaintiff Gay and for the Settlement Class Members

the Settlement Class Members

Dated:____________________

By:______________________________
James F. Clapp, Esq.
Dostart Clapp Hannink & Coveney, LLP
Attorneys for Plaintiff Nelson and for the Settlement Class Members

Dated:____________________

By:______________________________
James C. Shah, Esq.
Shepherd, Finkelman, Miller & Shah LLP
Attorneys for Plaintiff Gay and for the Settlement Class Members

Dated:____________________

By:______________________________
Shireen Mohsenzadegen, Inc.,. Esq.
Attorneys for Plaintiffs Morales and Kenney

Dated:____________________

By:______________________________
Aashish Desai, Esq.
Desai Law Firm, P.C.
Attorney for Plaintiff Gamez

Dated: 7.24.2015

By:______________________________
Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
Attorney for Plaintiff Gay and for the Settlement Class Members

Dated: 7/23/15

By: [signature]
Plaintiff Molly Martin

Dated:____________________

By:______________________________
Plaintiff Sandahl Nelson

Dated:____________________

By:______________________________
Plaintiff Lorette Kenney

Dated:____________________

By:______________________________
Plaintiff Allison Gay

Dated:____________________

By:______________________________
Plaintiff Claudia Morales

Dated:____________________

By:______________________________
Plaintiff Genevieve Gamez

Dated:____________________ By:______________________________
Plaintiff Molly Martin

Dated: 7/23/15 By:______________________________
Plaintiff Sandahl Nelson

Dated:____________________ By:______________________________
Plaintiff Lorette Kenney

Dated:____________________ By:______________________________
Plaintiff Allison Gay

Dated:____________________ By:______________________________
Plaintiff Claudia Morales

Dated:____________________ By:______________________________
Plaintiff Genevieve Gamez

Dated:____________________ By:______________________________

Plaintiff Molly Martin

Dated:____________________ By:______________________________

Plaintiff Sandahl Nelson

Dated: 7/23/15 By: Lorette Kenney

Plaintiff Lorette Kenney

Dated:____________________ By:______________________________

Plaintiff Allison Gay

Dated:____________________ By:______________________________

Plaintiff Claudia Morales

Dated:____________________ By:______________________________

Plaintiff Genevieve Gamez

Dated:____________________ By:______________________________
Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
Attorney for Plaintiff Gay and for the Settlement Class Members

Dated:____________________ By:______________________________
Plaintiff Molly Martin

Dated:____________________ By:______________________________
Plaintiff Sandahl Nelson

Dated:____________________ By:______________________________
Plaintiff Lorette Kenney

Dated: 7/24/2015 By:______________________________
Plaintiff Allison Gay

Dated:____________________ By:______________________________
Plaintiff Claudia Morales

Dated:____________________ By:______________________________
Plaintiff Genevieve Gamez

Dated:____________________ By:______________________________
Plaintiff Molly Martin

Dated:____________________ By:______________________________
Plaintiff Sandahl Nelson

Dated:____________________ By:______________________________
Plaintiff Lorette Kenney

Dated:____________________ By:______________________________
Plaintiff Allison Gay

Dated: 7/24/15 By: Claudia [signature]
Plaintiff Claudia Morales

Dated:____________________ By:______________________________
Plaintiff Genevieve Gamez

Dated:________________ By:________________
Plaintiff Molly Martin

Dated:________________ By:________________
Plaintiff Sandahl Nelson

Dated:________________ By:________________
Plaintiff Lorette Kenney

Dated:________________ By:________________
Plaintiff Allison Gay

Dated:________________ By:________________
Plaintiff Claudia Morales

Dated: 7/24/2015 By: Genevieve Gamez
Plaintiff Genevieve Gamez

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

ALLISON GAY, SANDAHL NELSON, MOLLY MARTIN, LORETTE KENNEY, CLAUDIA MORALES AND GENEVIEVE GAMEZ, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

vs.

TOM'S OF MAINE, INC.,

Defendant.

No. 0:14-CV-60604-KMM

CLASS ACTION

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS, AND PROVIDING FOR NOTICE AND SCHEDULING ORDER**

WHEREAS, Plaintiffs in the action entitled, *Gay, et al. v. Tom's of Maine, Inc.*, 0:14-CV-60604-KMM (S.D. Florida) and Tom's of Maine, Inc., have entered into a Stipulation of Settlement[1], filed ____________________, after arm's-length Settlement discussions;

WHEREAS, the Court has received and considered the Stipulation, including the accompanying exhibits;

WHEREAS, the Parties have made an application for an Order preliminarily approving the Settlement of this Action, and for its dismissal with prejudice upon the terms and conditions set forth in the Stipulation;

WHEREAS, the Court has reviewed the Parties' application for such Order, and has found good cause for same.

NOW, THEREFORE, IT IS HEREBY ORDERED:

**A. The Settlement Class Is Conditionally Certified**

1. Pursuant to Federal Rule of Civil Procedure 23, and for Settlement purposes only, the Court hereby certifies the following Class:

> All individuals in the United States who purchased Tom's of Maine, Inc.'s "natural" products from March 25, 2009 until **(the date notice of this Settlement to the Class is first published).** Specifically excluded from the Class are (i) those who purchased Covered Products for purpose of resale; (ii) those with claims for personal injuries arising from the use of Covered Products; (iii) Defendant and its officers, directors and employees; (iv) any person who files a valid and timely Request for Exclusion; and (v) the Judges to whom this Action is assigned and any members of their immediate families.

2. With respect to the Class and for Settlement purposes only, the Court preliminarily finds the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been met, including: (a) numerosity; (b) commonality; (c) typicality; (d)

---

[1] All capitalized terms herein shall have the same meanings as set forth in the Stipulation unless otherwise specifically defined.

adequacy of the Class representatives and Class Counsel; (e) predominance of common questions of fact and law among the Class for purposes of Settlement; and (f) superiority.

3. Pursuant to Federal Rule of Civil Procedure 23, the Court hereby appoints the Plaintiffs in the Action, Allison Gay, Sandahl Nelson, Molly Martin, Lorette Kenney, Claudia Morales, and Genevieve Gamez, the Class representatives.

4. Having considered the factors set forth in Federal Rule of Civil Procedure 23(g)(1), the Court hereby appoints the law firms of Shepherd, Finkelman, Miller & Shah, LLP; Reese LLP' Halunen Law; Dostart Clapp & Coveney, LLP and The Feinberg Law Firm, as Class Counsel.

**B. The Stipulation Is Preliminarily Approved and Final Approval Schedule Set**

5. The Court hereby preliminarily approves the Agreement and the terms and conditions of Settlement set forth therein, subject to further consideration at the Final Approval Hearing described below.

6. The Parties understand that in connection with the Final Approval process, Plaintiffs will request attorneys' fees not to exceed 23% of the settlement fund, or One Million Thirty-Five Thousand Dollars ($1,035,000.00) and no more than Fifty Thousand Dollars ($50,000.00) in expenses.

7. The Court has conducted a preliminary assessment of the fairness, reasonableness, and adequacy of the Agreement, and hereby finds that the Settlement falls within the range of reasonableness meriting possible final approval. The Court therefore preliminarily approves the proposed Settlement as set forth in the Agreement.

8. Pursuant to Federal Rule of Civil Procedure 23(e), the Court will hold a Final Approval Hearing on _____, at ____ a.m./p.m., in the Courtroom of the Honorable K. Michael

Moore, United States District Court for the Southern District of Florida, 400 North Miami Ave., Miami, FL 33128, for the following purposes:

(a) to finally determine whether the Class meets all applicable requirements of Federal Rule of Civil Procedure 23 and, thus, should be certified for purposes of effectuating the Settlement;

(b) to determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Agreement is fair, reasonable and adequate and should be finally approved by the Court;

(c) to consider the application of Class Counsel for an award of Attorneys' Fees and Expenses, as provided for under the Agreement;

(d) to consider the applications of Plaintiffs for Class representative incentive awards, as provided for under the Agreement;

(e) to consider whether the Court should enter the [Proposed] Final Settlement Order and Judgment;

(f) to consider whether the release of the Released Claims as set forth in the Agreement should be provided; and

(g) to rule upon such other matters as the Court may deem just and appropriate.

9. The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to Settlement Class Members.

10. The Parties may further modify the Agreement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement

provided thereunder. The Court may approve the Agreement with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Settlement Class Members.

11. All papers in support of the Settlement and any application for an award of Attorneys' Fees and Expenses and/or Class representative incentive awards must be filed with the Court and served at least fourteen (14) days prior to the Final Approval Hearing.

**C. The Court Approves the Form and Method of Class Notice**

12. The Court approves, as to form and content, the proposed Publication Notice and Class Notice (collectively the "Notice"), which are Exhibits 7 and 8, respectively, to the Agreement.

13. The Court finds that the distribution of Notice, substantially in the manner and form set forth in the Agreement, meets the requirements of Federal Rule of Civil Procedure 23 and due process, is the best Notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

14. The Court approves the designation of Dahl Administration to serve as the Court-appointed Settlement Administrator for the Settlement. The Settlement Administrator shall cause the Publication Notice to be published, disseminate Class Notice, and supervise and carry out the Notice procedure, the processing of Claims, and other administrative functions, and shall respond to Settlement Class Member inquiries, as set forth in the Agreement and this Order under the direction and supervision of the Court.

15. The Court directs the Settlement Administrator to establish a Settlement Website, making available copies of this Order, Class Notice, Claim Forms (that may be downloaded and submitted online, by mail, or by facsimile), the Agreement and all Exhibits thereto; a toll-free hotline, and such other information as may be of assistance to Settlement Class Members or required under the Agreement. The Class Notice and Claim Forms shall be made available to

Settlement Class Members through the Settlement Website on the date Notice is first published and continuously thereafter through the Effective Date (and on the websites of Class Counsel during the same period).

16. The costs of Notice, processing of Claims of Settlement Class Members, creation and maintenance of the Settlement Website, and all other Claim Administrator and Notice expenses, shall be paid by Defendant in accordance with the applicable provisions of the Agreement.

**D. Procedure for Class Members to Participate in the Settlement**

17. The Court approves the Parties' proposed Claim Form. Any Settlement Class Member who wishes to participate in the Settlement shall complete a Claim Form in accordance with the instructions contained therein and submit it to the Claim Administrator by the date approved by the Court and which will be specifically identified in the Claim Form. Such deadline may be further extended without notice to the Class by written agreement of the Parties.

18. The Claim Administrator shall have the authority to accept or reject claims in accordance with the Agreement.

19. Any Settlement Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel who is qualified to appear in the jurisdiction. All Class Members who do not enter an appearance will be represented by Class Counsel.

**E. Procedure for Requesting Exclusion from the Class**

20. All Settlement Class Members who do not timely exclude themselves from the Class shall bebound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Class.

21. Any person or entity falling within the definition of the Class may, upon his, her or its request, be excluded from the Class. In order to opt out (be excluded), a Settlement Class

Member must send the Settlement Administrator a written Request for Exclusion that is postmarked no later than the Opt-Out Date. The Request for Exclusion must be personally signed by the Settlement Class Member requesting exclusion and contain a statement that indicates a desire to be excluded from the Settlement Class.

22. Any Settlement Class Member who does not file a timely written Request for Exclusion shall be bound by all subsequent proceedings, Orders and the Final Judgment and Order Approving Settlement in this Action, even if he, she or it has pending, or subsequently initiates, litigation, arbitration or any other proceeding against Defendant relating to the Released Claims. All Settlement Class Members who submit valid and timely Requests for Exclusion in the manner set forth in the Stipulation shall have no rights under the Agreement and shall not be bound by the Stipulation or the Final Judgment and Order.

23. A list reflecting all parties filing timely Requests for Exclusions shall be filed with the Court by the Parties prior to the Final Approval Hearing.

**F. Procedure for Objecting to the Settlement**

24. Any Settlement Class Member who intends to object to the fairness of the Settlement must do so in writing no later than the Objection Date. The written objection must be filed with the Court and served on Class Counsel identified in the Notice and Tom's Counsel no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, of his/her/its counsel; (c) a statement that the objector purchased Covered Products during the period of time described in the Settlement Class definition; (d) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (e) a statement of the objection and the grounds supporting the objection; (f) copies of any papers, briefs, or other documents upon which the objection is based; (g) the name and case number of

all objections to class action settlements made by the objector in the past five (5) years; and (h) the objector's signature. The Court will consider such objection(s) and papers only if such papers are timely received by the Clerk of the Court and by Class Counsel and by Defendant's Counsel. Such papers must be sent to each of the following persons:

Clerk of the Court
United States District Court
Southern District of Florida
440 North Miami Ave
Miami, FL 33128

James C. Shah
Shepherd, Finkelman, Miller & Shah, LLP
35 E. State Street
Media, PA 19106

David K. Callahan
Latham & Watkins LLP
330 N. Wabash, Suite 2800
Chicago, IL 60611

25. Each Settlement Class Member submitting an objection must state whether he, she or it (or his, her or its attorney) intends to appear at the Final Approval Hearing.

26. Attendance at the Final Approval Hearing is not necessary; however, any Settlement Class Member wishing to be heard orally with respect to approval of the Settlement, the applications for Attorneys' Fees and Expenses, or the application for Class representative incentive awards is required to provide written notice of their intention to appear at the Final Approval Hearing by the Objection Date. A Settlement Class Member's failure to submit a written objection in accordance with the procedure set forth in the Class Notice waives any right the Settlement Class Member may have to object to the Settlement, to appear at the Final Approval Hearing, or to appeal or seek other review of the Final Judgment and Order.

**G. Nationwide Stay and Preliminary Injunction**

27. Effective immediately, any actions or proceedings pending in any state or federal court in the United States involving Tom's of Maine's Products, except any matters necessary to implement, advance, or further approval of the Settlement Agreement or settlement process, are stayed pending the final Fairness Hearing and the issuance of a final order and judgment in this Action,

28. In addition, pending the final Fairness Hearing and the issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminarily enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction arising out of or relating to the Tom's of Maine Products or the facts and circumstances at issue in the Action.

29. Additionally, pending the final Fairness Hearing and issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminary enjoined from filing, commencing, prosecuting, or maintaining any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action in any jurisdiction), on behalf of members of the Settlement Class, if such other class action is based on or relates to Tom's of Maine Products.

30. Under the All Writs Act, the Court finds that issuance of this nationwide stay and injunction is necessary and appropriate in aid of the Court's jurisdiction over this action. The Court finds no bond is necessary for issuance of this injunction.

IT IS SO ORDERED.

DATED: ________________________

________________________________
THE HONORABLE K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

# EXHIBIT 2


SINCE 1970 Tom's OF MAINE
VIDEO | BLOG | BUY NOW | CONTACT US | FACEBOOK
What are you looking for?
PRODUCTS
COMMUNITY
PLANET
OUR COMPANY
Products
No animal testing or animal ingredients
MORE CERTIFICATIONS »
cruelty free
What's inside?
Explore the role of natural ingredients in our products.
Search for ingredient
Learn more about all ingredients »
Our standard
From ingredients to packaging, our Stewardship Model guides every decision we make.
READ MORE »
Community
50 states for good
More than $500,000 to seed grassroots nonprofits.
MEET OUR 2014 RECIPIENTS »
Helping Kids
Download our coloring book and we'll donate toothpaste.
Start now »
Giving back
10% of our profits are donated to human and environmental goodness.
Explore all products »
Wicked Cool!
FACEBOOK
GOOD MATTERS BLOG
TWITTER

Tom's of Maine — Since 1970

VIDEO | BLOG | BUY NOW | CONTACT US | FACEBOOK

What are you looking for?

PRODUCTS
COMMUNITY
PLANET
OUR COMPANY

Planet

# Start young. Live green™

Make every day Earth Day, starting at the bathroom sink.

FUN NEW WAYS IN 2015 »

## Respect for nature

Lightening our environmental footprint is an important goal.

See more »

## Recycling matters

Maximizing recycled content is a priority in our product packaging.

Explore all products »

Our Company

## Happening Now

» TOM'S OF MAINE SHARES ITS CORPORATE ...
» TOM'S OF MAINE CHALLENGES FAMILIES ...
» TOM'S OF MAINE INTRODUCES NEW NATUR ...

VISIT NEWS ROOM »

# Explore the Goodness Report.

We believe in healthy, human and environmental goodness.

SEE OUR VALUES IN ACTION »

## Trusted since 1970

Good people making effective, natural and sustainable solutions for over 40 years.

SEE OUR JOURNEY TOGETHER »

+ FACEBOOK GOOD MATTERS BLOG TWITTER

# EXHIBIT 3

SINCE 1970 Tom's® OF MAINE

NEW!

# BODY LOTION

## daily moisturizing

leaves skin feeling soft, smooth, and healthy



with shea butter

natural

- ✓ NO Phthalates
- ✓ NO Parabens
- ✓ NO Phenoxyethanol

NET WT 6 OZ (170g)

## We believe what's inside matters.™

Our Daily Moisturizing Body Lotion uses carefully selected natural ingredients to reveal your skin's natural glow every day. Precisely formulated with shea butter and coconut oil, this daily moisturizing body lotion leaves skin feeling soft, smooth, and healthy. Dermatologist tested.

Learn more about our Stewardship Model and what "natural" means for Tom's of Maine ingredients and their processing at: **www.tomsofmaine.com**

### What makes a product natural and good? At Tom's, it includes how we make it.

cruelty free

**No** animal testing or animal ingredients.

**No** artificial colors, flavors, fragrance, or preservatives.

I.P.S

We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.

**Sustainable practices** are a priority in every aspect of our business.

**We strive to maximize recycled content** and **recyclability** of our packaging.

**5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

**Ingredients:** water, glycerin, *Cocos nucifera* (coconut) oil, *Butyrospermum parkii* (shea) butter, caprylic/capric triglyceride, stearic acid, cetearyl alcohol, glyceryl stearate citrate, cetearyl olivate, cetyl alcohol, sorbitan olivate, *Aloe barbadensis* leaf juice, natural fragrance, gluconic acid, lactic acid, xanthan gum, sodium hydroxide, benzoic acid, citric acid, *Oryza sativa* (rice) powder, glyceryl caprylate, tocopheryl acetate (vitamin E acetate).

**Directions:** Massage lotion into skin daily.

© Dist. by Tom's of Maine, Inc., Kennebunk, ME 04043 Made in U.S.A.
1-800-FOR-TOMS (1-800- 367-8667) P9893816

0 77326 83277 6

Ⓤ

BPA-Free Tube

0 77326 83277 6

Twist cap to break safety seal.

Helps restore lips' natural moisture leaving them feeling soft and smooth.

SINCE 1970 Tom's® OF MAINE

natural
Lip Balm
moisturizing
peppermint

USDA ORGANIC

NET WT .15 OZ (4.2g)

**Ingredients:** *Helianthus annuus* (sunflower) seed oil*, beeswax*, *Cocos nucifera* (coconut) oil*, *Mentha piperita* (peppermint) oil*, menthol*, tocopherol. *Certified Organic Ingredient

We believe what's inside matters.™

**Learn more at: www.tomsofmaine.com**

© Dist. by Tom's of Maine, Inc., Kennebunk, ME 04043 Made in U.S.A. **P9901638**
1-800-FOR-TOMS • Certified Organic by New Mexico Department of Agriculture

0 77326 83278 3

crueltyfree

0 77326 83278 3

SINCE 1970
Tom's
OF MAINE

natural
**Lip Gloss**
summer sand

NSF

NET WT 0.5 OZ (14g)

We believe what's inside matters.™

Leaves lips with a natural shine.
With Vitamin E

**Ingredients:** *Ricinus communis* (castor) seed oil*, beeswax*, natural flavor, hydrated silica, *Butyrospermum parkii* (shea) butter*, *Theobroma cacao* (cocoa) seed butter*, *Copernicia cerifera* (carnauba) wax*, *Simmondsia chinensis* (jojoba) seed oil*, tocopherol, glycyrrhizic acid, mica, titanium dioxide, iron oxides.

**Learn more at:**
**www.tomsofmaine.com**

cruelty free

0 77326 83288 2

© Dist. by Tom's of Maine, Inc.,Kennebunk, ME 04043
Made in U.S.A. 1-800-FOR-TOMS (1-800-367-8667)
* Certified Organic Ingredient. Certified to NSF/ANSI 305 by QAI
P9890989

Peel at perforation to break safety seal.

0 77326 83288 2

0 77326 83289 9



0 77326 83293 6

medium



MULTI-HEIGHT BRISTLES

SINCE 1970 Tom's OF MAINE

NATURALLY CLEAN



Handle made from plants, not petroleum

BPA

BPA-free

medium

1 toothbrush

medium

SINCE 1970 Tom's OF MAINE

## A more natural way to brush.

**Made from plants.** Handle 99%, and bristles over 60%, made from renewable castor plants.

**BPA-free #7 plastic.** Both handle and bristles.

**No artificial colors.** Dye-free bristles. Handle colored with mineral-based pigments.

**Recyclable.** Through TerraCycle® collection program.

**Simple design, effective cleaning.** Multi-height bristles clean between teeth and along the gumline, and are end-rounded for gentle cleaning. Slim handle features an angled neck for accessing hard-to-reach areas.

**What makes a product good?**
**At Tom's, it includes how we make it.**

cruelty free — **No** animal testing or animal ingredients.

**No** artificial colors, flavors, fragrance, or preservatives.

I.P.S — We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.

**Sustainable practices** are a priority in every aspect of our business.

**We strive to maximize recycled content** and **recyclability** of our packaging.

**5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

Dist.by: Tom's of Maine, Inc. Kennebunk, ME 04043 USA **www.tomsofmaine.com**
**1-800-FOR-TOMS (1-800-367-8667)**
Made in Switzerland 83293A

## Goodness = Less in Landfills

Recycle this toothbrush and other packaging through the TerraCycle® collection program and earn rewards for your favorite non-profit or school.
**Learn how at: tomsofmaine.com/terracycle.**

TERRACYCLE

0 77326 83293 6

Package made with 100% recyclable paperboard and (1) plastic.
Separate paper from plastic to recycle.

(7) BPA-Free Toothbrush

New!

SINCE 1970 Tom's OF MAINE® baby

moisturizing lotion

non-greasy formula
long-lasting moisturization
pediatrician tested

fragrance free

natural

✓ NO Phthalates
✓ NO Parabens
✓ NO Phenoxyethanol

NET WT 6 OZ (170g)

We believe what's inside matters.™

Our baby moisturizing lotion uses carefully selected natural ingredients to keep baby's skin feeling soft without the use of the artificial ingredients found in most conventional baby lotions. Precisely formulated with aloe and shea butter, this lotion soothes baby's delicate skin. Hypoallergenic.

Learn more about our Stewardship Model and what "natural" means for Tom's of Maine ingredients and their processing at: **www.tomsofmaine.com**

**What makes a product natural and good? At Tom's, it includes how we make it.**

- cruelty free — **No** animal testing or animal ingredients.
- **No** artificial colors, flavors, fragrance, or preservatives.
- I.P.S — We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.
- **Sustainable practices** are a priority in every aspect of our business.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

**Ingredients:** water, glycerin, *Cocos nucifera* (coconut) oil, *Butyrospermum parkii* (shea) butter, caprylic/capric triglyceride, stearic acid, cetearyl alcohol, glyceryl stearate citrate, cetearyl olivate, cetyl alcohol, sorbitan olivate, *Aloe barbadensis* leaf juice, gluconic acid, lactic acid, xanthan gum, sodium hydroxide, benzoic acid, citric acid, *Oryza sativa* (rice) powder, glyceryl caprylate, tocopheryl acetate (vitamin E acetate).

**Directions:** Massage lotion into skin daily.

© Dist. by Tom's of Maine, Inc., 302 Lafayette Ctr., Kennebunk, ME 04043
1-800-FOR-TOMS (1-800-367-8667) P9901642

BPA-Free Tube

0 77326 83351 3

0 77326 83351 3

0 77326 83353 7

New!

SINCE 1970 Tom's OF MAINE®

baby

shampoo & wash

tear-free gentle cleansing
for hair & body
pediatrician tested

fragrance free



natural

- NO Phthalates
- NO Parabens
- NO Phenoxyethanol

10 FL OZ (295 mL)

We believe what's inside matters.™

Our baby shampoo & wash uses carefully selected natural ingredients to gently cleanse without the use of the artificial ingredients found in most conventional baby washes. Precisely formulated, this shampoo & wash is gentle enough for everyday use and safe for delicate skin. Hypoallergenic.

Learn more about our Stewardship Model and what "natural" means for Tom's of Maine ingredients and their processing at: www.tomsofmaine.com

What makes a product natural and good? At Tom's, it includes how we make it.

cruelty free — **No** animal testing or animal ingredients.

**No** artificial colors, flavors, fragrance, or preservatives.

I.P.S — We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.

**Sustainable practices** are a priority in every aspect of our business.

**We strive to maximize recycled content** and **recyclability** of our packaging.

**5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

**Ingredients:** water, decyl glucoside, glycerin, sodium chloride, xanthan gum, sodium gluconate, sodium lactate, lactic acid, citric acid.

**Directions:** Squeeze onto a wet washcloth or hands and work into a lather. Rinse and follow up with your favorite Tom's of Maine Baby Moisturizing Lotion.

© Dist. by Tom's of Maine, Inc., 302 Lafayette Ctr., Kennebunk, ME 04043
1-800-FOR-TOMS (1-800-367-8667) **P9901640**

Ⓤ

0 77326 83353 7

2

New!

Since 1970
Tom's of Maine®
baby

sunscreen lotion

**broad spectrum SPF 30**
water resistant (80 minutes)
pediatrician tested
non-nano

*fragrance free*

natural

- ✓ NO Phthalates
- ✓ NO Parabens
- ✓ NO Phenoxyethanol

NET WT 3 OZ (85g)

We believe what's inside matters.™

***Drug Facts***

| ***Active ingredient*** | ***Purpose*** |
|---|---|
| Zinc oxide 20% | Sunscreen |

***Uses*** • helps prevent sunburn
• if used as directed with other sun protection measures decreases the risk of skin cancer and early skin aging caused by the sun

***Warnings***
**For external use only**

**Do not use** on damaged or broken skin

**When using this product** keep out of eyes. Rinse with water to remove.

**Stop use and ask doctor if** rash occurs

**Keep out of reach of children.** If swallowed, get medical help or contact a Poison Control Center right away.

***Directions***
- apply liberally 15 minutes before sun exposure
- reapply:
  - after 80 minutes of swimming or sweating
  - immediately after towel drying
  - at least every two hours
- children under 6 months of age: ask a doctor
- **Sun Protection Measures** Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a Broad Spectrum SPF of 15 or higher and other sun protection measures including:
  - limit time in the sun, especially from 10 a.m. - 2 p.m.
  - wear long-sleeved shirts, pants, hats and sunglasses

***Inactive ingredients*** caprylic/ capric triglyceride, beeswax, *helianthus annuus* (sunflower) seed oil, hydrogenated castor oil.

***Other information***
protect the product in this container from excessive heat and direct sun

***Questions?*** 1-800-FOR TOMS (1-800-367-8667)

Learn more about our stewardship model and what "natural" means at: **www.tomsofmaine.com**

© Dist. by Tom's of Maine, Inc., 302 Lafayette Ctr., Kennebunk, ME 04043 Made in USA

P9895434
BPA-Free
Tube

0 77326 83355 1

0 77326 83355 1

New!

Tom's of Maine — Since 1970

baby

## diaper cream

seals out wetness to help treat & prevent diaper rash

pediatrician tested

fragrance free



natural

- ✓ NO Phthalates
- ✓ NO Parabens
- ✓ NO Phenoxyethanol

NET WT 3 OZ (85g)

We believe what's inside matters.™

**Drug Facts**

| **Active ingredient** | **Purpose** |
| --- | --- |
| Zinc oxide 12% | Skin protectant |

**Uses** • helps treat and prevent diaper rash.
• protects minor skin irritation associated with diaper rash and helps seal out wetness.

**Warnings**

**For external use only**

**When using this product** do not get into eyes.

**Stop use and ask doctor if** condition worsens
• symptoms last more than 7 days or clear up and occur within a few days

**Keep out of reach of children.** If swallowed, get medical help or contact a Poison Control Center right away.

**Directions** • change wet and soiled diapers promptly
• cleanse the diaper area, and allow to dry
• apply cream liberally as often as necessary, with each diaper change, especially at bedtime or anytime when exposure to wet diapers may be prolonged

**Inactive ingredients** caprylic/capric triglyceride, *Helianthus annuus* (sunflower) seed oil, beeswax, hydrogenated castor oil, tocopheryl acetate (vitamin E acetate).

**Other information** Store at 20°C to 25°C (68° F to 77° F).

**Questions?** 1-800-FOR TOMS (1-800-367-8667)

Learn more about our Stewardship Model and what "natural" means for Tom's of Maine ingredients and their processing at:
**www.tomsofmaine.com**

HYPOALLERGENIC

©Dist. by Tom's of Maine, Inc., Kennebunk, ME 04043 Made in U.S.A.
1-800-FOR-TOMS (1-800-367-8667) P9895430

BPA-Free Tube

0 77326 83356 8

0 77326 83356 8


PULL
spearmint
SINCE 1970
Tom's
OF MAINE
naturally waxed
ANTIPLAQUE
flat floss

ADA Accepted American Dental Association ®

naturally waxed

# ANTIPLAQUE

**flat floss**

removes plaque | easy glide

gentle action

spearmint



SINCE 1970 Tom's OF MAINE ®

30 m (32 yds)

naturally waxed ANTIPLAQUE spearmint

Tom's OF MAINE SINCE 1970

Dist. by :
Tom's of Maine, Inc.,
302 Lafayette Ctr.,
Kennebunk ME 04043
Product made in
Malaysia

100% Recycled Paperboard

PRINTED WITH SOY INK

0 77326 98030 9

P9894402

naturally waxed

## ANTIPLAQUE

**Strong between teeth yet gentle on gums**

Our easy glide naturally waxed nylon filaments prevent snapping or fraying while removing particles efficiently and thoroughly to help keep teeth and gums healthy.

**Learn more about our Stewardship Model and what "natural" means for Tom's of Maine ingredients and their processing at: www.tomsofmaine.com**

What makes a product natural and good? At Tom's, it includes how we make it.

- **No** animal testing or animal ingredients.
- We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.
- **Sustainable practices** are a priority in every aspect of our business.
- **No** artificial colors, flavors, fragrance, or preservatives.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

ADA Accepted American Dental Association ®

"The ADA Council on Scientific Affairs' Acceptance of Tom's of Maine Naturally Waxed Antiplaque Flat Floss is based on its finding that the product is effective for removing plaque between teeth and helping to prevent and reduce gingivitis, when used as directed."

**Ingredients:** bees wax, carnauba wax, natural flavor, jojoba wax, *Acacia senegal* gum, *Commiphora myrrha* resin extract, *Propolis cera.*

**Directions:** Grasp about 18" of floss and wrap around middle fingers. Using thumb and fingers of both hands gently work between each tooth to just below the gum line. Disrupt the plaque biofilm by sliding the taut floss in a "C" shape against the surface of each tooth. Make dental professionals happy and use daily.

www.tomsofmaine.com 1-800-FOR-TOMS (1-800-367-8667)

TERRACYCLE

**Goodness = Less in Landfills**
**Visit tomsofmaine.com/terracycle to learn more**

0 77326 98030 9

No bleaching chemicals!

Tom's of Maine — Since 1970

ADA Accepted — American Dental Association ®

natural

clinically proven

SIMPLY WHITE™

fluoride toothpaste

whitening

cavity protection

no artificial dyes or sweeteners

clean mint



NET WT 4.7 OZ (133 g)

0 77326 14806 8

PRINTED WITH SOY INK

100% Recycled Paperboard

DATE CODE AREA

6148

What makes a product natural and good? At Tom's, it includes how we make it.

- **No** animal testing or animal ingredients. (cruelty free)
- We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com. (I.P.S)
- **Sustainable practices** are a priority in every aspect of our business.
- **No** artificial colors, flavors, fragrance, or preservatives.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.



**Employee Volunteer Day**
**Mt. Agamenticus – York, Maine**

**We believe what's inside matters.**™ Our Stewardship Model guides every decision we make, ensuring that our ingredients, processing, and packaging meet our rigorous standards for being natural, sustainable, and responsible. To learn more about our Stewardship Model and what "natural" means at Tom's of Maine, visit **www.tomsofmaine.com**

© Tom's of Maine, Inc., Kennebunk, ME 04043 Made in U.S.A.

P9895063

Tom's of Maine — Since 1970

clinically proven

SIMPLY WHITE™

fluoride toothpaste

clean mint

No bleaching chemicals!

Tom's of Maine — Since 1970 ®

clinically proven | natural

SIMPLY WHITE™

fluoride toothpaste

whitening | cavity protection

no artificial dyes or sweeteners

clean mint



ADA Accepted — American Dental Association ®

NET WT 4.7 OZ (133 g)

COUPONS INSIDE $1.50 VALUE

## Drug Facts

| ***Active ingredient*** | ***Purpose*** |
|---|---|
| Sodium fluoride 0.24% (0.15% w/v fluoride ion) | Anticavity |

***Use*** helps protect against cavities

***Warnings***

**Keep out of reach of children under 6 years of age.**
If more than used for brushing is accidentally swallowed, get medical help or dial (412) 390-3381 right away (Poison Control Center).

***Directions***

## Drug Facts (continued)

| | |
|---|---|
| adults and children 2 years of age and older | brush teeth thoroughly, preferably after each meal or at least twice a day, or as directed by a dentist or physician |
| children 2 to 6 years | use only a pea-sized amount and supervise child's brushing and rinsing (to minimize swallowing) |
| children under 2 years | ask a dentist or physician |

***Inactive ingredients*** hydrated silica, water, sorbitol, glycerin, xylitol, sodium lauryl sulfate, natural flavor*, xanthan gum, titanium dioxide, carrageenan, sodium hydroxide.

***Questions?*** **1-800-FOR-TOMS (1-800-367-8667)**

**"The ADA Council on Scientific Affairs'** Acceptance of Tom's of Maine Simply White® Fluoride Toothpaste is based on its finding that the product is effective in helping to prevent and reduce tooth decay and to whiten teeth by removing surface stains, when used as directed."

ADA Accepted — American Dental Association ®

**Goodness = Less in Landfills**
Recycle Tom's of Maine® and other packaging through the TerraCycle® collection program and earn rewards for your favorite nonprofit or school!
**Visit www.tomsofmaine.com/terracycle to learn how.**

TERRACYCLE®

*peppermint oil and other natural flavor

**BPA-Free Tube**

COUPONS INSIDE $1.50 VALUE

0 77326 14806 8

Void Of Ink

NO COPY AREA NO COPY AREA NO COPY AREA

SINCE 1970 Tom's® OF MAINE

clinically proven | natural

# SIMPLY WHITE™

ADA Accepted American Dental Association®

fluoride toothpaste
whitening | cavity protection
no artificial dyes or sweeteners
clean mint

NET WT 4.7 OZ (133 g)



Void Of Ink

"**The ADA Council on Scientific Affairs'** Acceptance of Tom's of Maine Simply White® Fluoride Toothpaste is based on its finding that the product is effective in helping to prevent and reduce tooth decay and to whiten teeth by removing surface stains, when used as directed."

**Active ingredient:** Sodium fluoride 0.24% (0.15% w/v fluoride ion)
**Purpose:** Anticavity. **Use:** Helps protect against cavities.
**Warnings: Keep out of reach of children under 6 years of age.** If more than used for brushing is accidentally swallowed, get medical help or dial (412) 390-3381 right away (Poison Control Center).
**Directions:** Adults and children 2 years of age and older: Brush teeth thoroughly, preferably after each meal or at least twice a day, or as directed by a dentist or physician. Children 2 to 6 years: use only a pea-sized amount and supervise child's brushing and rinsing (to minimize swallowing). Children under 2 years: Consult a dentist or physician.
**Inactive ingredients:** hydrated silica, water, sorbitol, glycerin, xylitol, sodium lauryl sulfate, natural flavor*, xanthan gum, titanium dioxide, carrageenan, sodium hydroxide.
*peppermint oil and other natural flavor

What makes a product natural and good? At Tom's, it includes how we make it.

- cruelty free — **No** animal testing or animal ingredients.
- I.P.S — We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.
- **Sustainable practices** are a priority in every aspect of our business.
- **No** artificial colors, flavors, fragrance, or preservatives.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

©Tom's of Maine, Inc. Made in U.S.A. 1-800-FOR-TOMS (1-800-367-8667)
**www.tomsofmaine.com** **P9904315** 1179 **BPA-Free Tube**

TERRACYCLE **Goodness = Less in Landfills**
Recycle this and other packaging through the TerraCycle® collection program and earn rewards for your favorite nonprofit or school!
**Visit www.tomsofmaine.com/terracycle to learn how.**

Void Of Ink

COUPONS INSIDE

MANUFACTURER COUPON EXPIRES 12/31/2015

# SAVE 75¢

**on any 1 (one) Tom's of Maine® Underarm Product**
**(excluding trial size)**

0077326-039960

CONSUMER: LIMIT ONE (1) COUPON PER PURCHASE OF PRODUCT AND QUANTITY STATED. No more than four (4) coupons for the same product in same transaction. Do not send this coupon to Tom's of Maine. Void if transferred, sold, auctioned, reproduced or altered. You must pay any sales tax. RETAILER: Tom's of Maine will reimburse face value plus 10¢ handling if submitted in accordance with our Redemption Policy. For policy and/or redemption send to: Tom's of Maine, P.O. Box 880249, El Paso, TX 88588-0249. Cash Value 1/100¢. Coupon may not be bought, reproduced, transferred or sold. Void where prohibited or if transferred to any person, firm or group prior to store redemption. Valid only in USA, its territories, and possessions. Redeemable at Food, Drug, Discount and other Stores accepting coupons.




Women's Antiperspirant — Deodorant — Men's deodorant

MANUFACTURER COUPON EXPIRES 12/31/2015

# SAVE 75¢

**on any 1 (one) Tom's of Maine® Mouthwash**
**(excluding trial size)**

0077326-039959

CONSUMER: LIMIT ONE (1) COUPON PER PURCHASE OF PRODUCT AND QUANTITY STATED. No more than four (4) coupons for the same product in same transaction. Do not send this coupon to Tom's of Maine. Void if transferred, sold, auctioned, reproduced or altered. You must pay any sales tax. RETAILER: Tom's of Maine will reimburse face value plus 10¢ handling if submitted in accordance with our Redemption Policy. For policy and/or redemption send to: Tom's of Maine, P.O. Box 880249, El Paso, TX 88588-0249. Cash Value 1/100¢. Coupon may not be bought, reproduced, transferred or sold. Void where prohibited or if transferred to any person, firm or group prior to store redemption. Valid only in USA, its territories, and possessions. Redeemable at Food, Drug, Discount and other Stores accepting coupons.




Wicked Fresh!® — Children's Anticavity — Cleansing

COUPONS INSIDE

SINCE 1970
Tom's® OF MAINE

clinically proven | natural

WICKED FRESH!®

mouthwash

neutralizes odor from bad breath germs

long-lasting



cool mountain mint

16 FL OZ (473 mL)

**Long-Lasting Fresh Breath. Clinically Proven!**

Zinc neutralizes the odor caused by bad breath germs, for long-lasting fresh breath, *without the burn*.

What makes a product good? At Tom's, it includes how we make it.

cruelty free **No** animal testing or animal ingredients.

**No** artificial colors, flavors, fragrance, or preservatives.

I.P.S We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.

**Sustainable practices** are a priority in every aspect of our business.

**We strive to maximize recycled content** and **recyclability** of our packaging.

**5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

**www.tomsofmaine.com**

**Ingredients:** water, glycerin, sorbitol, organic *Aloe barbadensis* leaf juice, propanediol, xylitol, natural flavor, benzoic acid, zinc chloride, menthol.
**Directions:** Swish thoroughly for one minute and spit out. Not intended to be swallowed. Refresh your mouth at any time of day.

**Gluten-free, SLS-free, non-alcoholic.**

©Tom's of Maine, Inc., 302 Lafayette Ctr., Kennebunk, ME 04043
Made in U.S.A. • 1-800-FOR-TOMS P9876473
**Do not use if printed shrink band on cap is damaged or missing.**

0 77326 46016 0

1

0 77326 46016 0

0 77326 61425 9

no aluminum

We believe what's inside matters.™

No artificial fragrance or preservatives

SINCE 1970

Tom's OF MAINE®

natural

24HR odor protection

LONG LASTING

deodorant

unscented

NET WT 2.25 OZ (64g)

P9891110

Learn more about our Stewardship Model and what we mean by "natural" at: www.tomsofmaine.com

**What makes a product natural and good? At Tom's, it includes how we make it.**

cruelty free

- **No** animal testing or animal ingredients.
- **No** artificial colors, flavors, fragrance, or preservatives.
- I.P.S We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.
- **Sustainable practices** are a priority in every aspect of our business.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

Code area: NO COPY

**Ingredients:** propylene glycol (vegetable derived), water, sodium stearate, organic *Aloe barbadensis* leaf juice, zinc ricinoleate, glyceryl laurate, *Humulus lupulus* (hops)* cone extract, organic *Helianthus annuus* (sunflower) seed oil, ascorbic acid, organic *Cymbopogon flexuosus* oil. *extracted with $CO_2$

© Tom's of Maine, Inc., 302 Lafayette Ctr., Kennebunk, ME 04043

Made in U.S.A. • 1-800-FOR-TOMS STORE AT ROOM TEMPERATURE

P9889659

0 77326 61425 9

5



TRY OUR DEODORANT

SINGLE

What makes a product natural and good? At Tom's, it includes how we make it.

- **No** animal testing or animal ingredients. (cruelty free)
- **No** artificial colors, flavors, fragrance, or preservatives.
- We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com. (I.P.S)
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **Sustainable practices** are a priority in every aspect of our business.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

Learn more about our Stewardship Model and what we mean by "natural" at: www.tomsofmaine.com

SINCE 1970 Tom's OF MAINE®

BEAUTY BAR

relaxing

with calming lavender

SINCE 1970 Tom's OF MAINE®

natural

- ✓ NO Phthalates
- ✓ NO Parabens
- ✓ NO Phenoxyethanol

NET WT 4 OZ (113g)

BEAUTY BAR

relaxing



with calming lavender

clinically proven to maintain skin's moisture

0 77326 83037 6



TRY OUR ANTIPERSPIRANT

**INGREDIENTS:** sodium palmate,* sodium cocoate or sodium palm kernelate, water, glycerin, natural fragrance, sodium gluconate, sodium chloride, *Olea europaea* (olive) fruit oil, *Simmondsia chinensis* (jojoba) seed oil, tocopheryl acetate (vitamin E acetate)

*Rainforest Alliance Certified™

TERRACYCLE

**Goodness = Less in Landfills**

Recycle Tom's of Maine and other packaging through the TerraCycle collection program and earn rewards for your favorite non-profit or school. Visit **tomsofmaine.com/terracycle** to learn how.

© Tom's of Maine, Inc., Kennebunk, ME 04043
1-800-FOR-TOMS (1-800-367-8667) Made in U.S.A.
**www.tomsofmaine.com**

PRINTED WITH SOY INK

100% Recycled Paperboard

P9899333

SINGLE

Palm Oil

RAINFOREST ALLIANCE CERTIFIED

0 77326 83037 6

BEAUTY BAR

relaxing

dermatologist tested



**We believe what's inside matters.™**

Tom's of Maine® combines calming lavender and other soothing botanical oils with premium olive oil, Vitamin E and Rainforest Alliance Certified™ palm oil to both relax your senses and maintain your skin's moisture. It works with the steam of your shower for a naturally relaxing experience. A natural retreat from daily stress - without the artificial or synthetic ingredients that you don't want on your skin today, or in your world tomorrow.

SINCE 1970 Tom's OF MAINE®

BEAUTY BAR

relaxing

with calming lavender

Tom's of Maine — Since 1970

natural | fluoride-free

ANTIPLAQUE & WHITENING

toothpaste

antiplaque | whitening | fresh breath | helps fight tartar | no artificial dyes or sweeteners

spearmint

NET WT 5.5 OZ (155.9 g)

100% Recycled Paperboard — Printed with Soy Ink

DATE CODE AREA

0 77326 83086 4

6153

What makes a product natural and good? At Tom's, it includes how we make it.

- **No** animal testing or animal ingredients. (cruelty free)
- We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com. (I.P.S)
- **Sustainable practices** are a priority in every aspect of our business.
- **No** artificial colors, flavors, fragrance, or preservatives.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.



**Employee Volunteer Day**
**Mt. Agamenticus – York, Maine**

**We believe what's inside matters.™** Our Stewardship Model guides every decision we make, ensuring that our ingredients, processing, and packaging meet our rigorous standards for being natural, sustainable, and responsible. To learn more about our Stewardship Model and what "natural" means at Tom's of Maine, visit **www.tomsofmaine.com**

P9895068

Tom's of Maine — Since 1970

fluoride-free

ANTIPLAQUE & WHITENING

toothpaste

spearmint

fluoride-free | natural

ANTIPLAQUE & WHITENING

toothpaste

antiplaque | whitening | fresh breath | helps fight tartar

no artificial dyes or sweeteners

spearmint

NET WT 5.5 OZ (155.9 g)

COUPONS INSIDE $1.50 VALUE

**fluoride-free**

## ANTIPLAQUE & WHITENING

**Embrace the Power of Mother Nature!**

At Tom's of Maine that means authentic and effective naturally sourced ingredients. We use zinc citrate sourced from zinc – a naturally occurring mineral – and xylitol, a natural ingredient derived from birch trees or corn. Plus, natural flavoring for a taste that will make you look forward to brushing!

© Tom's of Maine, Inc., Kennebunk, ME 04043 Made in U.S.A. 1-800-FOR-TOMS

**Fluoride-free formula:** Some people do not want fluoride in their toothpaste. We produce this toothpaste without fluoride because we respect our customers' diverse needs and interests.
**Uses:** Helps prevent plaque and tartar buildup with regular brushing.
**Directions:** Brush thoroughly, preferably after each meal but at least twice a day, or as directed by a dentist or physician.
**Ingredients** calcium carbonate, glycerin, water, xylitol, hydrated silica, natural flavor*, sodium lauryl sulfate, zinc citrate, carrageenan, sodium bicarbonate.
*spearmint oil and other natural flavor

BPA-Free Tube

TERRACYCLE

**Goodness = Less in Landfills**

Together with TerraCycle®, Tom's of Maine® is doing all we can to keep packages out of landfills and give them a new life. Recycle Tom's of Maine and other packaging through the TerraCycle collection program and earn rewards for your favorite non-profit or school! **Learn how and join our Natural Care Brigade® at tomsofmaine.com/terracycle**

COUPONS INSIDE $1.50 VALUE

0 77326 83086 4

COUPONS INSIDE

MANUFACTURER COUPON EXPIRES 12/31/2015

# SAVE 75¢

**on any 1 (one) Tom's of Maine® Underarm Product**
**(excluding trial size)**

0077326-039960

CONSUMER: LIMIT ONE (1) COUPON PER PURCHASE OF PRODUCT AND QUANTITY STATED. No more than four (4) coupons for the same product in same transaction. Do not send this coupon to Tom's of Maine. Void if transferred, sold, auctioned, reproduced or altered. You must pay any sales tax. RETAILER: Tom's of Maine will reimburse face value plus 10¢ handling if submitted in accordance with our Redemption Policy. For policy and/or redemption send to: Tom's of Maine, P.O. Box 880249, El Paso, TX 88588-0249. Cash Value 1/100¢. Coupon may not be bought, reproduced, transferred or sold. Void where prohibited or if transferred to any person, firm or group prior to store redemption. Valid only in USA, its territories, and possessions. Redeemable at Food, Drug, Discount and other Stores accepting coupons.



Women's Antiperspirant
Deodorant
Men's deodorant

MANUFACTURER COUPON EXPIRES 12/31/2015

# SAVE 75¢

**on any 1 (one) Tom's of Maine® Mouthwash**
**(excluding trial size)**

0077326-039959

CONSUMER: LIMIT ONE (1) COUPON PER PURCHASE OF PRODUCT AND QUANTITY STATED. No more than four (4) coupons for the same product in same transaction. Do not send this coupon to Tom's of Maine. Void if transferred, sold, auctioned, reproduced or altered. You must pay any sales tax. RETAILER: Tom's of Maine will reimburse face value plus 10¢ handling if submitted in accordance with our Redemption Policy. For policy and/or redemption send to: Tom's of Maine, P.O. Box 880249, El Paso, TX 88588-0249. Cash Value 1/100¢. Coupon may not be bought, reproduced, transferred or sold. Void where prohibited or if transferred to any person, firm or group prior to store redemption. Valid only in USA, its territories, and possessions. Redeemable at Food, Drug, Discount and other Stores accepting coupons.



Wicked Fresh!®
Children's Anticavity
Cleansing

COUPONS INSIDE

Void Of Ink

NO COPY AREA NO COPY AREA NO COPY AREA

Tom's OF MAINE SINCE 1970

fluoride-free | natural

# ANTIPLAQUE & WHITENING

toothpaste

antiplaque | whitening | fresh breath | helps fight tartar

no artificial dyes or sweeteners

spearmint



NET WT 5.5 OZ (155.9 g)

Void Of Ink

**Fluoride-free formula:** Some people do not want fluoride in their toothpaste. We produce this toothpaste without fluoride because we respect our customers' diverse needs and interests.

**Uses:** Helps prevent plaque and tartar buildup with regular brushing.

**Directions:** Brush thoroughly, preferably after each meal but at least twice a day, or as directed by a dentist or physician.

**What makes a product natural and good? At Tom's, it includes how we make it.**

- cruelty free — **No** animal testing or animal ingredients.
- I.P.S — We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.
- **Sustainable practices** are a priority in every aspect of our business.
- **No** artificial colors, flavors, fragrance, or preservatives.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

**Ingredients** calcium carbonate, glycerin, water, xylitol, hydrated silica, natural flavor*, sodium lauryl sulfate, zinc citrate, carrageenan, sodium bicarbonate *spearmint oil and other natural flavor

© Tom's of Maine, Inc., Kennebunk, ME Made in U.S.A.

1-800-FOR-TOMS (1-800-367-8667) **www.tomsofmaine.com**

**P9895146** 1151

BPA-Free Tube

TERRACYCLE

**Goodness = Less in Landfills**

Recycle this and other packaging through the TerraCycle® collection program and earn rewards for your favorite nonprofit or school!

**Visit www.tomsofmaine.com/terracycle to learn how.**

Void Of Ink

no artificial fragrance or preservatives

SINCE 1970

Tom's OF MAINE®

24 HR wetness protection

NATURALLY DRY

antiperspirant deodorant for women

natural powder

NET WT 2.25 OZ (64 g)

83195-F2

Clinically proven wetness and odor protection.

***Drug Facts***

| ***Active ingredient*** | ***Purpose*** |
|---|---|
| Aluminum chlorohydrate (22%).............. | antiperspirant |

***Uses*** • reduces underarm wetness • 24 hour extra effective protection

***Warnings***

**For external use only**

**Do not use** on broken skin

**Ask doctor before use if you** have kidney disease

**Stop use if** rash or irritation occurs

**Keep out of reach of children.** If swallowed, get medical help or contact a Poison Control Center right away. (412-390-3381)

***Directions*** Apply to underarms only

***Inactive ingredients*** *Elaeis guineensis* (palm) kernel oil, stearyl alcohol, dicaprylyl ether, hydrogenated soybean oil, hydrogenated castor oil, talc, natural fragrance, *Olea europaea* (Olive) leaf extract, maltodextrin.

***Questions?*** 1-800-FOR TOMS (1-800-367-8667)

STORE AT ROOM TEMPERATURE

PWA-583

0 77326 83195 3

Dist. by:
© Tom's of Maine
Kennebunk ME 04043
www.tomsofmaine.com
Made in Canada

0 77326 83195 3

SINCE 1970

Tom's OF MAINE®

NEW!

# BODY WASH

## daily moisture



citrus berry

with sunflower oil, olive oil & vitamin E

natural

- ✓ NO Phthalates
- ✓ NO Parabens
- ✓ NO Phenoxyethanol

12 FL OZ (354mL)

We believe what's inside matters.™

Our daily moisture body wash uses carefully selected natural ingredients for soft and smooth feeling skin without the use of the artificial ingredients found in most conventional body washes. Precisely formulated, this rich body wash is clinically proven to maintain skin's natural moisture. Dermatologist tested.

Learn more about our Stewardship Model and what "natural" means for Tom's of Maine ingredients and their processing at: **www.tomsofmaine.com**

What makes a product natural and good? At Tom's, it includes how we make it.

- **No** animal testing or animal ingredients.
- **No** artificial colors, flavors, fragrance, or preservatives.
- We share every **ingredient**, its **purpose**, and its **source** at www.tomsofmaine.com.
- **Sustainable practices** are a priority in every aspect of our business.
- **We strive to maximize recycled content** and **recyclability** of our packaging.
- **5%** (12 days) of employee time to volunteering. **10%** of profits to human and environmental goodness.

**Ingredients:** water, decyl glucoside, glycerin, *Helianthus annuus* (sunflower) seed oil, sodium chloride, xanthan gum, natural fragrance, *Olea europaea* (Olive) fruit oil, citric acid, lactic acid, tocopheryl acetate (vitamin E acetate)

**Directions:** Squeeze onto a wet washcloth, loofah or hands and work into a rich lather. Rinse and follow-up with your favorite Tom's of Maine® Body Lotion.

© Dist. by Tom's of Maine, Inc., Kennebunk, ME 04043 Made in U.S.A. 1-800-FOR-TOMS

0 77326 83272 1

2

P9893812

0 77326 83272 1

# EXHIBIT 4

# Our Stewardship Model: natural, sustainable and responsible defined

Our Stewardship Model sets out the standards we strive to uphold with every decision we make, every single day. Whether we're looking for a new ingredient supplier, making choices about what kind of packaging to use, or writing communications materials (to name just a few of the everyday things that happen around here!), we review the Stewardship Model and make sure that our decision honors it.



## Our standards for natural

- ✔ Sourced in nature
- ✔ Simple and understandable ingredients
- ✔ Free of artificial preservatives, colors, sweeteners, flavors, fragrances, and other additives
- ✔ Free of animal ingredients
- ✔ Made of high-quality ingredients
- ✔ Subject to limited processing
- ✔ Purposeful in the system of ingredients
- ✔ Promote organically grown ingredients wherever possible and practical



## Our standards for sustainable

- ✔ Contribute to environmental and economic sustainability
- ✔ Socially conscious
- ✔ Environmentally friendly products and packaging
- ✔ Establish safety and efficacy in our products and ingredients without testing on animals
- ✔ Renewable and recyclable resources
- ✔ Biodegradability
- ✔ Promote sustainable harvesting practices
- ✔ Respectful of basic human rights
- ✔ Respectful of the rights of indigenous people
- ✔ Accountable to present and future generations



Our standards for responsible

- Safety
- Effectiveness
- Sufficient research conducted
- Honesty about where and how ingredient, product, and packaging was sourced
- Honesty about claims related to product/ingredient/formulation
- Affordable for consumer
- Affordable for company
- Build value and equity for company
- Respect for the standards of the Food and Drug Administration
- Respect for the standards of the Federal Trade Commission
- Respect for the standards of organizations (American Dental Association) with whom we have chosen to partner

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLISON GAY, Individually and on Behalf of All Others Similarly Situated, | No. 0:14-CV-60604-KMM |
| Plaintiff, | CLASS ACTION |
| vs. | |
| TOM'S OF MAINE, INC, | |
| Defendant. | |

**AFFIDAVIT OF JEFFREY D. DAHL WITH RESPECT TO SETTLEMENT NOTICE PLAN**

I, Jeffrey D. Dahl, being duly sworn and deposed, say:

1. I am over 21 years of age and am not a party to this action. This affidavit is based on my personal knowledge, information provided by the staff of Dahl Administration, LLC ("Dahl"), and information provided by Dahl's media partners. If called as a witness, I could and would testify competently to the facts stated herein.

2. I am Founder and Principal of Dahl, which has been retained as the Notice Administrator and Settlement Administrator for the above-captioned action. I am a nationally-recognized expert with over 22 years of experience in class action settlement administration. I have provided claims administration services and

notice plans for more than 400 class actions involving securities, product liability, fraud, property, employment and discrimination. I have experience in all areas of settlement administration including notification, claims processing and distribution. I have also served as a Distribution Fund Administrator for the U.S. Securities and Exchange Commission.

3. A true and correct copy of Dahl's firm background is attached hereto as Exhibit 1.

4. I designed the Notice Plan for the Settlement in the above-captioned action. I am responsible for directing Dahl's execution of the Notice Plan.

5. This affidavit describes (a) the methodology used to create the proposed Notice Plan; (b) the proposed Notice Plan; (c) the Notice design; (d) the direct mailed Notice; (e) published print Notice; (f) the web-based Notice; (g) web-based Notice targeted using keyword search terms; (h) web-based Notice targeted using social media interest areas; (i) earned media; (j) the toll-free helpline; (k) the Settlement website; and (l) claims filing estimates.

## METHODOLOGY

6. Working with our media partner, FRWD, I designed a Notice Plan that utilizes mail, print, and web-based media to reach Settlement Class Members. In formulating the Notice Plan, we took account of the powerful data showing that individuals now spend far more time seeking and consuming information on the Internet than from print sources, and we will employ sophisticated methods of

reaching and exposing Settlement Class Members to the Notice that are available to marketers in the digital, online sphere.

7. A true and correct copy of the Affidavit of John Grudnowski, the founder and CEO of FRWD, is attached hereto as Exhibit 2.

8. The Affidavit of John Grudnowski provides detailed information regarding online advertising in general and describes in detail the digital media technologies that are integral to the design and execution of the proposed Notice Plan.

9. The proposed Notice Plan uses methods that have been and are currently used by the nation's largest advertising media departments to target and place billions of dollars in advertising. These methods include both print placement of the Notice and the sophisticated targeting capabilities of digital marketing technologies to meet and reach Settlement Class Members at the websites they visit most frequently.

## PROPOSED NOTICE PLAN

10. The objective of the proposed Notice Plan is to provide notice of the Proposed Settlement to members of the Proposed Settlement Class ("Settlement Class Members" or "Class") that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

11. I understand that the Settlement Class Members generally are persons in the United States who purchased Tom's of Maine "natural" products between March 25, 2009 and the date the Court enters the Preliminary Approval Order. It is

not possible to determine the Settlement Class size because no mechanism exists to track exactly how many households have purchased Tom's of Maine "natural" products. However, estimates from GfK MRI and comScore indicate that there are approximately 11.6 million purchasers of these products. Thus, the best ballpark estimate that exists is that membership in the Settlement Class may include approximately 11.6 million persons.

12. Dahl met with Tom's of Maine marketing representatives to determine the characteristics of the Settlement Class, based upon known characteristics of Tom's of Maine product purchasers. Based on information provided, this Notice Plan has been aligned with the targeting done by the Tom's of Maine brand using similar channels and segmentation. Consistent with the characteristics of the Tom's of Maine product purchasers as identified by Tom's of Maine marketing staff, Dahl targeted adults aged 25–64, noting that Tom's of Maine product purchasers – and thus potential Settlement Class Members – skew somewhat toward the younger (25–44) end of this range. Demographically, the Settlement Class is estimated to be 70% female and 30% male. The Settlement Class is overrepresented in urban and coastal locations. It is estimated that approximately 64% of the Settlement Class are moderate to heavy magazine readers, 72% are moderate to heavy internet users, and 65% are active on online social media. Using the demographic and psychographic information above, we have designed this Notice Plan to target print publications, a selection of websites,

relevant search interest keywords, and specific social media interest areas that match the characteristics of the Settlement Class.

13. We have designed a Notice Plan that includes eight elements:

a. Direct mail or email Notice to any potential Settlement Class Members that can be identified from Tom's of Maine's records;

b. Published Notice through the use of paid print media;

c. Web-based Notice using paid banner ads on targeted websites;

d. Additional web-based Notice using "keyword" searches displaying banner ads;

e. Social media ads targeting relevant interest areas;

f. National earned media through the issuing of a press release distributed nationwide through PR Newswire;

g. A dedicated, informational website through which Settlement Class Members can obtain more detailed information about the Settlement and access case documents; and

h. A toll-free telephone helpline by which Settlement Class Members can obtain additional information about the Settlement and request a copy of the Notice.

14. The Notice Plan has been designed to obtain over 168 million individual print and digital impressions targeted to approximately 43 million persons in order to achieve sufficient scale and impression frequency to target the estimated approximately 11.6 million Settlement Class Members. Coverage and

exposure will be further increased by the earned media campaign, the website, and the toll-free helpline.

15. At the conclusion of the Notice Plan, Dahl will provide a final report verifying implementation of the Notice Plan and provide the final reach and frequency results.

**NOTICE DESIGN**

16. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that class action notices be written in "plain, easily understood language." The proposed Notices have been designed to be noticed, read, and understood by potential Settlement Class Members. Both the Summary Notice and the Long Form Notice, which will be available to those who call the toll-free helpline or visit the website, contain substantial, easy-to-understand descriptions containing all key information about the Settlement and Settlement Class Members' rights and options. A copy of the proposed Summary Notice is attached to the Settlement Agreement as Exhibit D. A copy of the proposed Long Form Notice is attached to the Settlement Agreement as Exhibit B.

**DIRECT MAILED NOTICE**

17. Upon Preliminary Approval, Tom's of Maine will provide Dahl with the names and addresses or email addresses for individual direct purchasers who are potential Settlement Class Members. Dahl will mail a Long-Form Notice and Claim Form or email a Summary Notice to each of these individuals.

## PRINT PUBLICATION NOTICE

18. The print component of the Notice Plan will include a one-third page Summary Notice inserted once into *People Magazine and* a one-eighth page Summary Notice inserted once into *USA Today*. *People* has a total national circulation of approximately 3,475,000 with a readership of approximately 42 million. It reaches one in four adult consumers, one in four mothers, and more relatively affluent adults than any other magazine. With a readership median age of 44.6 years and median household income of over $67,000, *People* is the best match among national print publications to the characteristics of this Settlement Class. *USA Today* has a national circulation of 1,662,766 with a readership of over three million. *USA Today* has the largest daily print circulation publication in the U.S., with a median readership age of 50 and median household income over $89,000. *USA Today* is an excellent complement to *People* in ensuring that the proposed Media Plan reaches the target audience.

## WEB-BASED NOTICE

19. To reach as many of the estimated five million Settlement Class Members as possible, a web-based notice campaign utilizing banner-style notices with a link to the Settlement website will supplement the print notice. Banner notices measuring 728 x 90 pixels and 300 x 250 pixels will appear on a subset of two groups of websites known as the FRWD Reach Channel and Lifestyle Channel. The Reach Channel provides placements across the top 2,000 most trafficked websites, and provides the ability to reach the Settlement Class. The Lifestyle

Channel provides placement across the top beauty, fashion, lifestyle and related websites and provides higher-impact and more contextually-relevant placements with regard to this Settlement Class. The banner notices will run on websites when the site's demographics match our target audience.

20. A true and correct list of the website domains that are included in the FRWD Reach Channel and Lifestyle Channel and will be utilized in this notice campaign is attached hereto as Exhibit 3.

21. True and correct samples of the banner ads that will be placed are attached hereto as Exhibit 4.

22. The Grudnowski Affidavit attached as Exhibit 2 provides more detailed information about the technologies and methods that we will use to implement and track this component of the Notice Plan.

**USING KEYWORD SEARCH TERMS**

23. The proposed Notice Plan will include banner ads targeted to display in response to the entry of specific keywords related to Tom's of Maine products and other similar products and interests on major search engine websites, including the keywords "Tom's of Maine," "Tom's Class Action," and other similar terms.

**USING SOCIAL MEDIA INTEREST AREAS**

24. The proposed Plan will include banner ads that will be displayed to users of the Facebook social media network. These banner ads will appear on Facebook web pages displayed to Facebook users who have previously expressed interest using Facebook "Likes" and otherwise in areas such as "Natural

Cosmetics," "Bare Minerals," "Burt's Bees," "The Body Shop," "Jurlique," etc. In previous consumer product class action settlement notification plans, this method of targeting has led to significant increases in overall claims.

## EARNED MEDIA

25. The proposed Notice Plan will also include earned media to supplement the paid media portion of the Plan and will be targeted to a national audience. "Earned media" refers to promotional efforts outside of direct, paid media placement. The earned media efforts will provide additional notice of the Settlement to potential Settlement Class Members, though the effect is not measurable as it is with the impressions accumulated with the paid media portion of the Notice campaign.

26. Concurrent with the launch of the print and online Notices, Dahl will release a national press release via PR Newswire. The press release will be distributed by PR Newswire to 5,815 newspapers, television stations, radio stations and magazines. In addition, PR Newswire will send the press release to approximately 5,400 websites and online databases, including all major search engines.

27. A true and correct copy of the text of the proposed press release is attached hereto as Exhibit 5.

## TOLL-FREE HELPLINE

28. Prior to the launch of the print and web-based media campaigns, Dahl will also establish a toll-free Settlement helpline to assist potential Settlement Class

Members and any other persons seeking information about the Settlement. The helpline will be fully automated and will operate 24 hours per day, seven days per week. Callers will also have the option to leave a message in order to speak with the Settlement Administrator.

29. The toll-free helpline will include a voice response system that allows callers to listen to general information about the Settlement, listen to responses to frequently asked questions ("FAQs"), or request a Long-Form Notice.

30. Dahl will work with Counsel to prepare responses to the FAQs to provide accurate answers to anticipated questions about the Settlement.

**SETTLEMENT WEBSITE**

31. Prior to the launch of the print and web-based media campaigns, Dahl will coordinate and integrate into the Notice Plan a Settlement website at www.TomsProductClassAction.com.

32. Dahl will work with Counsel to develop the content for the Settlement website. The website will provide Settlement Class Members with general information about the Settlement, answers to frequently asked questions, a means to submit an electronic Claim Form or download a Claim Form, important date and deadline information, a summary of Settlement benefits, a means by which to review and print copies of certain Settlement documents (including the Long Form Notice), and a link to contact the Settlement Administrator via email.

## CLAIMS FILING

33. Recently, I analyzed the actual claims filing rates for over 100 consumer class action settlements, in which more than 14 million class members participated. The settlements included direct mail notice, published notice and web-based notice. The weighted average claims filing rates for these consumer settlements ranged from a low of 2.7% to a high of 7.3%. The analysis showed a median claim filing rate of 5.5% and a mean claim filing rate of 5.8%. Since direct contact information is available for only a small number of potential Settlement Class Members and Tom's sales and other data show high consumer satisfaction with the products, I would expect the actual claim filing percentage to be toward the lower end of the filing range. A claim filing percentage of 1% to 3% would be reasonable.

## CONCLUSION

34. The objective of the Notice program is to reach the highest possible percentage of potential Class Members, provide them with meaningful information to help them understand their legal rights and options under the terms of the settlement and provide a simple, open and easy method for them to file claims for settlement benefits.

35. It is my opinion that the proposed Notice Plan, by producing more than 168 million print and digital impressions that are targeted using methods universally employed in the advertising industry at persons that match characteristics of Tom's of Maine product purchasers – and thus the Settlement

Class – provides sufficient Notice to the estimated 11.6 million members of the Settlement Class.

36. It is also my opinion that the proposed Notice Plan is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and meets the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004), as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), and is consistent with notice programs approved previously by both State and Federal Courts.

**EXHIBITS**

37. Attached hereto are true and correct copies of the following exhibits:

Exhibit 1: Background information on Dahl Administration

Exhibit 2: Affidavit of John Grudnowski in Support of the Settlement Notice Plan

Exhibit 3: List of Websites on which Banner Ads may be placed

Exhibit 4: Sample Banner Ads

Exhibit 5: Press Release text

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge. Executed this 22nd day of July, 2015 in Minneapolis, Minnesota.

Jeffrey D. Dahl
Founder and Principal
Dahl Administration, LLC

Sworn to and Subscribed before me
this 23rd day of July, 2015.

Notary Public

JOANNA ARTIG
Notary Public
State of Minnesota
My Commission Expires
January 31, 2019

**EXHIBIT 1**

Dahl
ADMINISTRATION

# Firm Information and Selected References

# OUR FIRM

Dahl ADMINISTRATION

## OUR FIRM

### OUR HISTORY

After more than 15 years of experience managing hundreds of settlements and distributing billions in settlement benefits, Jeff and Kristin returned to their roots as hands-on administrators providing innovative and cost-effective solutions. They created Dahl Administration to provide responsible, accountable, and transparent settlement administration services, and to become a trusted resource for class action counsel nationwide.

Dahl Administration has a history that stretches back to the beginnings of the class action settlement administration industry. Jeff Dahl was a founding partner of Rust Consulting and Kristin Dahl was Rust's second employee. During their time with Rust, the firm managed over 2,000 class action settlements.

Jeff and Kristin built Dahl Administration from the ground-up to provide the kind of service and expertise that complex claims administration projects demand, something that is too often lost within the corporate overhead and "turn-key solutions" that come with very large administrators. To do this, Dahl Administration combines advanced claims processing technology with expert project teams that are 100% focused on meeting client needs. This project team approach eliminates departmental "silos" that lack overall understanding of a client's project needs and lose the ability to communicate effectively when issues arise.

To focus on client needs, Jeff and Kristin created an organization that produces truly custom solutions, where project managers and principals actually answer their phones and emails, employees are empowered to resolve issues, and team members proactively communicate with clients to eliminate unwelcome surprises. The same people that consult and generate project proposals also attend weekly project update meetings and actively manage project work. This continuity ensures that project execution and costs meet or exceed the standards set in the proposal.

Dahl Administration is a full-service provider, with a staff of professionals experienced in class action administration, direct and media notice, process development, document and script development, data and image capture, claims processing, quality control review, accounting, project management, software development, and distribution. We also have sophisticated technology resources in place to implement solutions of any size and any level of complexity.

We are committed to managing successful projects that are completed on time, on budget, and with the highest level of quality in the industry.

Dahl ADMINISTRATION

OUR FIRM

## OUR PHILOSOPHY

### Dahl's 6 Key Principles:

**Accountable**

We are experts at what we do. When you hire us the work is done correctly and we stand behind it. No exceptions.

- **Immediate Resolution**
  When issues arise, we fix them. Dahl principals are actively involved in day-to-day client support and project management.

- **Project Team Responsibility**
  Our project managers are empowered to make decisions and resolve issues directly, guided by Dahl principals who actively monitor every project.

- **True Real-time Quality Assurance**
  We perform quality reviews continuously within the project processing cycle, not through a generic, detached auditing function.

**Responsive**

Nothing is more frustrating than having issues arise and no one will answer the phone or respond to an email. Our managers and principals are required to answer their phone and check their email 24/7. We want you to call our mobile numbers in an emergency, that's why we give them to you. You can always call our president and he will be happy to assist you. We don't just say this, we do it.

- **Online, All the Time**
  We answer the telephone. We know your time is money, so when you have an issue, you can call or email your project manager, your project principal, or the company president to get it resolved promptly – day or night.

- **Empowered, Knowledgeable Staff**
  We don't forward you to different departments or park your issue with a ticketing system. Your assigned project manager is knowledgeable and empowered to provide solutions on your project. If they don't know the answer, they will get it – promptly and willingly.

- **Client Relationships Drive Our Business**
  We are about you. We strive to develop a long-term, successful partnership with you.

Dahl ADMINISTRATION

## OUR FIRM

### Technology-Driven

Sometimes it takes a custom technology solution to meet a unique settlement administration challenge. We have a dedicated information technology staff and a full menu of technology services to offer our clients. Whether you need a secure web-based claims submission portal, a custom IVR phone solution, innovative web-based class notice, or anything else, we will work with you to build the solution that works for your settlement and your budget.

- **Advanced Capabilities**
  We offer advanced print and mail solutions, custom IVR phone technology, online filing, "Quick Site" claim image access for clients, high-speed scanning, and flexible fund distribution alternatives.

- **Data Security**
  We provide secure physical facilities, proven technical infrastructure, and information-handling procedures to protect sensitive data.

- **Custom Technical Solutions**
  We custom configure solutions for each project, so you get innovative claims processing workflow that fits your needs.

- **Capacity and Sophistication**
  We have dedicated information technology staff and a high-capacity technology environment to support any size or type of case.

### Affordable

In today's economic times, price is always a factor. At Dahl, we have eliminated a lot of unnecessary overhead by focusing our staffing on project-based needs. Dahl employees work on projects. This allows us to keep rates low and stay focused on our clients.

- **Best Service at the Best Price**
  We provide innovative and efficient services designed to administer your project correctly and cost-effectively.

- **Nimble and Right Sized**
  We have project-based teams focused on your case solutions. All of our employees do project work, eliminating non-essential corporate overhead.

Dahl
ADMINISTRATION

## OUR FIRM

### Custom Solutions

We don't provide 'turn-key' processing solutions. Over the years, we have found that our clients expect more from us. We customize our solutions to meet our clients' varied expectations and do it at a 'turn-key' price.

- **True Customization**
  We deploy our expertise and tools to fit your project's needs.

- **Your Project Your Way**
  We don't force your project into our process, we adjust our process to meet your requirements.

- **Adjustable and Adaptable**
  We are nimble and proactive, enabling us to make real-time processing changes to meet your deadlines and requirements.

### No Surprises

You should not have to deal with missed deadlines or surprise invoices that far exceed proposed costs. We anticipate issues and stay on top of your settlement schedule for you. Weekly processing updates and monthly budget updates eliminate unpleasant surprises. Clients tell us that their "no surprises" experience with Dahl is what keeps them coming back again and again.

- **Every Project Every Day**
  We anticipate issues. Our "every project, every day" philosophy means our project team is on top of your schedule and proactively addressing any issues.

- **Consistent Reporting**
  We deliver weekly processing updates and monthly budget updates on every project.

- **Active Communication**
  Our principals and project managers proactively track changes in project dynamics and communicate any issues to you

Dahl ADMINISTRATION



## OUR SERVICES

Dahl provides project management and settlement distribution services to attorneys, distribution agents, special masters, governmental agencies, and the courts.

Our services include:

- Settlement Administration Planning and Design
- Management Team
- Project Management
- Cost Analysis
- Pre-Settlement Consultation
- Claimant Notification
- Innovative Notice Planning and Execution
- Claim Document Development and Layout
- Website and Call Center Services
- Claimant Communication
- CAFA Notice
- Document Imaging and Data Capture
- Claim Evaluation and Processing
- Reporting
- Quality Assurance Review
- Problem Identification and Resolution
- Distribution Management

Dahl ADMINISTRATION

## OUR FIRM

### INNOVATIVE NOTICE PLANNING AND EXECUTION

Change in the media landscape is accelerating and it is imperative that class action notification planning and execution reflect these changes. More people are now consuming news media via Internet sources than are reading even the most recognized print publications. Given this sea change, it no longer makes sense for class action notification plans to reflexively purchase print advertisements in the same leading national or regional print publications without considering the reality of where class members are directing the bulk of their attention. Print publication still has its place, often as a supplementary notice tactic, but that place will be less and less as the primary method of reaching unidentified class members.

With over 22 years of experience in class action notice and claims administration, Jeff Dahl recognized that class action notice plans were insufficiently utilizing the newly-available tools from the Internet marketing and communications industry. To fill this gap, Dahl Administration reached out to a leading digital marketing agency, FRWD, to develop best practices in applying digital media strategies and execution programs to the class action notification arena. The premise is simple: reach class members using the same digital media tools that FRWD's clients—brands such as 3M, Coca-Cola, Best Buy, Proctor & Gamble, General Mills and more—use to reach their own customers. In planning to provide "the best notice that is practicable under the circumstances" it is no longer acceptable to ignore the digital sphere where class members are now spending the bulk of their media consumption time and attention.

Dahl has deep experience in class action notification, and Dahl handles individual notice planning and execution more efficiently than anyone in the industry. Whether the case involves direct postal mail or email, Dahl will handle the data cleansing, returned mail and tracing, and other standard or custom procedures such that as many of the reasonably identifiable class members get notice of the litigation as possible.

When it comes to publication notice, the Dahl-FRWD approach diverges from the rest of the class action notification industry.

- We reach class members using the same strategies and tactics that leading advertisers would use to reach the same target audience as customers.
- Where feasible, we meet with marketing staff from the defendant(s) along with plaintiff and defense counsel to determine customer demographic and psychographic profiles.
- The logic is unassailable: where defendants have developed highly sophisticated knowledge about their customers and prospective customers, the class action notice process should seek out this knowledge and put it to use.

- Too often, this approach is overlooked in favor of the same print publication placements and, sometimes, a scattershot web banner ad campaign directed only by the broadest of demographic profiles.

### Targeting

First, we validate targeting parameters and align media buying with all parties. This process includes hand selecting specific website domains, print publications, geographic targeting, audience interest targeting, and more. By bringing the parties into the process, we are able to align more specifically on targeting needs and expectations in notification.

### Technology

Second, we begin technology systems alignment. In delivering a modern notification plan, multiple technical systems must be aligned. This is done to ensure accuracy in delivery of media as well as verifying that delivery met expectations. In typical notification planning Dahl-FRWD will leverage data collection, ad serving, and verification technologies. In parallel with finalizing media, Dahl-FRWD will install and set up all needed technology. In a recent matter where U.S. nationwide notification was required, we structured 50 unique campaigns to ensure proper distribution and verification of notice in each U.S. state. This often overlooked step is vital to ensuring proper notification as Dahl-FRWD can verify reach by state, country, and region. Any notification plan overlooking this step is simply not leveraging available technology to the best practices level.

### Execution

The Dahl-FRWD approach involves much more than the mere use of “industry-standard methodology” for the placement of web banner ads. In fact, class action notice “experts” often settle for buying blocks of surplus banner ads from wholesalers. Our goal is to use the same targeting and execution methodology that leading brands use to reach their own customers when we seek to reach those same persons in their capacity as class members. Our methodology of media planning and buying leads to greater accuracy, quality and control of media. The cost advantage is typically 20% to 30%, meaning we can typically reach 20% to 30% greater population base at the same media cost as traditional media notice plans.

# OUR PEOPLE

**CHRISTOPHER LONGLEY**
President

Chris is President of Dahl Administration. A former practicing attorney for the Minneapolis law firm of Hessian, McKasy & Soderberg, Chris has spent the last 25 years in the business sector.

Prior to joining Dahl, Chris was Managing Director and Vice President at SRS|Acquiom, a leading professional shareholder representative firm located in Denver and San Francisco. Prior to SRS Chris spent many years within Thomson Reuters running a global team focused on Mergers and Acquisitions.

A successful entrepreneur, Chris was part of the founding team of 10 start-up companies, and spent 11 years as Vice President of Business Development at a mid-size private equity firm in Minneapolis, where he ran sales and marketing operations for various portfolio companies from Florida to Ankara, Turkey.

Chris graduated from William Mitchell College of Law, and the University of St. Thomas. He is admitted to practice in Minnesota, The 8th circuit and the United States Supreme Court.

**JEFF DAHL**
Founder and Principal

Jeff co-founded Dahl Administration, LLC in early 2008 and was previously a founding partner and co-owner at Rust Consulting, Inc., one of the two largest class action claims administration firms in the country.

Jeff is a noted expert in all areas of settlement administration including notification, claims processing and distribution. He is known for providing innovative solutions to resolve complex project issues.

Jeff was the court-appointed Neutral Expert tasked with providing final claim determinations for a $176 million settlement in Rhode Island, involving over 300 victims of a 2003 nightclub fire.

He served as the distribution agent for the U.S. Securities and Exchange Commission's $350 million settlement with Fannie Mae.

During Jeff's 19-year career with Dahl and Rust Consulting, his firms provided claims administration services for over 2,000 class action and regulated settlements including the $1.1 billion Microsoft California settlement; the $950 million PB Pipe settlement; the $850 million Masonite siding and roofing settlement; and they distributed over $2 billion from U.S. Securities & Exchange Commission Fair Funds.

Jeff graduated from Concordia College-Moorhead with a Bachelor of Arts degree in Business Administration and is a Certified Public Accountant.

**JOHN GRUDNOWSKI**
Media Expert

In May 2009, John founded FRWD. He brings 18 plus years of PR and digital marketing services experience that he gained over the course of his career at Accenture, General Mills, Carmichael Lynch and Vail Resorts. John has developed digital strategies, provided expert training, counseled and advised marketing executives, led internal client innovation teams and led execution teams for a variety of Fortune 1,000 clients including: American Express, Discovery, 3M, General Mills, Deluxe, Target, Best Buy, Sony Pictures, Dairy Queen, Starz Entertainment and Ameriprise.

Prior to founding FRWD, John founded and led the modern media practice at space150, a Twin-Cities based ad agency, as well as led agency business development supporting revenue growth from under $1MM to over $12MM in four years. John has also co-founded the Minneapolis-based i612 media organization, and has served on multiple digital-based start-up boards of directors.

**KRISTIN DAHL**
Principal

Kristin co-founded Dahl Administration, LLC and leads the project management group.

She has worked on three U.S. Securities and Exchange Commission settlements including the $432 million Global Research Analyst Settlement, the $100 million HealthSouth Securities settlement, and the $26 million Banc of America Securities settlement on behalf of Distribution Fund Administrator Francis E. McGovern.

Kristin has eighteen years of project management experience solely in the field of class action claims administration. In her career at both Dahl and Rust Consulting, she was the active project manager on over 150 settlements, including the groundbreaking Denny's race discrimination settlement during which over 1 million phone calls were answered and over 150,000 claims were processed.

Kristin holds a Bachelor of Science degree from the University of Wisconsin-River Falls.

**JEFF HOUDEK**
Director of Operations

Jeff Houdek is a Principal at Dahl and serves as Dahl's Director of Operations. Among his duties is the management of the tax reporting function for Dahl's Qualified Settlement Funds. A former Big 4 Auditor, he's built his career helping organizations develop effective and scalable accounting and operational systems to enable organizational growth while serving the needs of their customers.

Having worked in a number of heavily regulated industries, where both privacy and cost-effectiveness are paramount, he has helped with the design and development of several technology platforms and reporting applications.

Jeff is a graduate of St. John's University in Collegeville, Minnesota with Bachelor of Arts in Accounting. A Certified Fraud Examiner, Jeff has also previously held CPA, Securities (FINRA) and Insurance licenses.

**NANCY BAKER**
Principal

Nancy is a Project Manager with over nine years' experience in securities and class action claims management. Prior to joining Dahl, Nancy was a project manager for Rust Consulting specializing in securities cases. Nancy manages a variety of settlements for Dahl including property, insurance and consumer cases. She also drafts notice documents, call scripts and other claimant communications for the firm's projects, handles our published notice campaigns, and coordinates special projects for clients. Nancy graduated with honors from Augsburg College with a Bachelor of Arts degree.

**KELLY KRATZ**
Principal

Kelly is a Senior Project Manager at Dahl with experience in the mortgage and financial services industries and more than eight years of Big 4 Public Accounting experience, including six years of consulting and project management, and two years of operations and resource management. Prior to joining Dahl, Kelly worked as a tax consultant at Deloitte in the National Federal Tax Services Group managing numerous complex high-profile client engagements for several Fortune 100 companies, providing related project IRS audit defense, and preparing tax memorandums.

Kelly holds her Bachelor of Arts with a concentration in Financial Management from the University of St. Thomas.

**MARK FELLOWS**
Principal

Mark is an attorney whose work is focused on notice planning and project initialization for large or complex matters. He has particular expertise in drafting plain language notice and related documentation to comply with applicable legal standards. He also is experienced in working with counsel to create hybrid notice strategies using electronic media to meet due process standards in challenging situations.

He has more than ten years of experience serving as Legal Counsel and Manager of Legal Research and Education for a large claims adjudication and processing organization. Mark previously worked as a consultant in the data analytics and business intelligence industry. Mark earned his law degree from William Mitchell College of Law and his B.S. from Lewis and Clark College.

**DAN LEGIERSKI**
Principal

Dan Legierski is a Principal at Dahl who works closely with other Principals, Project Managers, and the Operations Team to ensure that our clients' needs are met. His professional experience includes over twenty years of effectively leveraging technology to better process legal, regulatory, and consumer claims.

Dan has spent time directing Finance/Accounting, Technology, and Operations Departments so he truly understands all aspects of claims processing and how the various functions work together to ensure quality and efficiency. During his tenure at Dahl, he has led the design and development of two major technology platforms that manage the administration of class action cases, promoting quality, accuracy, and cost effectiveness.

Dan graduated from the graduate Software Systems Program at the University of St. Thomas, and from St. Cloud State University with a Bachelors of Science in both Finance and Economics.

**DAVID HOFFMAN**
National Director of Business Development

David Hoffman is National Director of Business Development at Dahl and is responsible for leading Dahl's efforts to provide expert consulting to aid clients in structuring the notice and claims administration processes. He has more than ten years of experience in providing consulting solutions to attorneys engaged in high-impact litigation. David takes pride in structuring engagement proposals for Dahl clients and prospective clients that accomplish settlement requirements as efficiently and reliably as possible. David studied Behavioral Science & Law at the University of Wisconsin at Madison and has actively pursued continuing education in client services and business development approaches from Miller-Heiman, FranklinCovey, Dale Carnegie, and others.

**BRYN BRIDLEY**
Project Initialization Manager

Serving as a Project Manager for more than five years, Bryn recently transitioned to the role of Project Initialization Manager. Bryn was a project manager for Rust Consulting prior to joining Dahl and has over nine years of experience in the claims administration industry. Bryn is responsible for the setup of each new Dahl project. After a thorough review of each project's case documents, she establishes a project timeline and works directly with Plaintiff and Defense Counsel to finalize notice documents, drafts telephone and website contents, cleanses data files for mailing, and transitions the project to the Dahl claims management team after notice is mailed.

Bryn graduated with honors from the University of Minnesota-Duluth with a Bachelor of Arts degree.

**SEAN COMBS**
Project Manager

Sean is a Project Manager with over eleven years' experience in consumer class action claims management. Prior to joining Dahl, Sean was a Project Coordinator for Rust Consulting, specializing in high volume claims processing and quality assurance. Sean also has several years' experience in providing CAFA notice mailings.

**MAI O'BRION**
Project Manager

Mai became joined the team at Dahl Administration with over ten years of Project and Account Management experience in various industries from Translations and Marketing to Print and Manufacturing. Mai is experienced in quality control implementation and has worked with both ISO standards and Lean Six Sigma for over six years. She enjoys working on large, complex projects with Dahl and believes in an interactive project management style in which client communication and responsiveness is a key element in the success of the project.

Mai was a double major in Biology and English at the University of Minnesota where she was also the President of the student organization AASCC from 2000-2001.

**CARRIE O'CONNELL**
Project Manager

Carrie O'Connell joined the Dahl team after working for seven years as a Supervisor in a high-volume legal claim processing organization. Carrie has eight years of experience in legal case management and quality control, which enables her to oversee a variety of settlements for Dahl and to lead our quality assurance team. Carrie earned a Bachelor of Science degree in History from Iowa State University and she received her Paralegal Certificate in 2004.

**ANN LINTON**
Project Manager

Ann joined Dahl after working for five years in the distribution business and was involved in chamber of commerce and a neighborhood business group. Previous to that she spent seven years working with juvenile delinquents at a day treatment program.

Ann earned a Masters in Social Work from Augsburg College and a Bachelors of Social Work from University of St. Thomas.

**JOHN SNYDER**
Director of Information Technology

John is the architect of Dahl's online claims portal, which allows parties to view and process cases over the internet using paperless workflow capabilities. He has over six years of information technology experience in legal claims processing and nearly 15 years of experience with information technology in general.

John possesses an MBA from the University of Minnesota Carlson School of Business and a law degree from the University of Wisconsin.

**GENNADIY KATSNELSON**
Web Interface/Custom Development

Gennadiy is a Software Developer and focuses primarily on web interface and custom software development. He has more than 20 years of top-level website development, design and architecture experience. His prior experience includes project management, website architecture, website design and hands-on development in which he successfully delivered large-scale systems to the market in a number of industries, including legal. Gennadiy has knowledge and practical expertise in a wide range of software platforms and technologies. Gennadiy obtained a Masters Degree in Mathematics and Computer Science from Belarusian State University, Minsk, Belarus.

**MIKE JOYCE**
Web Developer

Mike is a web developer for Dahl's IT team. In addition to building Dahl's filing and notice sites, he also assists in training and requirement gathering for Dahl's internal business applications and processes. Mike received his BA in Economics from the University of Minnesota–Twin Cities.

**DAN COXEY**
Business/Systems Analyst

Dan is the lead data specialist for Dahl while also serving as a business analyst and liaison between Dahl's IT and Operations Teams. He works closely with the Dahl Operations Team to identify areas of improvement and business requirements in a constant effort to increase the efficiency and accuracy of Dahl operations. Dan received his Bachelor of Science degree in Business and Computer Information Systems from Edgewood College (Madison, WI).

# OUR REFERENCES

Dahl ADMINISTRATION

## OUR REFERENCES

### DEFENSE COUNSEL

**JOHN F. WARD, JR.**
Partner, Jenner & Block LLP

**MICHAEL T. BRODY**
Partner, Jenner & Block LLP

**NEIL M. BAROFSKY**
Partner, Jenner & Block LLP

John Ward and Michael Brody are Defense counsel for the Hertz/ATS/PlatePass settlement (Ward) and the Hertz Equipment Rental Corporation LDW settlement (Brody). Neil Barofsky is Defense counsel representing CashCall in settlements between individual states and a consumer lender and related entities.

Jenner & Block
353 N. Clark Street
Chicago, IL 60654-3456

Jenner & Block
919 Third Avenue
New York, NY 10022-3908

John F. Ward, Jr.
Work: (312) 923-2650
jward@jenner.com

Michael T. Brody
Work: (312) 923-2711
mbrody@jenner.com

Neil M. Barofsky
Work: (212) 891-1675
nbarofsky@jenner.com

**BRIAN R. ENGLAND**
Special Counsel, Sullivan & Cromwell LLP

Defense counsel for Philips BPA settlement and Philips TV settlement.

Sullivan & Cromwell LLP
1888 Century Park East
Los Angeles, CA 90067-1725

Brian R. England
Work: (310) 712-6672
englandb@sullcrom.com

**MARCI A. EISENSTEIN**
Partner, Schiff Hardin LLP

**PAULA J. MORENCY**
Partner, Schiff Hardin LLP

Marci Eisenstein is Defense counsel in the Twin City Fire Insurance/Hartford Insurance settlement. Paula Morency is Defense counsel in the Suave 30-Day Smoothing Kit settlement.

Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606-6473

Marci A. Eisenstein
Work: (312) 258-5545
meisenstein@schiffhardin.com

Paula J. Morency
Work: (312) 258-5549
pmorency@schiffhardin.com

Dahl ADMINISTRATION

## OUR REFERENCES

### DEFENSE COUNSEL, CONTINUED

**BRYAN O. BALOGH**
Partner, Burr & Forman LLP

Defense counsel in the Janoka v. Veolia Environmental Services settlement.

Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203

Bryan Balogh
Work: (205) 458-5469
bbalogh@burr.com

**WHITTY SOMVICHIAN**
Partner, Cooley LLP

Defense counsel representing eBay in the eBay Mobile and eBay Featured Plus settlements.

Cooley LLP
101 California Street
5th Floor
San Francisco, CA 94111-5800

Whitty Somvichian
Work: (415) 693-2061
wsomvichian@cooley.com

**ELIZABETH B. McREE**
Partner, Jones Day

Defense counsel representing Verizon in the Coie v. Verizon settlement.

Jones Day
77 West Wacker
Chicago, IL 60601-1692

Liz McRee
Work: (312) 269-4374
emcree@jonesday.com

Dahl ADMINISTRATION

## OUR REFERENCES

### PLAINTIFF COUNSEL

**JOE KRONAWITTER**
Partner, Horn Aylward & Bandy, LLC

Plaintiff counsel for the In Re: Motor Fuel Sales Practices Litigation settlements.

Horn Aylward & Bandy, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108

Joe Kronawitter
Work: (816) 421-0700
jkronawitter@hab-law.com

**RALPH K. PHALEN** | **MITCHELL L. BURGESS**

Class co-counsel in numerous settlements administered by Dahl Administration.

Ralph K. Phalen, Esquire
Burgess & Lamb PC
1000 Broadway Street
Suite 400
Kansas City, MO 64105

Ralph K. Phalen
Work: (816) 787-1626
phalenlaw@yahoo.com

Mitchell L. Burgess
Work: (816) 471-1700
mitch@burgessandlamb.com

**MARK S. MANDELL**
Partner, Mandell, Schwartz & Bosclair, Ltd.

Lead Plaintiff Counsel for the Station Nightclub Fire settlement.

Mandell, Schwartz & Boisclair, Ltd.
One Park Row
Providence, RI 02903

Mark S. Mandell
Work: (401) 273-8330
msmandell@msn.com

Dahl ADMINISTRATION

## OUR REFERENCES

### PLAINTIFF COUNSEL, CONTINUED

**STEVEN JAFFE**
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.

Class Counsel in the Appel v. Liberty American Insurance Company settlement.

Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.
425 North Andrews Avenue
Fort Lauderdale, FL 33301

Work: (214) 231-0555

**CHRISTOPHER S. POLASZEK**
Morgan & Morgan

Class Counsel in the Suave 30-Day Smoothing Kit settlement.

Morgan & Morgan
201 N. Franklin Street
7th Floor
Tampa, Florida 33602

Chris Polaszek
Work: 813-223-5505
cpolaszek@forthepeople.com

**MICHAEL COREN**
Cohen, Placitella & Roth, PC

Class Counsel in the Bower v. MetLife settlement.

Cohen, Placitella & Roth, PC
Two Commerce Square
Suite 2900
Philadelphia, PA 19103

Michael Coren
Work: 215-567-3500
mcoren@cprlaw.com

# SELECTED CASES

Dahl ADMINISTRATION

## OUR CASES

### STATION NIGHTCLUB FIRE SETTLEMENT - $176 MILLION

Dahl staff provided onsite claim evaluation services at 11 law firms in Providence, Rhode Island to determine claim validity and final claim values for over 300 death and personal injury claims. The review included analysis of authority documents and medical records by a staff of Registered Nurses and senior level project managers. Jeff Dahl is the court-appointed Neutral Expert responsible for final determinations of all claims for this settlement.

Lead Counsel: Mark S. Mandell, Law firm of Mandell, Schwartz & Boisclair, Providence, RI

### VEOLIA CLASS SETTLEMENT - 1.2 MILLION COMPLEX DATA RECORDS PROCESSED

Dahl was selected to provide Class Notice and Distribution for the Janoka v. Veolia Environmental Services class action. Dahl analyzed and processed over 1.2 million complex data records, mailed notice to over 900,000 potential class members, and processed incoming correspondence and opt outs. Dahl then managed complex claims processing procedures, including detailed analysis of class member invoices and other supporting documentation, and distributed settlement funds to eligible class members.

Plaintiff Counsel: James M. Terrell, McCallum, Methvin & Terrell, P.C., Birmingham, AL

Defense Counsel: Rik S. Tozzi and Brian O. Balogh, Burr Forman LLP

### METLIFE CLASS SETTLEMENT - NEARLY 1 MILLION CLASS MEMBER CHECKS DISTRIBUTED

Dahl was selected to provide Class Notice, Settlement, Notice, and Distribution for the Bower v. MetLife class action. Dahl mailed notice to over 900,000 potential class members, and processed incoming correspondence and opt outs. Dahl distributed nearly one million checks to eligible class members and handled all requests for re-issued checks. Dahl implemented innovative, cost-effective solutions to manage the distribution process.

Plaintiff Counsel: Steven R. Jaffe, Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., Fort Lauderdale, FL; Stephen A. Dunn, Emanuel & Dunn PLLC, Raleigh, NC; and Michael Coren, Cohen, Placitella & Roth, P.C, Philadelphia, PA

Defense Counsel: Ross Bricker and John F. Ward, Jr., Jenner & Block LLP and Robert D. Friedman and Scott H. Moskol, Burns & Levinson LLP

Dahl ADMINISTRATION



## HERTZ PLATEPASS SETTLEMENT - 1.6 MILLION NOTICES MAILED

Dahl was selected to provide Class Notice, Claims Processing, and Distribution for the Doherty and Simonson v. Hertz, ATS, and PlatePass class action. Dahl mailed notice to over 1.6 million potential class members, administered an efficient online claim filing procedure, and processed incoming correspondence and opt outs. Dahl processed incoming claims and distributed nearly 100,000 checks to eligible class members.

Plaintiff Counsel: Jeffrey Goldenberg, Goldenberg Schneider LPA, Cincinnati, OH and Brian Dershaw, Beckman Weil Shepardson LLC, Cincinnati, OH

Defense Counsel: James Comodeca, Dinsmore & Shohl LLP and James Griffith, Jr., Akin Gump Strauss Hauer & Feld LLP

## URBAN ACTIVE FITNESS SETTLEMENT - 600,000 CLASS MEMBERS

Dahl was the Settlement Administrator for the Urban Active Fitness class action settlement and was responsible for the distribution of mailed notice to more than 600,000 class members, implementation of a published notice campaign, extensive data processing, online claim filing, and complex claims processing.

Plaintiff Counsel: Thomas N. McCormick, Vorys Sater Seymour and Pease LLP, Columbus, OH

Defense Counsel: V. Brandon McGrath, Bingham Greenebaum Doll PLLC, Cincinnati, OH

## RODENBAUGH V. CVS PHARMACY SETTLEMENT - 400,000 CLASS MEMBERS

Dahl is the Settlement Administrator for the Rodenbaugh v. CVS Pharmacy class action settlement and was responsible for the distribution of mailed notice to more than 400,000 class members, implementation of a published notice campaign, operation of an informational phone line, processing of claim forms and correspondence submitted by class members, and providing claim review services.

Defense Counsel: Roman Wuller, Thompson Coburn LLP, St. Louis, MO and Edward Hardin Jr., Burr & Forman LLP, Birmingham, AL

Plaintiff Counsel: John Edgar, Edgar Law Firm LLC, Kansas City, MO and Carles McCallum III and R. Brent Irby, McCallum, Hoaglund Cook & Irby LLP, Vestavia Hills, AL

Dahl ADMINISTRATION

## OUR CASES

### COIE v. VERIZON WIRELESS SETTLEMENT- CUSTOM DIRECT NOTICE PROGRAM

Dahl distributed the Class Notice and Opt-In Form to a large employment class, including a custom outer envelope including a "QR" matrix barcode which directed Class Members to the mobile-optimized settlement website when scanned by a mobile device. Dahl implemented a comprehensive tracing and re-mail program to maximize the reach of the direct notice program. Dahl managed a live telephone helpline that responded to thousands of phone calls, processed filed claims, and successfully distributed the settlement funds.

Defense Counsel: Elizabeth McRee, Jones Day, Chicago, IL

Plaintiff Counsel: Ilan Chorowsky, Progressive Law Group, Chicago, IL

### APPEL v. LIBERTY SETTLEMENT - COMPLEX CLAIM PROCESSING

Dahl was the Settlement Administrator for the Appel v. Liberty settlement involving insurance coverage limits for mobile and manufactured homes suffering wind damage in Florida. Dahl implemented a direct notice program, implemented a settlement website and live call center including Spanish-speaking representatives, processed received claims, implemented complex claim processing procedures, and distributed the settlement fund.

Defense Counsel: Amy L. Brown, Squire Sanders, Washington D.C.

# OUR CASE EXPERIENCE

Dahl ADMINISTRATION

**CASE CITES**

**CURRENT CASES – DAHL**

## CONSUMER

**Aguiar v. Merisant Co.,** No. 2:14-CV-00670 (C.D. Cal.)

**Applewhite v. Capital One Bank,** No. 4:06-CV -69 (N.D. Miss.)

**Avalishvili v. Reussille Law Firm, LLC,** No. 3:12-CV-02772-TJB (D. N.J.)

**Banner v. Law Offices of David J. Stern,** No. 9:11-CV-80914 (S.D. Fla.)

**In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,** No. 4:08-MD-1967 (W.D. Mo.)

**Boewer v. Chris Auffenberd Kirkwood Mitsubishi,** No. 09SL-CC05382 (Mo. Cir. Ct. St. Louis County)

**Bradley v. Sears, Roebuck & Co.,** No. 06-L-0095 (Ill. Cir. Ct. St. Clair County)

**Brandon v. Van Chevrolet-Cadillac, Inc.,** No. 1031-CV14654 (Mo. Cir Ct. Greene County)

**Brannon v. Capital One,** No. 3:07-CV -1016 (M.D. Fla.)

**Brewer v. Missouri Title Loans, Inc.,** No. 0722-CC-00015 (Mo. Cir. Ct. St. Louis County)

**Briggs v. Fletcher Auto. No. 7, LLC,** No. 10AO-CC003331 (Mo. Cir. Ct. Jasper County)

**Brown v. Suntrup Ford, Inc.,** No. 08SL-CC05103 (Mo. Cir. Ct. St. Louis County)

**Brown v. Zeiser Motors,** No. 0811-CV04298 (Mo. Cir. Ct. St. Charles County)

**Brunner v. Head Motor Co.,** No. 0811-CV04298 (Mo. Cir. Ct. Boone County)

**Bryant v. Motors Liquidation Co.,** No. 09-50026 (Bankr. S.D.N.Y.)

**Budeprion XL Mktg. & Sales Practices Litig.,** No. 2:09-CV-2811 (E.D. Pa.)

**Busby v. RealtySouth,** No. 2:04-CV -2799 (N.D. Ala.)

**Bush v. Cyber Asset Recovery, LLC,** No. MID-L-005132-10 (N.J. Middlesex County Ct.)

**Carlile v. Murfin Drilling Co., Inc.,** No. 13-CV-61 (Kan. Dist. Ct. Seward County)

**Charron v. Pinnacle Group, N.Y.,** No. 1:07-CV -6316 (S.D.N.Y.)

**Chulsky v. Hudson Law Offices, P.C.,** No. 3:10-CV-3058-FLW (D.N.J.)

**Conderman v. Jim Trenary Chevrolet, Inc.,** No. 0811-CV-11388 (Mo. Cir. Ct. St. Charles County)

**Cornett v. Samson Ress. Co.,** No. CJ-09-81 (Okla. Dist. Ct. Dewey County)

**Cox v. Max Motors II, LLC,** No. 09BS-CC00078 (Mo. Cir. Ct. Bates County)

**Cullan and Cullan, LLC, v. M-Qube, Inc.,** No. 8:13-CV-00172 (D. Ne.)

**Custom LED, LLC v. eBay Inc.,** No. 3:12-CV-00350 (N.D. Cal.)

**Davis Landscape, LTD. v. Hertz Equip. Rental Corp.,** No. 06-3830 (D.N.J.)

**DKW Constr., Co., Inc. & Brian Wood v. Southtown Dodge, Inc.,** No. 08SL-CC05106 (Mo. Cir. Ct. St. Louis County)

Dahl ADMINISTRATION

## CASE CITES

### CONSUMER - CONTINUED

**Dobson v. Dave Cross Motors, Inc.,** No. 1016-CV-26853 (Mo. Cir. Ct. Jackson County)

**Doherty v. The Hertz Corp.,** No. 1:10-CV-00359 (D. N.J.)

**Dugan v. Lloyds TSB Bank, PLC,** No. 3:12-CV-02549 (N.D. Cal.)

**Farno v. Ansure Mortuaries of Indiana, LLC,** No. 41C01-0910-PL-7 (Ind. Cir. Ct. Johnson County)

**Friess v. Layne Energy, Inc.,** No. 11-CV-57 (Kan. Dist. Ct. Wilson County)

**Fritzinger v. Angie's List, Inc.,** No. 1:12-CV-1118 (S.D. Ind.)

**Frost v. Ohio E. Express, Inc.,** No. 3:12-CV-3016 (N.D. Ohio)

**Gaffney v. Autohaus West, Inc.,** No. 09SL-CC00430 (Mo. Cir. Ct. St. Louis County)

**Gascho v. Global Fitness Holdings, LLC,** No. 2:11-CV-436 (S.D. Ohio)

**Gentry v. Reliable Auto., Inc.,** No. 0831-CV06073 (Mo. Cir. Ct. Greene County)

**Grant v. Onyx Acceptance Corp.,** No. 07-20315 (Fla. Cir. Ct. Broward County)

**Green v. American Cleaners and Laundry Co., Inc.,** No. 12SL-CC03095 (Mo. Cir. Ct. St. Louis County)

**Green v. Major Infiniti, Inc.,** No. 1116-CV09583 (Mo. Cir. Ct. Jackson County)

**Gregg v. Check Into Cash of Missouri, Inc.,** No. 11-CV-368 (W.D. Mo.)

**Gumm v. Joe Machens Ford, Inc.,** No. 08BA-CV03153 (Mo. Cir. Ct. Boone County)

**Hamilton v. Cash Am. of Missouri, Inc.,** No. 1216-CV-10576 (Mo. Cir. Ct. Jackson County)

**Heien v. Archstone Communities, LLC,** No. 1:12-CV-11079-RGS (D. Mass.)

**Hermida v. ASN Reading LLC,** No. 10-CV-12083-WGY (D. Mass.)

**Herrera v. Check 'n Go of California, Inc.,** No. CGC-07-4627790 (Cal. Super. Ct. San Francisco County)

**Hershey v. ExxonMobil Oil Corp.,** No. 6:07-CV-01300 (D. Kan.)

**Hewitt v. Law Offices of David J. Stern**, No. 50-2009-CA-036046 (Fla. Cir. Ct. Palm Beach County)

**Hollins v. Capital Solutions Invs., Inc.,** No. 11SL-CC04216 (Mo. Cir. Ct. St. Louis County)

**Hooper v. Suntrup Buick-Pontiac-GMC Truck, Inc.**, No. 0811-CV10921 (Mo. Cir. Ct. St. Charles County)

**Hopler v. Sapaugh Motors, Inc.,** No. 09JE-CC00146 (Mo. Cir. Ct. Jefferson County)

**Horn v. Commercial Lending Capital, Inc.,** No. RIC10019819 (Cal. Super. Ct. Riverside County)

**Howerton v. Cargill, Inc.,** No. 1:13-CV-00336 (D. Haw.)

**In the Matter of Xacti LLC,** No. 13C20192 (Or. Cir. Ct. Marion County)

**Janicki v. Jeffrey L. Rosen and Trustmark Recovery Serv. Inc.,** No. 1:13-CV-06759 (N.D. Ill.)

**Janoka v. Veolia Envtl. Servs. N. Am. Corp.,** No. 69-CV-2011-900056 (Ala. Cir. Ct. Barbour County)

**Johnson v. Washington Univ.,** No. 2:10-CV-4170 (W.D. Mo.)

**Jones v. Wells Fargo, N.A.**, No. BC337821 (Cal. Super. Ct. L.A. County)

Dahl ADMINISTRATION

## CASE CITES

### CONSUMER - CONTINUED

**Jones v. W. County BMW, Inc.,** No. 08SL-CC05222-01 (Mo. Cir. Ct. St. Louis County)

**Keirsey v. eBay, Inc.,** No. 12-Cv-01200-JST (N.D. Cal.)

**Khweye v. Leaders Fin. Co.,** No. ESX-L-5584-10 (N.J. Super. Ct. Essex County)

**Kreilich v. JL Autos, Inc.,** No. 09SL-CC0172 (Mo. Cir. Ct. St. Louis County)

**Lagas v. Verisma Sys., Inc.,** No. 4:13-CV-01082 (W.D. Mo.)

**Ledterman v. James Perse Enter., Inc.,** No. BC480530 (Cal. Super. Ct L.A. County)

**LeFever v. Am. Ear Hearing Aid & Audiology,** No. 11-CV-0832 (Ohio Comm. Pl. Licking County)

**Lewellen v. Reliable Imports and RV, Inc.,** No. 1031-CV11926 (Mo. Cir. Ct. Greene County)

**Lippert v. Edison Motor Cars, Inc.,** No. MID-L-6599-10 (N.J. Super. Ct. Middlesex County)

**Livingston v. Capital One,** No. 3:07-CV-266 (M.D. Fla.)

**Love v. LendingTree Claims Admin.,** No. 2009CV009598 (Wis. Cir. Ct. Milwaukee County)

**Lucero v. Love, Beal & Nixon, P.C.,** No. 4:12-CV-659 (N.D. Okla.)

**Lundsford v. Woodforest Nat'l Bank,** No. 1:12-CV-103-CAP (N.D. GA.)

**Lundy v. Check Into Cash of Missouri, Inc.,** No. 1216-CV10150 (Mo. Cir. Ct. Jackson County)

**Lundy v. Mid-America Credit, Inc.,** No. 1116-CV02060 (Mo. Cir Ct. Jackson County)

**Mayfield v. Thoroughbred Ford of Platte City, Inc.,** No. 08AE-CV00467 (Mo. Cir Ct. Platte County)

**Metcalf v. Marshall Ford Sales, Inc.,** No. 0811-CV11381 (Mo. Cir. Ct. St. Charles County)

**Mikale v. John Bommarito Oldsmobile-Cadillac, Inc.,** No. 08SL-CC05223 & 09SL-CC00167 (Mo. Cir. Ct. St. Louis County)

**Miller v. Capital One Bank,** No. 3:07-CV-265 (M.D. Fla.)

**Miller v. Nat'l Enter. Sys., Inc.,** No. 13 C 1720 (N.D. Ill.)

**Motor Fuel Temperature Sales Practices,** No. 07-MD-1840-KHV (D. Kan.)

**Mortgage Store, Inc. v. LendingTree Loans**, No. 06CC00250 (Cal. Super. Ct. Orange County)

**Moy v. Eltman, Eltman & Cooper, P.C.,** No. 12-CV-02382 (E.D.N.Y.)

**Naes v. Tom Pappas Toyota, Inc.,** No. 0711-CV09005 (Mo. Cir. Ct. St. Charles County)

**Neese v. Lithia Chrysler Jeep of Anchorage, Inc.,** No. 3AN-06-4815 (Alaska Super. Ct. Anchorage)

**North Star Capital Acquisitions v. King,** No. 3:07-CV-264 (M.D. Fla.)

**Omar v. 950 B14 DE, LLC,** No. CGC-13-530203 (Cal. Super. Ct. San Francisco County)

**Omohundro v. Glendale Chrysler-Jeep, Inc.,** No. 2107CC-03927 (Mo. Cir. Ct. St. Louis County)

**Padberg v. Dish Network, LLC,** No. 11-4035 (W.D. Mo.)

**Painter v. Ackerman Motor Company, Inc.,** No. 1022-CC10135 (Mo. Cir. Ct. City of St. Louis)

Dahl ADMINISTRATION



## CONSUMER - CONTINUED

**Perkins v. Philips Oral Healthcare, Inc.,** No. 12-CV-1414H BGS (S.D. Cal.)

**Petersen v. Central Jersey Pool,** No. MON-L-4044-11 (N.J. Super. Ct. Monmouth County)

**In re Philips/Magnavox Television Litig.,** No. 2:09-CV-3072 (D. N.J.)

**Powers v. Fifth Third Mortg. Co.,** No. 1:09-CV-2059 (N.D. Ohio)

**Redd v. Suntrup Hyundai, Inc.,** No. 09SL-CC00173 (Mo. Cir. Ct. St. Louis County

**Reid v. Unilever United States, Inc.,** No. 12-CV-6058 (N.D. Ill.)

**Rhodenbaugh v. CVS Pharmacy, Inc.,** No. 0916-CV09631 (Mo. Cir. Ct. Jackson County)

**Richards v. Lou Fusz Auto. Network, Inc.,** No. 08SL-CC04594 (Mo. Cir. Ct. St. Louis County)

**Richardson v. Weber Chevrolet Co.,** No. 09SL-CC00170 (Mo. Cir Ct. St. Louis County)

**Riley v. Northland Group, Inc.,** No. 2:12-CV-00950 (E.D. Wis.)

**Rizzo v. Hendrick Auto. Group.,** No. 4:08-CV-137 (W.D. Mo.)

**Roberts v. Source for Public Data,** No. 2:08-CV -4167 (W.D. Mo.)

**Robinson v. J & C Auto Outlet, LLC,** No. MID-L-1961-13 (N.J. Super. Ct. Middlesex County)

**S37 Management, Inc. v. Advance Refrigeration Co.,** No. 06-CH-20999 (Ill. Cir. Ct. Cook County

**Sams v. Adams Auto Corp.,** No. 0916-CV1521 (Mo. Cir. Ct. Jackson County)

**Seekamp v. It's Huge, Inc.,** No. 1:09-CV-00018 (N.D. N.Y)

**Serochi, Jr. v. Bosa Dev. Cal. II, Inc.,** No. 37-2009-00096686-CU-BT-CTL (Cal Super. Ct. San Diego County)

**Schuster v. Machens Enters., Inc.,** No. 11BA-CV01269 (Mo. Cir. Ct. Boone County)

**Shaffer v. Royal Gate Dodge,** No. 07SL-CC00949 (Mo. Cir Ct. St. Louis County)

**Sherrell v. Great S. Bank,** No. 1131-CV02280 (Mo. Cir. Ct. Greene County)

**Shirley v. Reliable Chevrolet, Inc.,** No. 0831-CV06082 (Mo. Cir Ct. Greene County)

**Silverberg v. Hotels.com, LP,** No. 12-01819 (Tex. Dist. Ct.)

**Sims v. Rosedale Cemetery Co.,** No. 03-C-506 (W. Va. Cir. Ct. Berkeley County)

**Soper v. American Traffic Solutions, Inc.,** No. CACE 10-046095 (17th Cir. Ct. Broward County)

**Stasko v. City of Chicago**, No. 09-CH17167 (Ill. Cir. Ct. Cook County)

**State of Texas v. Bluehippo,** No. D-1-GV-10-000102 (Tex. Dist. Ct. Travis County)

**State of Texas v. Cristo Vive,** No. D-1-GV-12-001092 (Tex. Dist. Ct. Travis County)

**Steiner v. Rawlings Sporting Goods Co., Inc.,** No. 2:12-CV-02531 (D. N.J.)

**Stevens v. Bommarito Nissan, Inc.** No. 09SL-CC00167 (Mo. Cir. Ct. St. Louis County)

**Strickland v. Fletcher Auto., No. 9,** No. 09AP-CC00091 (Mo. Cir. Ct. Jasper County)

**In re Surewest Comm'ns Shareholder Litig.,** No. SCV-0030665 (Cal. Super Ct. Placer County)

Dahl ADMINISTRATION

**CASE CITES**

## CONSUMER - CONTINUED

**Swires v. Glaxosmithkline,** No. 11-L-587 (Ill. Cir. Ct. St. Clair County)

**Thomas v. Tenet Healthsystems SL, Inc.,** No. 12SL-CC01811 (Mo. Cir. Ct. St. Louis County)

**Tortora v. Guardian Protection Servs., Inc.,** No. MID-L-1041-10 (N.J. Super. Ct. Middlesex County)

**Valley v. Johnny Londoff Chevrolet, Inc.,** No. 10SL-CC00523 (Mo. Cir. Ct. St. Louis County)

**Van Loo v. Capitol City Chrysler-Nissan, Inc.,** No. 11AC-CC00324 (Mo. Cir. Ct. Cole County)

**In re Voluntary Dissolution of Nexus Fiduciary Trust Corp.,** No. 29D03-1003-CC-323 (Ind. Super. Ct. Hamilton County)

**Wade v. Thoroughbred Ford, Inc.,** No. 10AE-CV04323 (Mo. Cir. Ct. Platte County)

**Walczak v. ONYX Acceptance Corp.,** No. 03 CH 0693 (Ill. Cir. Ct. Lake County)

**Wallace B. Roderick Revocable Living Trust, Trustee Amanda Roderick v. Noble Energy, Inc.,** No. 2009CV2 (Kan. Dist. Ct. Kearny County)

**Wallace B. Roderick Revocable Living Trust, Trustee Amanda Roderick v. Osborn Heirs Co., Ltd.,** No. 2009CV15 (Kan. Dist. Ct. Kearny County)

**Welsh v. John Youngblood Motors, Inc.,** No. 0931-CV14259 (Mo. Cir. Ct. Greene County)

**Westman v. Rogers Family Funeral Home, Inc.,** No C 98-03165 (Cal. Super. Ct. Contra Costa County)

**Wenger v. South Brunswick Furniture, Inc.,** No. MID-L-000479-12 (N.J. Middlesex County Ct.)

**Wiles v. S.W. Bell Tel. Co.,** No. 2:09-CV-4236 (W.D. Mo.)

**Wogoman v. Worth Harley Davidson N., Inc.,** No. 09CY-CV9090 (Mo. Cir. Ct. Clay County)

**Wood v. Plaza Tire Servs.,** No. 11SL-CC01507 (Mo. Cir. Ct. St. Louis County)

**Woods v. QC Fin.l Servs., Inc.,** No. 11-148-01395-09 (Am. Arb. Ass'n)

**Woodward v. Ozark Kenworth, Inc.,** No. 1031-CV02203 (Mo. Cir Ct. Greene County)

**Yarde v. Ed Napleton St. Louis Imports, Inc.,** No. 09SL-CC00171 (Mo. Cir. Ct. St. Louis County)

**Zaromb v. SSM Health Care Corp.,** No. 12SL-CC00654 (Mo. Cir. Ct. St. Louis County)

## INSURANCE

**Abrahams-Goullub v. United Servs. Auto. Assoc.,** No. 3AN-09-6693CI (Alaska Super. Ct. Anchorage)

**Appel v. Liberty Am. Ins. Co.,** No. 1:08-CV-20385 (S.D. Fla.)

**Besecker v. Peerless Indem. Ins. Co.,** No. 2:09-CV-05513-TJS (E.D. Pa.)

**Bower v. MetLife,** No. 1:09-CV-351 (S.D. Ohio)

**Casey v. Coventry Health Care of Kansas, Inc.,** No. 4:08-cv-201 (W.D. Mo.)

**Childs v. Unified Life Ins. Co.,** No. 4:10-CV-23 (N.D. Okla.)

Dahl ADMINISTRATION

## CASE CITES

## INSURANCE - CONTINUED

**Cressy v. Fidelity & Guaranty Life Ins. Co.,** No. BC514340 (Cal. Super. Ct. L.A. County)

**Douglass v. Am. United Life Ins. Co.,** No. 29D03-9810-CP-00568 (Ind. Super. Ct. Hamilton County)

**Holling-Fry v. Coventry Health Care of Kansas, Inc.**, No. 4:07-CV-0092 (W.D. Mo.)

**Lujan v. Hallmark Ins. Co.,** No. D-101-CV-2012-01429 (N.M. Santa Fe County)

**Martin v. Twin City Fire Ins. Co.,** No. 3:08-CV-5651 (W.D. Wash.)

**Newendorp v. United Servs. Auto. Assoc.,** No. CJ-04-195S (Ok. Dist. Ct. Cleveland County)

**Poutsch v. USAA Cas. Ins. Co.,** No. CV-2011-01210 (N.M. Dist. Ct. Bernalillo County)

**Scott v. United Servs. Auto. Assoc.,** No. 2:11-CV-01422-JCC (U.S. Dist. Ct. W.D. Wash.)

**San Allen v. Stephan Buehrer, Admin. of Ohio BWC,** No. CV-07-644950 (Ohio C.P. Cuyahoga County)

**Walker v. Life Ins. Co. of the Sw.,** No. 10-CV-9198-JVS (C.D. Cal.)

**Waterman v. USAA Cas. Ins. Co.,** No. 10-5016-TJS (E.D. Pa.)

**Welschmeyer v. St. Luke's Health Sys., Inc.,** No. 1316-CV19250 (Mo. Cir. Ct. Jackson County)

## EMPLOYMENT

**Agatep v. Forest Lawn Mortuary**, No. BC433744 (Cal. Super. Ct. L.A. County)

**Alexander v. Chevron Stations,** No. C11-00896 (Cal. Super. Ct. Contra Costa County)

**Anzaldo v. The Original Mowbray's Tree Serv., Inc.,** No. S-1500-CV-274897 WDP (Cal. Super. Ct. Kern County)

**Ayon v. Cintas Corp., Inc.,** No. BC310696 (Cal. Super. Ct. L.A. County)

**Balderas v. Massage Envy Franchising, LLC,** No. 3:12-CV-06327 (N.D. Cal.)

**Barbosa v. Cargill Meat,** No. CV F 11-00275 SKO (E.D. Cal.)

**Bayard v. Veruzon W. Va., Inc.,** No. 1:11-CV-00132 (N.D. W. Va.)

**Bedoya v. Rubio's Rests.,** No. BC463799 (Cal. Super. Ct. L.A. County)

**Bell v. Delta Air Lines, Inc.,** No. 4:13-CV-01199 (N.D. Cal.)

**Bendana v. Custom Air Trucking, Inc.,** No. BC456055 (Cal. Super. Ct. L.A. County)

**Berg v. Zumiez Inc.,** No. BC408410 (Cal. Super. Ct. L.A. County)

**Binissia v. ABM Indusies., Inc.,** No. 13-CV-1230 (N.D. Ill.)

**Bonilla v. Agri-Empire,** No. RIC1209556 (Cal. Super. Ct. Riverside County)

**Borja v. TNT Plastic Molding,** No. 30-2012-00423018-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Bradley v. Networkers, Inc.,** No. GIC 862417 (Cal. Super. Ct. San Diego County)

## EMPLOYMENT - CONTINUED

**Brooks v. U.S. Bank, N.A.,** No. 12-CV-4935 EMC (N.D. Cal.)

**Brown v. Abercrombie & Fitch Co.,** No. 2:14-CV-01242 (C.D. Cal.)

**Bult-Ito v. Univ. of Alaska,** No. 3AN 09-7875CI (Alaska Super. Ct. Anchorage)

**Burden v. SelectQuote,** No. C10-05966 SBA (N.D. Cal.)

**Bustos v. Massage Envy Spa - Mission Valley,** No. 37-2012-00104022-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Byard v. Verizon W. Va., Inc.,** No. 1:11-CV-132 (N.D. W. Va.)

**Calhoun v. Gen. Petroleum Corp.,** No. BC425216 (Cal. Super. Ct. L.A. County)

**Caracoza v. Ephonamation.com, Inc.,** No. 30-2013-006892690-CU-CR-CXC (Cal. Super. Ct. Orange County)

**Cardenas v. Crothall Healthcare,** No. 11-4145 (C.D. Cal.)

**Carothers v. Lawry's The Prime Rib, Inc.,** No. 12-CV-10048 (N.D. Ill.)

**Cassidy v. Aldo U.S., Inc.,** No. 1:13-CV-04858 (N.D. Ill.)

**Castro v. Seaton, LLC,** No. BC516824 (Cal. Super. Ct. L.A. County)

**Chambers v. Chase Bank USA,** No. 1:11-CV-6014 (N.D. Ill.)

**Chavez v. Hat World, Inc.,** No. 1:12-CV-05563 (N.D. Ill.)

**Cherry v. Mayor and City Council of Baltimore,** No. 1:10-CV-01447 (D. Md.)

**Cioe v. Verizon Wireless,** No. 1:11-CV-1002 (N.D. Ill.)

**Cisneros v. Oasis South Ins. Servs.,** No. 37-2012-00103109-CU-OE-CTL (Cal. Super Ct. San Diego County)

**Clarke v. Insight Global, Inc.,** No. 3:13-CV-00357 (S.D. Cal.)

**Copi v. Brainfuse,** No. 11-CV-05195 (S.D.N.Y.)

**Crosby v. California Healthcare Medical Billing, Inc.,** No. 37-2011-00087583-CU-OE-CTL (Cal. Super Ct. San Diego County)

**D'Ambrosia v. Claro Italian Mkts.,** No. BC497301 (Cal. Super. Ct. L.A. County)

**Deliz v. Miller's Ale House, Inc.,** No. 13-CA-005176 (Fla. 13th Cir. Ct. Hillsborough County)

**Diaz v. Alco Iron & Metal Co.,** No. HG10517616 (Cal. Super. Ct. Alameda County)

**Diego v. JMS Prop. LLC,** No. 37-2013-00056177-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Dilts v. Penske Logistics, LLC,** No. 3:08-CV-00318 (S.D. Cal.)

**Dunlap v. Universal Sec. Corp.,** No. 10 CH 18197 (Ill. Cir. Ct. Cook County)

**Echeverria v. Adir Int'l,** No. BC395380 (Cal. Super. Ct. L.A. County)

**Epton v. AIS Servs., LLC,** No. 3:11-CV-00856-JM-POR (S.D. Cal.)

**Erickson v. QSP & TI Media Solutions, L.A.S.C.,** No. BC469830 (Cal. Super. Ct. L.A. County)

Dahl ADMINISTRATION

## CASE CITES

### EMPLOYMENT - CONTINUED

**Escoto-Miranda v. Evans Tire & Serc. Cents., Inc.,** No. 37-2012-00103102-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Fabela v. Micro World Corp.,** No. BC509643 (Cal. Super. Ct. L.A. County)

**Fischer v. Nat'l Distrib. Ctr. LP,** No. RIC1114952 (Cal. Super. Ct. Riverside County)

**Fitts v. Designed Metal Connections, Inc.,** No. TC027097 (Cal. Super. Ct. L.A. County)

**Flournoy v. 3S Network, Inc.,** No. C09-00113 (Cal. Super. Ct. Contra Costa County)

**Garner v. Primedia, Inc.,** No. 30-2012-00619014-CU-06-CXC (Cal. Super. Ct. Orange County)

**Gonzales v. Downtown LA Motors LP,** No. BC350769 (Cal. Super. Ct. L.A. County)

**Gonzalez v. RC Packing, LLC,** No. M108764 (Cal. Super. Ct. Monterey County)

**Grant v. Convergys Corp.,** No. 4:12-cv-000496-CEJ (E.D. Mo.)

**Haro v. Cotti Foods Corp.,** No. BC407056 (Cal. Super. Ct. L.A. County)

**Hobbs v. Ace Industrial Supplies, Inc.,** No. BC466122 (Cal. Super. Ct. L.A. County)

**Holsted v. R.J. Noble Co.,** No. 30-2010-00379770 (Cal. Super. Ct. Orange County)

**Jones v. TNT Self-Storage Mgmt., Inc.,** No. 30-2011-00513903-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Kavousy v. The Western and Southern Life Ins. Co.,** No. 8:12-CV-2109 AG (C.D. Cal.)

**Kay v. Asian Rehabilitation Servs. Inc.,** No. BC442795 (Cal. Super. Ct. L.A. County)

**Khweye v. Leaders Fin. Co.,** No. ESX-L-5584-10 (N.J. Super. Ct. Essex County)

**King v. Build.com, Inc.,** No. 159985 (Cal. Super. Ct. Butte County)

**Kinney v. Harvest Al Mgmt. Sub, LLC,** No. 2:12-CV-02716-TLN-CKD (E.D. Cal.)

**Kulvicki v. Pick-N-Pull Auto Dismantlers,** No. RG11560441 (Cal. Super. Ct. Alameda County)

**Las v. ABM Indus. Inc.,** No. 1:11-CV-05644 (N.D. Ill.)

**Las v. District Towing, Inc.,** No. 12-CV-5538 (N.D. Ill.)

**Lopez v. Pioneer Med. Group, Inc.,** No. BC496710 (Cal. Super. Ct. L.A. County)

**Macias v. Sun Grown Organic Distrib., Inc.,** No. 37-2012-00095817-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Magee v. Am. Residential Servs., LLC,** No. BC423798 (Cal. Super. Ct. L.A. County)

**Martinez v. John Morrell & Co.,** No. 1-11-CV-198307 (Cal. Super. Ct. Santa Clara County)

**Myart v. AutoZone, Inc.,** No. 05CC03219 (Cal. Super. Ct. Orange County)

**Neponoceno v. El Puerto Berry Farms, LLC,** No. 56-2014-00451373-CU-OE-VTA (Cal. Super. Ct. Ventura County)

**Nimely v. Randstad Gen. Partner (US), LLC,** No. 1:12-CV-10431 (N.D. Ill.)

Dahl ADMINISTRATION



## EMPLOYMENT - CONTINUED

**O'Brien v. Cathy Jean, Inc.,** No. 37-2011-00085539-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Office of Fed. Contract Compliance Programs, U.S. Dep't of Labor v. Cargill Meat Solutions Corp.,** No. 2012-OFC-00001 (DOLOALJ)

**Ortiz v. CVS Caremark Corp.,** No. 12-CV-05859-EDL (N.D. Cal.)

**Park v. Staples the Office Superstore LLC,** No. BC449815 (Cal. Super. Ct. L.A. County)

**Pina v. Con-way Freight,** No. C10-00100 (N.D. Cal.)

**Recendez v. Tidwell,** No. 56-2011-00404761-CU-OE-VTA (Cal. Super. Ct. Venture County)

**Robinson v. Defender Sec. Co.,** No. RG10505016 (Cal. Super. Ct. Alameda County)

**Rocha v. Royal Oaks,** No. 5:12-CV-01303 (N.D. Cal.)

**Rodriguez v. Fred Loya Ins.,** No. BC491770 (Cal. Super. Ct. L.A. County)

**Roque v. Pick-N-Pull Auto Dismantlers,** No. 34-2012-00118782 (Cal. Super. Ct. Sacramento County)

**Rosero v. East L.A. Doctors Hosp., LP,** No. BC505483 (Cal. Super. Ct. L.A. County)

**Rothberg v. Crunch LLC,** No. CGC 12-519740 (Cal. Super. Ct. San Francisco County)

**Russell v. EF International Language Schs,** No. BC481435 (Cal. Super. Ct. L.A. County)

**Saba Mungaray v. Corovan Moving & Storage Co.,** No. 30-2012-00618398-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Sano v. Southland Mgmt. Group, Inc.,** No. BC489112 (Cal Super. Ct. L.A. County)

**Salazar v. Adir Int'l,** No. BC398402 (Cal. Super. Ct. L.A. County)

**Salgado v. Shik Do Rak, Inc.,** No. BC432841 (Cal. Super. Ct. L.A. County)

**Sanchez v. St. Mary Med. Ctr.,** No. CIVDS 1304898 (Cal. Super. Ct. San Bernardino County)

**Scaglione v. M.O. Dion & Sons, Inc.,** No. BC425216 (Cal. Super. Ct. San Bernardino County)

**Schmaltz v. O'Reilly Automotive Stores, Inc.,** No. 4:12-CV-01056 (E.D. Mo.)

**Scott v. RailCrew Xpress, LLC,** No. 10C-000546 (Kan. Dist. Ct. Shawnee County)

**Shackleford v. Cargill,** No. 12-CV-4065-FJG (W.D. Mo.)

**Solorio v. Angelica Textile Servs, Inc.,** No. 5:12-CV- 03569 (N.D. Cal.)

**Sotelo v. Universal Indus. Finishing, Inc.,** No. 1-13-CV-239771 (Cal. Super. Ct. Santa Clara)

**Sparks v. FPI Mgmt., Inc.,** No. BC465773 (Cal. Super. Ct. L.A. County)

**Stevenson v. Falcon Critical Care Transp.,** No. CIVMSC09-00862 (Cal. Super. Ct. Contra Costa County)

**Studley v. Alliance Healthcare Servs., Inc.,** No. 8:10-CV-00067-CJC-AN (C.D. Cal)

**Tapia v. Pro's Ranch Mkts.,** No. S-1500-CV-274898 (Cal. Super. Ct. Kern County)

**Tula v ABM Indus. Inc.,** No. 1:12-CV-054-LY (W.D. Tex.)

Dahl ADMINISTRATION

## CASE CITES

### EMPLOYMENT - CONTINUED

**Tuter, Bauer v. King's Seafood Co.,** No. 37-2011-00084756-CU-OE-CTL (Cal. Super. Ct. San Diego County)

**Vaca v. Famarock, Inc.,** No. BC494504 (Cal. Super. Ct. L.A. County)

**Valencia v. Mobile Mini. Inc.,** No. RG-13-684308 (Cal. Super. Ct. Alameda County)

**Valencia v. SCIS Air Sec. Corp.,** No. BC421485 (Cal. Super. Ct. L.A. County)

**Valenzuela v. United Natural Foods W., Inc.,** No. BC450168 (Cal. Super. Ct. L.A. County)

**Veliz v. Cintas Corp.,** No. 5:03-CV-1180 (N.D. Cal.)

**Villarreal v. Source Refrigeration & HVAC, Inv.,** No. 1:12-CV-00243 (W.D. Tex.)

**Vincent v. Cent. Purchasing, LLC,** No. BC458544 (Cal. Super. Ct. L.A. County)

**Warren v. SCS-Chicago,** No. 10 CH 8380 (Ill. Cir. Ct. Cook County)

**Williams v. Ill. Title Loans, Inc.,** No. 13 CH 24303 (Ill. Cir. Ct. Cook County)

**Wilson v. Continental Vending, Inc.,** No. 30-2012-00585315-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Wynn v. Express, LLC,** No. 1:11-CV-04588 (N.D. Ill.)

**Zaniewski v. PRRC Inc.,** No. 3:11-CV-01535 (D. Conn.)

### BELAIRE-WEST PRIVACY NOTICE MAILINGS

**Alegria v. Student Transp. Of America, Inc.,** No. RIC1209792 (Cal. Super. Ct. Riverside County)

**Anderson v. Gulf S. Safety Consultants, LLC,** No. BC537452 (Cal. Super. Ct. L.A. County)

**Angeles v Hofs Hut Rests. Inc.,** No. BC495624 (Cal. Super. Ct. L.A. County)

**Barajas v. WHM, LLC,** No. BC491045 (Cal. Super. Ct. L.A. County)

**Bradley v. Networkers, Inc.,** No. GIC 862417 (Cal. Super. Ct. San Diego County)

**Brueske v. DHSE, Inc.,** No. RIC1205382 (Cal. Super. Ct. Riverside County)

**Castellanos v. Faro Serv. Inc.,** No. BC509830 (Cal. Super. Ct. L.A. County)

**Davis v. St. Jude Hospital,** No. 30-2012-00602596-CU-OE-CXC (Cal. Super. Ct. Orange County)

**East v. Aces,** No. 11CECG04226 (Cal. Super. Ct. Fresno County)

**Erickson v. QSP & TI Media Solutions, L.A.S.C.,** No. BC469830 (Cal. Super. Ct. L.A. County)

**Fitts v. Designed Metal Connections, Inc.,** No. TC027097 (Cal. Super. Ct. L.A. County)

**Franco v. Flight Line Products, Inc.,** No. BC497382 (Cal. Super. Ct. L.A. County)

**Gonzales v. Corsair Elec. Connectors, Inc.,** No. 30-2012-00594399-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Gutierrez v. Commerce Casino,** No. BC360704 (Cal. Super. Ct. L.A. County)

**Huizar v. Newport Serv. Corp.,** No. 30-2010-00430372-CY-OE-CXC (Cal. Super. Ct. Orange County)

Dahl ADMINISTRATION

CASE CITES

## BELAIRE-WEST PRIVACY NOTICE MAILINGS - CONTINUED

**Jaramillo-Tabar v. Nakase Bros. Wholesale Nursery,** No. 30-2012-00587417 (Cal. Super. Ct. Orange County)

**Krajec v. Mission Hospital Regional Medical Cent.,** No. 30-2012-00602596-CU-OE-CXC (Cal. Super. Ct. Orange County)

**Linares v. PCAM, LLC,** No. BC487188 (Cal. Super. Ct. L.A. County)

**Murray v. Ralph's Grocery Co.,** No. RIC1105977 (Cal. Super. Ct. Riverside County)

**Navarro v. KJ Beck's, Inc.,** No. BC509096 (Cal. Super. Ct. L.A. County)

**Ornelas v. RVGC Partners, Inc.,** No. BC500123 (Cal. Super. Ct. L.A. County)

**Read v. Howroyd-Wright Emp't Agency, Inc.,** No. BC449744 (Cal. Super. Ct. L.A. County)

**Robinson v. Airgas On-Site Safety Servs., Inc.,** No. BC523502 (Cal. Super. Ct. L.A. County)

**Rodriguez v. E.M.E., Inc.,** No. BC518692 (Cal. Super. Ct. L.A. County)

**Rodriguez v. Equinox Holdings, Inc.,** No. BC437283 (Cal. Super. Ct. L.A. County)

**Sanchez v. CPG Foods, LLC,** No. BC487187 (Cal. Super. Ct. L.A. County)

**Scott-George v. PVH Corp.,** No. 13-CV-00441-TLN-DAD (E.D. Cal.)

**Serrano v. Triumph Structures-Los Angeles, Inc.,** No. BC507112 (Cal. Super. Ct. L.A. County)

**Shiferaw v. Sunrise Senior Living Mgmt., Inc.,** No. 2:13-CV-02171-JAK-PLA (C.D. Cal.)

**Smith v. Space Exploration Technologies Co., Inc.,** No. BC486776 (Cal. Super. Ct. L.A. County)

**Vagle v. Archstone Cmtys., LLC,** No. 2:13-CV-9044 RGK (C.D. Cal)

**Vidales v. Windset Farms (Cal.), Inc.,** No. 1456106 (Cal. Super. Ct. Santa Barbara County)

**Walsh v. Pacific Bell Tel. Co.** No. 30-2011-00498062-CY-OE-CXC (Cal. Super. Ct. Orange County)

**Wilson v. Rock-Tenn Co., Inc.,** No. BC488456 (Cal. Super. Ct. L.A. County)

**Zamora v. Cardenas Markets, Inc.,** No. BC505451 (Cal. Super. Ct. L.A. County)

## GOVERNMENT

**Lopez-Venegas v. Jeh Johnson,** No. 2:13-CV-03972 (C.D. Cal.)

## PRIVACY

**Avery v. Boyd Bros. Transp., Inc.,** No. 4:13-CV-00579 (W.D. Mo.)

**Caffarello v. ADS Logistics Co., LLC,** No. 1:12-CV-08300 (N.D. Ill.)

**Diparvine v. A.P.S, Inc. d/b/a Car Quest Auto Parts,** No. 11-CV-6116 (N.D. Ill.)

**Edwards v. Impairment Res., LLC,** No. 112CV220583 (Cal. Super. Ct. Santa Clara County)

Dahl ADMINISTRATION

CASE CITES

## PRIVACY - CONTINUED

**Fun Servs. of Kansas City, Inc. v. Hertz Equip. Rental Corp.,** No. 08-CV-03944 (Kan. Dist. Ct. Johnson County)

**Gordon v. Feinstein Raiss Kelin & Booker, LLC,** No. 3:13-CV-00089 (D. N.J.)

**Johnson v. Midwest Logistics Systems, Ltd.,** No. 2:11-CV-1061 (S.D. Ohio)

**Schulz v. Rushmore Service Center, LLC,** No. 2:13-CV-00105 (E.D. Wis.)

**Yaakoby v. EagleRider,** No. 1:09-CV-5772 (N.D. Ill.)

## ANTITRUST

**Kansas City Urology Care, PA, v. Blue Cross Blue Shield of Kansas City, Inc.,** No. 0516-CV-04219 (Mo. Cir. Ct. Jackson County)

## SECURITIES

**Capgrowth v. Franklin Elec. Publishers, Inc.,** No. BUR-C-043-09 (N.J. Super. Ct. Ch. Div. Burlington County)

**Waterford Twp. General Emps. Ret. System v. Bankunited Fin. Corp.,** No. 1:08-CV-22572-MGC (S.D. Fl.)

**Williams v. Colonial Prop. Trust,** No. 01-CV-2013-902416.00 (Ala. Cir. Ct. Jefferson County)

## PERSONAL INJURY

**Gray v. Derderian,** No. 1:04-CV-312 (D. R.I.)

Dahl ADMINISTRATION

CASE CITES

## PREVIOUS CASES – JEFF AND KRISTIN DAHL

### CONSUMER

Aks v. Southgate Trust Co., No. 92-2193-L (D. Kan.)

Alachua Gen. Hosp. v. Greene, No. 90-3359-CA (Fla. Cir. Ct. Alachua County)

Gray v. Derderian, No. 04-312L (D. R.I.)

Arscott v. Humana Hosp. Daytona Beach, No. 91-2478-CI-CI (Fla. Cir. Ct. Volusia County)

Benacquisto v. Am. Express Fin. Corp., No.00-1980 DSD (D. Minn.)

Bokusky v. Edina Realty, Inc., No. 3-92--223 (D. Minn.)

Bonilla v. Trebol Motors Corp., No. 92-1795(JP) (D. P.R.)

Bunch v. Rent-A-Center, Inc., No. 00-0364-CV-W-3 (W.D. Mo.)

Burney v. Thorn Ams., Inc., No. 97-CV.-1596 (Wis. Cir. Ct. Racine County)

Circle Plumbing v. Ferguson, No. 92-036478 (Tex. Dist. Ct. Harris County)

Cook v. LADA, No. 94-1730 (W.D. La.)

Crocker v. Sunshine Corp., No. 93-2224-H/A (W.D. Tenn.)

Dismuke v. Edina Realty, Inc., No. 92-8716 (Minn. Dist. Ct. Hennepin County)

Dyson v. Flagstar Corp., No. DKC93-1503 (D. Md.)

Fed. Trade Comm'n v. Mylan Labs., Inc., No. 1:98-CV-3114 (TFH) No. 990276 (TFH/JMF)

Garcia v. Houston Nw. Medical Ctr., Inc., No. H-94-2276, (S.D. Tex.)

George v. BancOhio Nat'l Corp., No. C2-92-314 (S.D. Ohio)

Gutterman v. Am. Airlines, Inc., No. 95 CH 982 (Ill. Cir. Ct. Cook County)

Hartings v. Am. Express Co., No. 88-0744 (W.D. Pa.)

Hinton v. ColorTyme Inc., No. 94-CV. 5198 (Wis. Cir. Ct. Milwaukee County)

In re Compact Disc Minimum Advertised Price Antitrust Litig., No. 1361 (D. Me.)

In re Toys R Us Antitrust Litig., No. 98 M. D. L. 1211 (NG) (JLC) (E.D. N.Y.)

LaMontagne v. Hurley State Bank, No. 97-30093-MAP (D. Mass.)

Nitti v. Edina Realty, Inc., No. 3-92--386 (D. Minn.)

Ridgeway v. Denny's California, No. C93-20202 JW (PV.T) (N.D. Cal.)

Rowland v. Goldkist, Inc., No. CV. 94-106 (Ala. Cir. Ct. Walker County)

Sparano v. Southland Corp., No. 04 C 2098 (N.D. Ill.)

Connecticut v. Mylan Labs., Inc., No. 1:98-CV-3115 (TFH) Misc. No. 990276 (TFH/JMF) (D.D.C.)

Thomas v. Charles Schwab & Co., Inc., No. 66,7000 (La. Dist. Ct. Natchitoches Parish)

Dahl ADMINISTRATION



## CONSUMER - CONTINUED

Toledo Fair Hous. Ctr. v. Nat'l Mut. Ins. Co., No. 93-1685 (Ohio C.P. Lucas County)

U.S. v. Am. Family Mut. Ins., No. 90-C-0759 (E.D. Wis.)

Weiss v. Washington, No. 99-2-11807-3 KNT (Wash. Super. Ct. King County)

Weissberg v. Delta Air Lines, Inc., No. 88 CH 4846 (Ill. Cir. Ct. Cook County)

Whitson v. Heilig-Meyers Furniture Co., No. CV. 94-PT-0309-E (N.D. Ala.)

Wolens v. Am. Airlines, Inc., No. 88CH 7554 (Ill. Cir. Ct. Cook County)

Woosley v. California, No. CA 000499 (Cal. Super. Ct. L.A. County)

Yoel v. N.J. Nat'l Bank, No. 94-4675 (MLP) (D. N.J.)

## EMPLOYMENT

Allen v. Thorn Ams., Inc., Case No. 97-1159-CV.-W-SOW (W.D. Mo.)

Babbitt v. Albertson's Inc., No. C92-1883 WHO (N.D. Cal.)

Berquist v. Am. Family Mut. Ins. Co., No. 96CV (Wis. Cir. Ct. St. Croix County)

Borja v. Wal-Mart Stores, Inc., No.98-CV-119 (Colo. Dist. Ct. Las Animas County)

Brunson v. City of New York, No. 94 Civ. 4507 (LAP) (S.D.N.Y.)

Forbush v. J. C. Penney Co., No. 3:90-2719-X, No. 3:92-0109-X (N.D. Tex.)

Hofer v. Capitol Am. Life Ins. Co., No. 336 (Wyo. Dist. Ct. Goshen County)

Hoffman v. Sbarro, Inc., No. 982 F. Supp. 249 (S.D.N.Y.)

Khan v. Denny's Holdings, Inc., No. BC 177254 (Cal. Super. Ct. L.A. County)

Merk v. Jewel Foods, No. 85 C 7876 (N.D. Ill.)

OCAW v. Am. Home Prods., No. 92-1238 (JP) (D.P.R.)

Stender v. Lucky Stores, Inc., No. 88-1467 (N.D. Cal.)

Taylor v. O' Charley's, No. 3-94-0489 (M.D. Tenn.)

Wooten v. Dillard's Inc., No. 99-0990-CV-W-3-ECF (W.D. Mo.)

Dahl ADMINISTRATION

CASE CITES

## INSURANCE

Barnicle v. Am. Gen. Corp., No. EC 011 865 (Cal. Super. Ct. San Diego County)

Beavers v. Am. Gen. Fin., Inc., No. CV.-94-174 (Ala. Cir. Ct. Walker County)

Blanke v. Lincoln Nat'l Life Ins. Co., No. 512,048 Div. K (La. Dist. Ct. Jefferson Parrish)

Bussie v. Allmerica, No. 97-40204 (D. Mass.)

Danko v. Erie Ins. Exch., No. 298 1991 G.D. (Pa. C.P. Fayette County)

Elkins v. Equitable Life Ins. Co. of Iowa, No. 96-296-CIV.-T-17B (M.D. Fla.)

Garst v. Franklin Life Ins. Co., No. 97-C-0074-S (N.D. Ala.)

Green v. Metro. Ins., No. 969547 (Cal. Super. Ct. S.F. County)

Hearth v. First Nat'l Life Ins. Co. of Am., No. 95-818- T-21A (M.D. Fla.)

In re Lutheran Bhd. Variable Ins. Prods. Co., No. 99-MD-1309 (PAM/JGL)

In re Metro. Life Ins. Co., No. 96-179 MDL No. 1091 (W.D. Pa.)

In re Nat'l Life Ins. Co., No. 2-97-CV.-314 (D. Vt.)

Jordan v. State Farm Life Ins., No. 97 CH 11 (Ill. Cir. Ct. McLean County)

Kolsrud v. Equitable Life Ins. Co. of Iowa, No. 320838 (Ariz. Super. Ct. Pima County)

Kreidler v. W.-S. Life Assurance Co., No. 95-CV-157 (Ohio C.P. Erie County)

Lee v. USLIFE Corp., No. 1:97CV. -55-M (W.D. Ky.)

Levin v. Am. Gen. Life Ins. Co., No. 3-98-0266 (M.D. Tenn.)

Ludwig v. Gen. Am. Life Ins. Co., No. 4:97CV.18920 CDP (E.D. Mo.)

McNeil v. Am. Gen. Life & Accident Co., No. 3-99-1157 (M.D. Tenn.)

Reyes v. Country Life Ins. Co., No. 98 CH 16502 (Ill. Cir. Ct. Cook County)

Thompson v. Metro. Life Ins. Co., No. 00 Civ. 5071 (HB) Also applies to No.00 Civ., 9068, No.01-2090 & No. 01 Civ. 5579 (U.S. Dist. Ct. S.D. N.Y.)

Woodley v. Protective Life Ins. Co., No. CV. 95-005 (Ala. Cir. Ct. Fayette County)

Dahl ADMINISTRATION

## CASE CITES

### PRODUCT LIABILITY

Ahearn v. Fibreboard, No. 6:93cv.526 (E.D. Tex.)

Cox v. Shell Oil Co., No. 18,844 (Tenn. Ch. Ct. Obion County)

Garza v. Sporting Goods Props. Inc., No. SA 93-CA-1082 (W.D. Tex.)

Hart v. Central Sprinkler Corp., No. BC176727 (Cal.Super. Ct. L.A. County)

In re Louisiana-Pacific Corp. Inner-Seal Oriented Strand Bd. Trade Practices Litig., No. C96-2409 VRW (Mellett), No. C96-2468 VRW (Stewart) No. C95-3178 VRW(Aguis)

In re Rio Hair Naturalizer Prods. Liab. Litig., No. 1055 (E.D. Mich.)

Ruff v. Parex, Inc., No. 96-CV.-500-59 (E.D.N.C.)

Salah v. Consolidated Indus., Inc., No. CV 738376 (Cal. Super. Ct. Santa Clara County)

### PROPERTY

Anderson v. Cedar Grove Composting, Inc., No. 97-2-22820-4SEA (Wash. Super. Ct. King County)

Black v. Fag Bearings Corp., No. CV.396-264CC (Mo. Cir. Ct. Newton County)

Branin v. Asarco, Inc., No. C93-5132 (B) WD (W.D. Wash.)

Brighton v. Cedar Grove Composting, No. 97-2-21660-5 SEA (Wash. Super. Ct. King County)

Campbell v. Paducah & Louisville Ry., Inc., No. 93-CI-05543 (Ky. Cir. Ct. Jefferson County)

Comfort v. Kimberly-Clark Corp., No. DV. -90-616 (Ala. Cir. Ct. Shelby County)

Vicwood v. Skagit, No. 00-2-00665-6 (Wash. Super. Ct. Thurston County)

### BANKRUPTCY

In re Celotex Corp., No. 90-10016-8B1, 90-10017-8B1 (M.D. Fla.)

In re Raytech Corp., Case No. 89-00293 (Bankr. Ct. Conn.)

In re the Babcock & Wilcox Co., No. 00-0558 Bankr Case No. 00-10992 Sect: “R” (5) (U.S. Dist. Ct. E.D. La.)

In re U.S. Brass Corp., No. 94-40823S (Bankr. Ct. E.D. Tex.)

In re W.R. Grace & Co., No. 01-01139 (Bankr. Ct. Del.)

Dahl ADMINISTRATION

## CASE CITES

### SECURITIES

**Eilers Furs of Rapid City v. US West Commc'ns, Inc., No. 92-5121 (D.S.D.)**

**Finucan v. Egghead, Inc., No. C93-1268WD (W.D. Wash.)**

**Global Research Analyst Settlement, (M.D. N.Y.)**

**In re Chambers Dev. Corp. Sec. Litig., No. 982 (W.D. Pa.)**

**United States Sec. Exch. Comm'n v. HealthSouth Corp., No. CV-03-J-06515S (N.D. Ala.)**

**In re Banc of America Sec. LLC, File No. 3-12591 (Secs. Exch. Comm'n)**

**United States Sec. Eexch. Comm'n v. MBIA, No. 07Civ. 658 (LLS) (S.D.N.Y.)**

**United States Sec. Exch. Comm'n v. Fed. Nat'l Mortg. Assoc., No. 1:06-CV-00959 (RJL) (D.D.C.)**

### BELAIRE-WEST PRIVACY NOTICE MAILINGS

**Berg v. Zumiez, Inc., No. BC408410 (Cal. Super. Ct. L.A. County)**

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLISON GAY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOM'S OF MAINE, INC,<br><br>Defendant. | No. 0:14-CV-60604-KMM<br><br>CLASS ACTION |

**AFFIDAVIT OF JOHN GRUDNOWSKI IN SUPPORT OF THE SETTLEMENT NOTICE PLAN**

I, John Grudnowski, being duly sworn and deposed, say:

1. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2. I am Founder and CEO of FRWD Co. ("FRWD"), a digital marketing firm based in Minneapolis, Minnesota. My firm has been asked by Dahl Administration, LLC ("Dahl") to partner in the design and execution of the Notice Plan for the settlement in the above-captioned action (the "Settlement").

3. I have more than 18 years of experience in marketing and public relations. In the past 13 years, I have focused exclusively on digital media. In addition to founding FRWD in 2009, I also co-founded a Minneapolis-based media organization, i612, which provides educational content to the Minneapolis/St. Paul marketing community. I also

serve as an Adjunct Professor in Digital Marketing at the University of Minnesota's Carlson School of Management.

4. My work has involved designing, executing, and validating digital media advertising and communications campaigns. The technologies and tools described herein are well-accepted, leading practices in the digital advertising world and are directly transferable and applicable to the execution of an effective class action notice plan.

5. This affidavit describes advertising industry trends and practices as well as the media approach and methodology for the Notice Plan for the Settlement.

6. FRWD and Dahl constructed the Notice Plan to be consistent with, and to take advantage of, how individuals consume media and locate information today. Specifically, we are leveraging email, print and digital components including desktop web banners, mobile web banners, and social media, as described in the Affidavit of Jeffrey D. Dahl. Leveraging how today's consumer accesses media enables us to construct a more robust, action-oriented notification plan. In addition, as we constructed the Notice Plan, we focused on demographic information provided by Defendants specific to their customer base. This information enables us to better target our notice plan and reach potential Class Members. Specifically, our Notice efforts will target a nationwide audience of 11.6 million Tom's of Maine "natural" buyers within a total of 19 Million buyers of natural cosmetics, and an overall population total of 43.2 Million buyers of personal care products. These audiences were selected based on demographic information as stated above as well as through research gained from Tom's of Maine marketing staff, as well as through Gfk MRI, comScore and Google. Our notice plan will

focus on the 11.6 million Tom's of Maine natural buyers but in total, will reach a projected 43.2 million persons.

7. Between the online and email components of the Notice Plan, our tools indicate we will produce over 168 million impressions that are targeted to reach an audience with the characteristics of the Settlement Class.

## FRWD BACKGROUND

8. Over the past four years, my company has planned, managed, executed, and reported on thousands of individual digital & traditional (TV, Print, Radio, Out of Home (OOH)) executions for some of the world's largest brand advertisers and business-to-business organizations. FRWD clients have included American Express, L'Oreal, Best Buy, General Mills, Colgate, and 3M.

9. "Digital media executions" are advertising, communications, or marketing activities directed at the online audience. Digital media executions can be a single event or a more coordinated, long-term campaign, and are done using online advertising tactics such as paid search, display, video, social media, and other forms of paid media. Each of these approaches is designed to reach a defined target audience in the online spaces where people increasingly seek and obtain information. In executing this Notice Plan, FRWD will employ display tactics—specifically, placing banner advertisements on specific websites—to reach our intended audience.

10. In my past five years as CEO of FRWD, and in my previous eight years in digital media marketing, I have overseen all aspects of digital & traditional media executions, ranging from strategic and creative design, to planning, to identification of

technology partners, to integration of technology, to media buying, to optimizations of media executions. I have personally managed more than $120 Million in digital and traditional media executions. I have been hired by Fortune 500 clients to train their internal teams on digital media technology and management. I have hired and trained more than 100 employees and personally integrated third-party, industry-leading technologies such as DoubleClick DFA, comScore, Terminal One, Nielsen and others which enable greater control of reach/frequency management, audience targeting, and verification, all of which will be applied in this case to implement an effective class action Notice Plan. In addition to digital media executions, I have personally overseen advertising programs that included digital and print as well as and digital and television. In 1999 - 2000, I personally managed newspaper and Outdoor advertising placements for Northwest Airlines. This experience at all stages of a media campaign, from planning through execution and training, provides a solid foundation of experience that informs my work on this Notice Plan.

11. As part of FRWD's execution of multimedia campaigns, we have planned, designed, built, placed, and reported on thousands of individual web-based creative assets such as banner ads, websites, keyword search ads, Facebook landing pages, and other forms of content development.

12. Areas of special expertise and focus for FRWD include local (city and state level) and national advertising focused on achieving specific reach and frequency targets. We use all of the digital tactics listed above. Over the past five years, FRWD has completed more than 800 individual digital media campaigns focused on a specific locale

(geo-footprint), combined with audience targeting and very specific reach and frequency goals. We have done so for brands including Cheerios, Wheaties, Yoplait, Covergirl, Olay, Charmin, and Colgate.

## ADVERTISING TRENDS

13. In the past decade, and specifically within the past few years, consumers have significantly shifted their consumption of media from print-based consumption to online-based consumption. In response to this consumer shift in consumption, advertisers have shifted their spending from print-based to online-based advertising.

14. The major driver behind these shifts is technology and its impact on consumers' time with media each day. As reported by eMarketer,[1] U.S. adults in 2008 spent a combined 63 minutes every day reading magazines and newspapers.[2] In 2011, that number had declined to 44 minutes per day, a decline in usage of 30%. In 2015, that number has declined to 21 minutes, a decline of 109% in the last 4 years alone [3]. During that same time period from 2011 to 2015, daily time spent via digital (online & mobile) has increased increased from 232 minutes per day to 338 minutes per day, a 50% increase. Thus, the average US adult in 2015 now spends 16x more time each day consuming media & information online than reading newspapers and magazines.

---

[1] eMarketer aggregates more than 4,000 sources of digital marketing and media research and publishes objective analysis of internet market trends. For more than a decade, leading brands and agencies have relied on eMarketer as a recognized resource for data, analysis, and insights on digital marketing, media, and commerce. eMarketer clients include Google, General Motors, and Kimberly Clark. FRWD is also a client.

[2] Source: eMarketer, Dec., 2011.

[3] *Source :eMarketer, April, 2015*

**Average Time Spent per Day with Major Media by US Adults, 2011-2015**
*hrs:mins and CAGR*

| | 2011 | 2012 | 2013 | 2014 | 2015 | CAGR (2011-2015) |
|---|---|---|---|---|---|---|
| **Digital** | **3:40** | **4:20** | **4:51** | **5:15** | **5:38** | **11.4%** |
| —Desktop/laptop* | 2:33 | 2:27 | 2:19 | 2:22 | 2:22 | -1.8% |
| —Mobile (nonvoice) | 0:48 | 1:35 | 2:16 | 2:34 | 2:51 | 37.2% |
| —Other connected devices | 0:18 | 0:18 | 0:17 | 0:19 | 0:25 | 7.8% |
| **TV**** | **4:34** | **4:38** | **4:31** | **4:22** | **4:15** | **-1.8%** |
| **Radio**** | **1:34** | **1:32** | **1:30** | **1:28** | **1:27** | **-2.0%** |
| **Print**** | **0:44** | **0:38** | **0:32** | **0:26** | **0:21** | **-17.0%** |
| —Magazines | 0:18 | 0:16 | 0:14 | 0:12 | 0:10 | -13.5% |
| —Newspapers | 0:26 | 0:22 | 0:18 | 0:14 | 0:11 | -19.8% |
| **Other**** | **0:39** | **0:38** | **0:31** | **0:26** | **0:24** | **-11.7%** |
| **Total** | **11:11** | **11:46** | **11:55** | **11:57** | **12:04** | **1.9%** |

*Note: ages 18+; time spent with each medium includes all time spent with that medium, regardless of multitasking; for example, 1 hour of multitasking on desktop/laptop while watching TV is counted as 1 hour for TV and 1 hour for desktop/laptop; *includes all internet activities on desktop and laptop computers; **excludes digital*
*Source: eMarketer, April 2015*

188127 www.eMarketer.com

15. The data on the total percentage of the average U.S. adult's interaction with media are similar. Time online (mobile + traditional Internet) in 2010 made up 33.3% of the average person's total media consumption each day. In 2015 time online is now 44.6%. In 2010, time with newspapers and magazines combined for 8.2% of the average person's consumption, down from 10.8% in 2008[4]. In 2015 time spent with newspapers and magazines is at 1.7%.

16. This shift in consumer consumption of media has led to widespread adoption of online advertising and a concurrent decline in reliance on print media.

[4] *Id.*

Industry-wide, this impact is evident from another eMarketer study. In the year 2000, advertisers spent a collective $72.68 billion on magazine and newspaper advertising.[5] In 2005, this number increased to $74.14 billion. It has since been on a significant and steady decline, totaling $51.54 billion in 2009 and projecting to $31.6 billion in 2015.[6]

17. Unsurprisingly, advertisers have shifted their expenditures to meet consumers where they are: online. In 2000, advertisers spent $6.0 billion online. In 2005, that number increased to $10.0 billion. In 2009, the amount dedicated to online advertising reached $20.3 billion.[7] In 2012, the amount dedicated to online advertising reached $36.8 billion and is projected to reach $52.5 billion in 2015.[8]

**US Total Media Ad Spending, by Media, 2011-2017**
*billions*

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|
| **TV** | **$60.7** | **$64.5** | **$66.4** | **$68.5** | **$70.0** | **$73.1** | **$75.3** |
| **Digital** | **$32.0** | **$36.8** | **$42.3** | **$47.6** | **$52.5** | **$57.3** | **$61.4** |
| —Mobile | $1.6 | $4.4 | $8.5 | $13.1 | $18.6 | $24.7 | $31.1 |
| **Print** | **$35.8** | **$34.1** | **$32.9** | **$32.2** | **$31.6** | **$31.3** | **$31.2** |
| —Newspapers* | $20.7 | $18.9 | $17.8 | $17.1 | $16.6 | $16.2 | $16.1 |
| —Magazines* | $15.2 | $15.2 | $15.1 | $15.1 | $15.1 | $15.1 | $15.2 |
| **Radio**** | **$15.2** | **$15.4** | **$15.6** | **$15.9** | **$16.0** | **$16.0** | **$16.1** |
| **Outdoor** | **$6.4** | **$6.7** | **$7.0** | **$7.2** | **$7.4** | **$7.6** | **$7.8** |
| **Directories*** | **$8.2** | **$7.5** | **$6.9** | **$6.4** | **$5.9** | **$5.5** | **$5.3** |
| **Total** | **$158.3** | **$165.0** | **$171.0** | **$177.8** | **$183.4** | **$190.9** | **$197.0** |

*Note: eMarketer benchmarks its US newspaper ad spending projections against the NAA, for which the last full year measured was 2012, and its US outdoor ad spending projections against the OAAA, for which the last full year measured was 2011; numbers may not add up to total due to rounding; *print only; **excludes off-air radio & digital*
*Source: eMarketer, Aug 2013*

161679 www.eMarketer.com

[5] ZenithOptimedia, Apr. 7, 2010; provided to eMarketer by StarcomMediaVest Group, June 1, 2010.
[6] eMarketer April, 2015
[7] Internet Advertising Bureau Revenue Report, http://www.iab.net/AdRevenueReport.
[8] eMarketer April, 2015

18. I have personally participated in this evolution from print to digital advertising and understand advantages that digital media tools offer. It is my opinion that using digital advertising, supplemented with selected print advertising, in this Notice Plan offers an effective route to reach Settlement Class Members and inform them about the Settlement.

**DEFINITION OF TARGET: AUDIENCE TARGETING AND VERIFICATION**

19. Online advertising affords multiple options to reach and verify that the Settlement Class Members were exposed to the Notice. In the course of targeting, FRWD worked with Dahl to balance targeting and efficiency in reaching Settlement Class Members most effectively.

20. We have the ability to target individuals according to different demographic and psychographic (lifestyle and interest) characteristics. This is done by focusing our notification advertising on specific websites (domains) which index high against our core target. As indicated in paragraph 6 above, this notification plan is focused primarily on a nationwide audience of Tom's natural product buyers. Leveraging industry leading digital tools such as comScore and Google, FRWD has selected hundreds of websites on which our audience visits at a rate of 50% greater than the typical Internet population. These custom lists are a best practice in consumer advertising and will further strengthen our ability to provide notice to Settlement Class Members in this plan. In this case, control of the websites that show the Notice, and where the Notice banner will appear on those websites, provides a higher likelihood of successfully exposing Settlement Class Members to the Notice.

21. A full list of specific website domains on our list of potential targets is included as Exhibit 4 to the Affidavit of Jeffrey D. Dahl.

22. In addition to selecting specific websites, we are leveraging Facebook Interest Targeting[9] which provides the opportunity to reach Settlement Class Members based on information they have added to their Facebook timelines. This considers information such as the Facebook Pages they like, apps they use, and other information they have added to their timelines.

23. In addition to web domains & Facebook, we are leveraging word of mouth channels such as Twitter to build greater distribution of our notice to potential class members.

24. Lastly, we are leveraging content syndication tactics to further promote and drive traffic to our notice website. This targeting enables FRWD to place out notification onto relevant online articles which fit our target's online media consumption.

**CONNECTION TO THE NOTICE WEBSITE**

25. All digital communication in the form of web-based banners, keyword search and content syndication will be connected to our notice website. A large majority of social media (Twitter & Facebook) communication will be connected to our notice website with a small percentage driving traffic to a dedicated notification facebook page to increase word of mouth. Both tactics will provide the ability to connect Settlement Class Members directly to online communication providing greater detail on this Settlement Notice. Specifically, our banner advertisements will list the Settlement

[9] Facebook, https://www.facebook.com/help/131834970288134/.

website, and users who click on our banner advertisements will be routed directly to the Settlement website, where they will find information in greater detail. This combination of reaching our audience and connecting to greater detail via the Settlement website and Facebook page provides us with a comprehensive approach to reaching Settlement Class Members.

26. In addition, FRWD will leverage Google Analytics[10] ("GA") on the Settlement website. By using GA, FRWD can showcase reporting on the engagement of the Settlement Class Members on our Settlement website. Specifically, GA will measure the most highly trafficked content and the total number of Settlement Class Members performing specific actions, such as the number of visitors, the number of pages viewed, the time spent, and the number of documents downloaded by type.

**CONCLUSION**

27. Based on my experience in designing and executing digital outreach and marketing plans, as well as industry best practices, it is my opinion that the digital media component of the Notice Plan will effectively reach Settlement Class Members.

[10] Google Analytics is a service offered by Google that generates detailed statistics about the visitors to a website. GA can track visitors from all referring websites, including search engines, display advertising, pay-per-click networks, email marketing, and other traffic sources.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge. Executed this 23 day of July, 2015 in Minneapolis, Minnesota.

John Grudnowski
CEO
FRWD Co.

Sworn to and Subscribed before me
this 23rd day of July, 2015.

Notary Public

JOANNA ARTIG
Notary Public
State of Minnesota
My Commission Expires
January 31, 2019

**EXHIBIT 3**

**Beauty / Fashion Sites:**

11andchic.com
1920s-fashion-and-music.com
activebeat.com
advancedhairstyle.com
africanaturalistas.com
alexccampbell.com
allthingsfashiondc.com
allure.com
allwomenstalk.com
arusuvai.com
baklol.com
beautifulandhair.com
beauty-and-the-bath.com
beautyandthefeastblog.com
beautyandtips.com
beautyfool.com
beautyhype.com
beautyideaz.com
beautymarkaz.com
beautynewsnyc.com
beautyprofessor.net
beautytask.com
beautytips4her.com
beautyworldnews.com
beauty-zone.org
becomegorgeous.com
bellapetite.com
bellazon.com
bellazon.org
besthairstyles2013.net
bestofhairstyles.com
blackgirllonghair.com
blackhair101.com
blackhairinformation.com
blackhairplanet.com
black-hair-report.com
blackhairstylesideas.com
blackhairstylesweb.com
blackstylists.com
bonjourhealth.com
boomerinas.com
bosschicks.com
browngirlshair.com
celebritystyleguide.com
chicadore.com
chic-dresses.com
chictopia.com
cityvoter.com
clutchmagonline.com
coderedhat.com
coilyqueensrock.com
collegefashion.net
cosmopolitan.com
cosmotolog.com
coupay.com
covermagazineme.com
creativefashionglee.com
crowdignite.com
crushbeauty.com
curlhairstyles.com
curlstylist.com
curlynikki.com
dappered.com
darlingstuff.org
denimblog.com
designersnexus.com
designscene.net
direct-hairstyles.com
dominicansalons.com
dressdownstyle.com
dulcecandy.com
economyofstyle.net
ecouterre.com
elle.com
entertainista.com
esquire.com
essence.com
evelinasfashioncafe.com
fashforfashion.com
fashionbeans.com
fashionbombdaily.com
fashionbyhe.com
fashioncentral.pk
fashion-era.com
fashionetc.com
fashiongonerogue.com
fashionihub.com
fashionindustrynetwork.com
fashionisers.com
fashionising.com
fashionmagazine247.com
fashionmodeldirectory.com
fashionnstyle.com
fashionspictures.com
fashionstylemag.com
fashiontimes.com
fashiontrendseeker.com
fashiontrendsetter.com
fashiontrendspk.com
fashionweekdaily.com
fashionweekdates.com
fashionweekonline.com
feelgoodstyle.com
femalenetwork.com
f-fashion-gallery.com
flare.com
frankieheartsfashion.com
futurefashionstyle.com
gabifresh.com
get2style.com
getbeautytoday.com
girlishh.com
girlscosmo.com
girlshue.com
girlydohairstyles.com
glamgalz.com
glamour.com
globalbeauties.com
gofugyourself.com
grandascent.com
hairandsalons.com
haircolorcode.com
hairfashion.biz
hairfinder.com
haironfilm.net
hairsellon.com
hairsnip.com
hair-styles.org

hairstyles2014.com
hairstylesblackwomen.net
hairstylese.com
hairstylesformediumlengthhair.com
hairstylesinsight.com
hairstyles-magazine.com
hairstylestars.com
hairstylesweekly.com
hairstyleswomenover50.com
hairstyletwist.com
hair-sublime.com
harpersbazaar.com
hautetalk.com
healthfashionbeauty.com
highfashionmagazine.com
instyle.com
itshairstyles.com
jurgita.com
kandeej.com
kibibihair.com
kisforkinky.com
kuriositas.com
kvue.com
lacarmina.com
ladyzona.com
lafashionweek.net
latest-hairstyles.com
legendaryhairstyles.com
lifestyle9.com
lifewithemilyblog.com
likealady.net
longhaircareforum.com
longhaircommunity.com
longhairstyleshowto.com
long-healthy-hair-advisor.com
look-fabulous.com
louloumagazine.com
lovemaegan.com
lustyfashion.com
magtheweekly.com
makeovr.com
makeupalley.com
makeupandbeauty.com
marieclaire.com
measuredbytheheart.com
mediumhaircutsforwomen.com
milanfashionweeklive.com
moknowshair.com
mycoloures.com
myfashionchronicles.com
myhaircuts.com
mynaturalblackhair.com
naptural85.com
napturallycurly.com
naturalhairrules.blogspot.com
naturalhairrules.com
naturallycurly.com
naturallymemedia.com
nenonatural.com
newcool-hairstyles.net
newyorker.com
newyorkfashionweeklive.com
notesstyle.com
nubry.com
offbeathome.com
onobello.com
ourvanity.com
parisfashionweeklive.com
peopleschoice.com
peoplestylewatch.com
pinksofoxy.com
pophaircuts.com
princesshairstyles.com
puricute.com
realstylenetwork.com
redbookmag.com
refinedstylefashion.com
salonapprentice.com
salongamez.com
salongeek.com
sasa.com
secretsofthefed.com
shape.com
shelookbook.com
shinestruck.com
shirleyswardrobe.com
shopyourshape.com
short-haircut.com
shorthairstylesover50.com
signature9.com
simplylulustyle.com
sixtyandme.com
skinnyhipster.com
smallhomebigstart.com
startingaclothingline.com
strawberricurls.com
style.com
stylebakery.com
stylebistro.com
styleblazer.com
stylechicago.com
stylechunk.com
stylecraze.com
stylefactor.com
stylefrizz.com
styleguru.com
style-hair-magazine.com
stylehasnosize.com
stylehive.com
styleite.com
stylelikeu.com
stylesn.com
stylesnew.com
styles-new.com
styleyourlifeblog.com
stylingup.com
taaz.com
tdn-net.com
thebeautythesis.com
thebeautytipsdaily.com
thebestfashionblog.com
thebudgetfashionista.com
thechicfashionista.com
thefashionisto.com
thefashionpolice.net
thefashionspot.com
thegoodhairblog.com
thehairstyler.com
thenaturalfashionista.com

thenaturalhavenbloom.com
thenewlighterlife.com
thesimplyluxuriouslife.com
thesmallthingsblog.com
the-style-files.com
thirstyroots.com
tokyofaces.com
tokyofashion.com
tomandlorenzo.com
trendfashion2013.com
trendhunter.com
trendland.com
trendseve.com
trendy4.com
trendyclass.com
tressugar.com
tydknow.com
typef.com
ukhairdressers.com
universalsalons.com
untrainedhairmom.com
urbansalonfinder.com
vajont.org
valetmag.com
vanityfair.com
what-to-wear-today.com
wholenewmom.com
wishtofind.com
wmagazine.com
woman1st.com
womansday.com
women-hub.com
womensbeautylife.com
womenstyle.pk
worldfactualy.com
worldsbesthaircare.com
yourhairbeauty.com
your-hairstyles.com
yournaturalhair.com
zhairstyles.com

**Food / Mom Focused**

101cookbooks.com
247moms.com
5dollardinners.com
9jafoodie.com
a-crock-cook.com
addapinch.com
afamilyfeast.com
afewshortcuts.com
againstallgrain.com
alanskitchen.com
aliciasrecipes.com
allcookingandrecipes.com
alldayidreamaboutfood.com
allmenus.com
allrecipes.com
allrecipestried.com
amandascookin.com
amandathevirtuouswife.com
amazingrecipez.com
amazingribs.com
ambitiouskitchen.com
ameessavorydish.com
anniesrecipes.com
aroundmyfamilytable.com
backtoherroots.com
bbq-brethren.com
beautyandbedlam.com
befoodsmart.com
bestfondue.com
betterrecipes.com
bhg.com
biggirlssmallkitchen.com
bigredkitchen.com
blessthismessplease.com
bonappetit.com
budgetbytes.com
budgetgourmetmom.com
budgetsavvydiva.com
bunsinmyoven.com
cafemom.com
cdkitchen.com
celebrating-family.com
chaosinthekitchen.com
cheapcooking.com
cheftalk.com
chow.com
christinacooks.com
christinesrecipes.com
closetcooking.com
collegerecipes.com
cookbook-recipes.org
cookeatdelicious.com
cookeatshare.com
cookfoodeat.com
cookingcache.com
cookingchanneltv.com
cookingclub.com
cookinglight.com
cookingrecipecentral.com
cookpad.com
cooks.com
cooksinfo.com
cooksrecipes.com
cookyourfood.org
coolmompicks.com
crazyfood.net
creativekidsnacks.com
crockingirls.com
crockpotladies.com
crystalandcomp.com
culinaryadventuresinthekitchen.com
cupcakerecipes.com
cutefoodforkids.com
damndelicious.net
daydreamkitchen.com
dedemed.com
deliaonline.com
delish.com
delishmish.com
detoxinista.com
deviledeggs.com
dineanddish.net
dinerestaurantcom.com
dinnersdishesanddesserts.com
discusscooking.com

dishtip.com
divascancook.com
diypinterest.com
dwellonjoy.com
easy-cookbook-recipes.com
easy-french-food.com
eatathomecooks.com
eatbetteramerica.com
eatbydate.com
eatdrinkbetter.com
eatdrinkeat.com
eat-drink-love.com
eater.com
eatgood4life.com
eating-made-easy.com
eatingwell.com
eatliverun.com
eatsalem.com
eat-yourself-skinny.com
eatyourworld.com
ellenskitchen.com
Emeril.com
endlessappetizers.com
epicmealtime.com
epicurious.com
fabulousfoods.com
familycookbookproject.com
familycorner.com
familyfreshmeals.com
familyoven.com
fatfreevegan.com
fauziaskitchenfun.com
feastie.com
finecooking.com
finedinings.com
fingerlickinrecipes.com
food-4tots.com
foodandwine.com
foodbanter.com
Foodbuzz.com
foodbycountry.com
foodchannel.com
food.com
foodepix.com
foodgawker.com
foodieportal.com
foodista.com
foodloveswriting.com
foodlve.com
foodndrecipe.com
foodnetwork.com
foodnetworkfans.com
foodnetworkgossip.com
foodonthetable.com
foodpantries.org
foodpicstime.com
foodrandom.com
foodrepublic.com
foodsubs.com
foodterms.com
foodvannet.com
foodvee.com
fortheloveofcooking.net
fourmarrsonevenus.com
freefood.org
funandfoodcafe.com
gastronomyblog.com
gimmesomeoven.com
girlmakesfood.com
globalgourmet.com
goodrecipesonline.com
GOURMANDIA.COM
gourmetsleuth.com
greatpartyrecipes.com
great-salsa.com
grocerybudget101.com
grocerysmarts.com
grouprecipes.com
gwens-nest.com
halfhourmeals.com
healthierhabits.net
healthy-delicious.com
healthyfoodhouse.com
heandsheeatclean.com
heathersdish.com
helpwithcooking.com
hillbillyhousewife.com
holycowvegan.net
homemadesimple.com
howdoesshe.com
howsweeteats.com
hungryhealthyhappy.com
hungrymonster.com
ice-cream-recipes.com
ichef.com
Ifood.tv
inmamaskitchen.com
innatthecrossroads.com
iowagirleats.com
jamieoliver.com
jdaniel4smom.com
jeanetteshealthyliving.com
justapinch.com
justfruitrecipes.com
justgetoffyourbuttandbake.com
justherfood.com
justvegetablerecipes.com
katheats.com
khanapakana.com
kidskubby.com
kidsstuffworld.com
kitchendaily.com
kitchenmeetsgirl.com
kitchentreaty.com
kraftrecipes.com
kuali.com
laurainthekitchen.com
lifesambrosia.com
lilluna.com
lisasdinnertimedish.com
livemoredaily.com
living-foods.com
lorisculinarycreations.com
lovefoodies.com
lovingmynest.com
lynnskitchenadventures.com
makedinnereasy.com
mamaslebanesekitchen.com
manjulaskitchen.com

mealplanning101.com
mealplanningmagic.com
mealsforyou.com
mealtrain.com
melskitchencafe.com
midwestliving.com
minimalistbaker.com
modernmom.com
modernparentsmessykids.com
momsconfession.com
monthlymealplanner.com
mostlyhomemademom.com
MRFOOD.COM
myfridgefood.com
myhealthydish.com
myhoneysplace.com
myrecipemagic.com
myrecipes.com
mywebgrocer.com
nancyskitchen.com
navywifecook.com
nomnompaleo.com
noobcook.com
ochef.com
onceuponachef.com
pachakam.com
panlasangpinoy.com
partypinching.com
party-recipes-and-ideas.com
petitchef.com
plainchicken.com
pocketchangegourmet.com
portuguesediner.com
preventionrd.com
quick-and-easy-dinner.com
rachaelraymag.com
rachaelrayshow.com
rawfoodsupport.com
realcajunrecipes.com
realmomkitchen.com
realsimple.com
recipage.com
recipe4all.com
recipe4living.com
recipebest.com
recipebyphoto.com
recipechart.com
recipecircus.com
recipe.com
recipegirl.com
recipehub.com
recipekey.com
recipelink.com
reciperecommendations.com
reciperehab.com
recipes4cakes.com
RECIPESECRETS.NET
recipesgawker.com
recipesource.com
recipetips.com
RELISH.COM
ricardocuisine.com
roadfood.com
runningtothekitchen.com
saharrestaurant.com
sandralee.com
sanjeevkapoor.com
SAVEUR.COM
savorysweetlife.com
secondchancetodream.com
semihomemade.com
seriouseats.com
shrinkingkitchen.com
simplyrecipes.com
sixsistersstuff.com
skinnymom.com
skinnyms.com
skinnytaste.com
slenderkitchen.com
slowandsimple.com
smilecooking.com
snack-girl.com
sortedfood.com
southernliving.com
spendwithpennies.com
staceysnacksonline.com
stacymakescents.com
supercook.com
superhealthykids.com
surefoodsliving.com
susieqtpiescafe.com
sweetiepiess.com
tablefeast.com
tammysrecipes.com
tasteofhome.com
tastespotting.com
tastingpoland.com
tastytreat.org
texascooking.com
thatsmyhome.com
theendlessmeal.com
thefreshloaf.com
thegraciouspantry.com
thehungrymouse.com
the-italian-food.com
THEKITCHN.COM
themarathonmom.com
themediterraneankitchen.org
thenibble.com
therecipecritic.com
theslowroasteditalian.com
theworldwidegourmet.com
thrivinghomeblog.com
titlisbusykitchen.com
topdinnerrecipes.net
topinspired.com
topsecretrecipes.com
traditional-foods.com
twopeasandtheirpod.com
vahrehvah.com
veryculinary.com
vietnamese-recipes.com
wearychef.com
webekitchen.com
weekly-dinner-ideas.com
wellcooked.net
whats4eats.com
whatscookingamerica.com
whatsfordinner.net

womenworldblog.com
yesiwantcake.com
yummly.com
yummyhealthyeasy.com
yumsugar.com

**comScore 2000**

1-800-FLOWERS.COM
9NEWS.COM
AAA.COM
AARP.ORG
ABC.COM
ABC7CHICAGO.COM
ABCNEWS.COM
ABOUT.COM
ACADEMY.COM
ACCESSHOLLYWOOD.COM
ACCUWEATHER.COM
ACER.COM
ACESHOWBIZ.COM
ACROBAT.COM
ACTIVE.COM
ACTSTUDENT.ORG
ADDICTINGGAMES.COM
ADDICTIVETIPS.COM
ADSUPPLY.COM
ADULTSWIM.COM
AE.COM
AETV.COM
AGAME.COM
AIM.COM
AJC.COM
AL.COM
ALIBABA.COM
ALLEGIANTAIR.COM
ALLMENUS.COM
ALLMUSIC.COM
ALLPOSTERS.COM
ALLRECIPES.COM
ALLVOICES.COM
ALOT.COM
ALTERNET.ORG
ALWAYSDOWNLOADS.COM
AMAZON.CO.UK
AMAZON.COM
AMCTHEATRES.COM
AMCTV.COM
AMD.COM
AMERICANFAMILY.COM
AMERICANGREETINGS.COM
AMERICANIDOL.COM
AMERICANLISTED.COM
AMERICANPROFILE.COM
AMERICANTOWNS.COM
ANCESTRY.COM
ANDERSONCOOPER.COM
ANDROIDCENTRAL.COM
ANDROIDFORUMS.COM
ANGIESLIST.COM
ANGRYBIRDS.COM
ANNUALCREDITREPORT.COM
ANSWERBAG.COM
ANSWERS.COM
AOL.COM
AOLANSWERS.COM
AP.ORG
APARTMENTFINDER.COM
APARTMENTGUIDE.COM
APARTMENTHOMELIVING.COM
APARTMENTRATINGS.COM
APARTMENTS.COM
APPLES4THETEACHER.COM
AQ.COM
ARCADEWEB.COM
ARCHIVE.ORG
ARCHIVES.COM
ARCOT.COM
AREACONNECT.COM
ARMORGAMES.COM
ARMY.MIL
ARSTECHNICA.COM
ART.COM
ARTICLESBASE.COM
ASK.CO.UK
ASK.COM
ASKMEFAST.COM
ASKMEHELPDESK.COM
ASKMEN.COM
ASOS.COM
ASSOCIATEDCONTENT.COM
ASUS.COM
ATT.COM
ATT.NET
ATTRAKT.COM
AUDIBLE.COM
AUTHORIZE.NET
AUTO-PRICE-FINDER.COM
AUTOANYTHING.COM
AUTOBLOG.COM
AUTODESK.COM
AUTOPARTSWAREHOUSE.COM
AUTOTRADER.COM
AUTOZONE.COM
AVAST.COM
AVCLUB.COM
AVERY.COM
AVG.COM
AVIS.COM
AVON.COM
AVS4YOU.COM
AVVO.COM
AZCENTRAL.COM
AZLYRICS.COM
BABBLE.COM
BABIESRUS.COM
BABYCENTER.COM
BABYLON.COM
BACKCOUNTRY.COM
BACKPAGE.COM
BADOO.COM
BAIDU.COM
BALTIMORESUN.COM
BANANAREPUBLIC.COM
BANDCAMP.COM
BANKRATE.COM
BARBIE.COM
BARNESANDNOBLE.COM
BARRONS.COM
BARSTOOLSPORTS.COM

BASEBALL-REFERENCE.COM
BASSPRO.COM
BATHANDBODYWORKS.COM
BBB.ORG
BBC.CO.UK
BBT.COM
BEACHBODY.COM
BEAUTYOFTHEWEB.COM
BECOME.COM
BEDBATHANDBEYOND.COM
BEEMP3.COM
BEESQ.NET
BEHANCE.NET
BELK.COM
BERRIES.COM
BESO.COM
BEST-DEAL.COM
BESTBUY.COM
BESTWESTERN.COM
BET.COM
BETTYCROCKER.COM
BHG.COM
BHPHOTOVIDEO.COM
BIBLE.CC
BIBLEGATEWAY.COM
BIGCARTEL.COM
BIGFISHGAMES.COM
BIGLOTS.COM
BILLBOARD.COM
BILLMATRIX.COM
BILLMELATER.COM
BING.COM
BIOGRAPHY.COM
BITBERRYUPDATES.COM
BITRHYMES.COM
BITSHARE.COM
BITSNOOP.COM
BITTORRENT.COM
BIZJOURNALS.COM
BIZRATE.COM
BJS.COM
BKSTR.COM
BLACKBERRY.COM
BLACKBOARD.COM
BLACKPLANET.COM
BLASTRO.COM
BLEACHERREPORT.COM
BLEKKO.COM
BLINKX.COM
BLISS.COM
BLIZZARD.COM
BLOCKBUSTER.COM
BLOCKSHOPPER.COM
BLOGGER.COM
BLOGS.COM
BLOGSPOT.CA
BLOGSPOT.CO.UK
BLOGSPOT.IN
BLOGTALKRADIO.COM
BLOOMBERG.COM
BLOOMINGDALES.COM
BLS.GOV
BLUEHOST.COM
BLUEMOUNTAIN.COM
BLUESHELLGAMES.COM
BOARDREADER.COM
BOATTRADER.COM
BODYBUILDING.COM
BOINGBOING.NET
BOOKING.COM
BOOKINGBUDDY.COM
BOOKIT.COM
BOOKRAGS.COM
BOOSTMOBILE.COM
BORED.COM
BOSSIP.COM
BOSTON.COM
BOSTONGLOBE.COM
BOSTONHERALD.COM
BOX.COM
BOX10.COM
BOXOFFICEMOJO.COM
BRADFORDEXCHANGE.COM
BRADSDEALS.COM
BRAINYQUOTE.COM
BRASSRING.COM
BRAVOTV.COM
BREAK.COM
BREITBART.COM
BRIGHT.COM
BRIGHTHUB.COM
BRITANNICA.COM
BROTHERSOFT.COM
BUDGET.COM
BUFFALO-GGN.NET
BULBAGARDEN.NET
BUSINESSINSIDER.COM
BUSINESSWEEK.COM
BUSTEDCOVERAGE.COM
BUY.COM
BUYATOYOTA.COM
BUYCHEAPR.COM
BUZZFEED.COM
BUZZLE.COM
BUZZYA.COM
BYINTER.NET
CA.GOV
CABELAS.COM
CAFEMOM.COM
CAFEPRESS.COM
CALIBEX.COM
CALLOFDUTY.COM
CALOTTERY.COM
CAMPUSCORNER.COM
CAMPUSEXPLORER.COM
CAPITALONE.COM
CARANDDRIVER.COM
CARDOMAIN.COM
CARE.COM
CARE2.COM
CAREERBUILDER.COM
CARFAX.COM
CARGURUS.COM
CARIBBEANNEWSNOW.COM
CARID.COM
CARING.COM
CARINGBRIDGE.ORG
CARMAX.COM
CARNIVAL.COM

CARS.COM
CARSDIRECT.COM
CARSFORSALE.COM
CARTOONNETWORK.COM
CARTOWN.COM
CBC.CA
CBS.COM
CBSLOCAL.COM
CBSNEWS.COM
CBSSPORTS.COM
CCBILL.COM
CDC.GOV
CDUNIVERSE.COM
CELEBRITY-GOSSIP.NET
CELEBSPIN.COM
CELEBUZZ.COM
CENSUS.GOV
CENTURY21.COM
CENTURYLINK.COM
CENTURYLINK.NET
CHACHA.COM
CHANGE.ORG
CHARLOTTEOBSERVER.COM
CHARLOTTERUSSE.COM
CHARTER.COM
CHARTER.NET
CHASE.COM
CHATROULETTE.COM
CHEAPFLIGHTS.COM
CHEAPOAIR.COM
CHEAPTICKETS.COM
CHEATCC.COM
CHEEZBURGER.COM
CHEGG.COM
CHEVROLET.COM
CHICAGOTRIBUNE.COM
CHILDRENSPLACE.COM
CHINAFLIX.COM
CHOICEHOTELS.COM
CHOW.COM
CHRISTIANBOOK.COM
CHRISTIANPOST.COM
CHRON.COM
CIGNA.COM
CINEMABLEND.COM
CINEMARK.COM
CIRCLEOFMOMS.COM
CISCO.COM
CITI.COM
CITICARDS.COM
CITIZENSBANK.COM
CITRIXONLINE.COM
CITY-DATA.COM
CITYSEARCH.COM
CLARIDADPUERTORICO.COM
CLASSESUSA.COM
CLASSIFIEDADS.COM
CLASSMATES.COM
CLEVELAND.COM
CLIFFSNOTES.COM
CLIPARTOF.COM
CLUBPENGUIN.COM
CMT.COM
CNBC.COM
CNET.COM
CNETTV.COM
CNN.COM
CNNMONEY.COM
CNSNEWS.COM
COACH.COM
COLDWATERCREEK.COM
COLDWELLBANKER.COM
COLLEGEBOARD.COM
COLLEGECONFIDENTIAL.COM
COLLEGEHUMOR.COM
COLLIDER.COM
COMCAST.COM
COMCAST.NET
COMEDYCENTRAL.COM
COMENITY.NET
COMICBOOKMOVIE.COM
COMICVINE.COM
COMPLEX.COM
COMPUTERWORLD.COM
COMPUTING.NET
CONDUIT.COM
CONSTANTCONTACT.COM
CONSUMERAUTOSOURCE.COM
CONSUMERREPORTS.ORG
CONSUMERSEARCH.COM
CONTACTMUSIC.COM
CONTENKO.COM
CONVERGENTCARE.COM
CONVIO.COM
COOKINGLIGHT.COM
COOKS.COM
COOLMATH-GAMES.COM
COOLMATH.COM
COOLMATH4KIDS.COM
COOLROM.COM
COREL.COM
CORNELL.EDU
CORPORATIONWIKI.COM
CORTERA.COM
COSMOPOLITAN.COM
COSTCO.COM
COUPONALERT.COM
COUPONS.COM
COWBOYLYRICS.COM
COX.COM
COX.NET
CRACKED.COM
CRACKLE.COM
CRAIGSLIST.ORG
CRATEANDBARREL.COM
CRAVEONLINE.COM
CREDITKARMA.COM
CREDITONEBANK.COM
CREDITREPORT.COM
CRUNCHYROLL.COM
CRUTCHFIELD.COM
CSMONITOR.COM
CUNY.EDU
CUSTHELP.COM
CUSTOMINK.COM
CVS.COM
CWTV.COM
CYCLETRADER.COM
DAILYCALLER.COM

DAILYFINANCE.COM
DAILYGLOW.COM
DAILYKOS.COM
DAILYMAIL.CO.UK
DAILYMOTION.COM
DAILYRX.COM
DALLASNEWS.COM
DAVESGARDEN.COM
DAVIDSBRIDAL.COM
DEADLINE.COM
DEADSPIN.COM
DEALTIME.COM
DEGREELINK.NET
DELISH.COM
DELL.COM
DELTA.COM
DENVERPOST.COM
DEPOSITFILES.COM
DETNEWS.COM
DEVRY.EDU
DEXKNOWS.COM
DHGATE.COM
DICKSSPORTINGGOODS.COM
DICTIONARY.COM
DIGG.COM
DIGITALTRENDS.COM
DILLARDS.COM
DIRECTORSLIVE.COM
DIRECTV.COM
DISCOVERBING.COM
DISCOVERCARD.COM
DISCOVERMAGAZINE.COM
DISCOVERY.COM
DISCOVERYEDUCATION.COM
DISH.COM
DIVINECAROLINE.COM
DIYFASHION.COM
DIYNETWORK.COM
DMV.ORG
DOCSTOC.COM
DOCTOROZ.COM
DOGBREEDINFO.COM
DOITYOURSELF.COM
DOMAINTOOLS.COM
DOMINOS.COM
DRAGONETERNITY.COM
DREAMJOBBER.COM
DREAMSTIME.COM
DRUDGEREPORT.COM
DRUGSTORE.COM
DSWSHOES.COM
DUMMIES.COM
DVDVIDEOSOFT.COM
E-REWARDS.COM
EA.COM
EARTHLINK.NET
EASTBAY.COM
EASYBIB.COM
EATINGWELL.COM
EBAUMSWORLD.COM
EBAY.CO.UK
EBAY.COM
EBAYCLASSIFIEDS.COM
EBAYSTORES.COM
ECOLLEGE.COM
ECONOMIST.COM
ECRATER.COM
EDIBLEARRANGEMENTS.COM
EDLINE.NET
EDMODO.COM
EDMUNDS.COM
EDUCATION-PORTAL.COM
EDUCATION.COM
EDUCATIONASSISTANCE.ORG
EDUCATIONCONNECTION.COM
EGOTASTIC.COM
EHARMONY.COM
EHEALTHFORUM.COM
EHOW.COM
ELEXPRESSO.COM
ELLE.COM
ELNUEVODIA.COM
ELNUEVODIA.COM
ELYRICS.NET
EMEDICINEHEALTH.COM
EMEDTV.COM
EMPOWHER.COM
ENCYCLOPEDIA.COM
ENGADGET.COM
ENOTES.COM
ENTERPRISE.COM
ENTREPRENEUR.COM
EONLINE.COM
EPA.GOV
EPICURIOUS.COM
EPINIONS.COM
EPRIZE.NET
EQUIFAX.COM
ESPN.COM
ESPNRADIO.COM
ESPNSOCCERNET.COM
ESQUIRE.COM
ESSENCE.COM
ESSORTMENT.COM
ETEAMZ.COM
ETONLINE.COM
ETRADE.COM
ETSY.COM
EVENTBRITE.COM
EVENTFUL.COM
EVENUE.NET
EVERYDAYHEALTH.COM
EVITE.COM
EW.COM
EXAMINER.COM
EXPEDIA.COM
EXPERIAN.COM
EXPERIENCEPROJECT.COM
EXPOSAY.COM
EXPRESS.COM
EZINEARTICLES.COM
FAB.COM
FACEBOOK.COM
FAILBLOG.ORG
FAMILY.COM
FAMILYBUILDER.COM
FAMOUSFOOTWEAR.COM
FANDANGO.COM
FANFICTION.NET

FANNATION.COM
FANPOP.COM
FANTAGE.COM
FAQS.ORG
FARK.COM
FARMVILLE.COM
FASTCOMPANY.COM
FATWALLET.COM
FAVIM.COM
FC2.COM
FEDEX.COM
FIDELITY.COM
FILE.ORG
FILEBOX.COM
FILECROP.COM
FILEFACTORY.COM
FILEHIPPO.COM
FILESERVE.COM
FILESONIC.COM
FILESTUBE.COM
FILMANNEX.COM
FINANCIAL-NET.COM
FINDARTICLES.COM
FINDLAW.COM
FINDTHEBEST.COM
FINDTHERIGHTJOB.COM
FINECOMB.COM
FINGERHUT.COM
FINISHLINE.COM
FIRESTONECOMPLETEAUTOCARE.COM
FIRSTROWSPORTS.EU
FITNESSMAGAZINE.COM
FITSUGAR.COM
FIXYA.COM
FLALOTTERY.COM
FLICKR.COM
FLICKRIVER.COM
FLIXSTER.COM
FLY.COM
FODORS.COM
FOOD.COM
FOODANDWINE.COM
FOODNETWORK.COM
FOOL.COM
FOOTLOCKER.COM
FORBES.COM
FORCE.COM
FORD.COM
FOREVER21.COM
FORLOCATIONS.COM
FORMSPRING.ME
FORUMOTION.COM
FOTOSEARCH.COM
FOURSQUARE.COM
FOX.COM
FOXBUSINESS.COM
FOXNEWS.COM
FOXSPORTS.COM
FOXSPORTSFLORIDA.COM
FOXSPORTSSOUTHWEST.COM
FOXSPORTSWEST.COM
FOXSPORTSWISCONSIN.COM
FREECAUSE.COM
FREECREDITREPORT.COM
FREECREDITSCORE.COM
FREEFLYS.COM
FREEONLINEGAMES.COM
FREESHIPPING.COM
FROMMERS.COM
FRONTIER.COM
FROSTWIRE.COM
FRYS.COM
FT.COM
FTC.GOV
FTD.COM
FULLSAIL.EDU
FUNBRAIN.COM
FUNNYJUNK.COM
FUNNYORDIE.COM
FUNTRIVIA.COM
G4TV.COM
GADLING.COM
GAMEFAQS.COM
GAMEFLY.COM
GAMEHOUSE.COM
GAMEINFORMER.COM
GAMERCLICK.COM
GAMES-VILLAGE.COM
GAMES.COM
GAMESGAMES.COM
GAMESPOT.COM
GAMESRADAR.COM
GAMESTOP.COM
GAMESXITE.COM
GAMETRAILERS.COM
GAMINGWONDERLAND.COM
GAP.COM
GARDENGUIDES.COM
GARDENWEB.COM
GARMIN.COM
GATHER.COM
GAWKER.COM
GEICO.COM
GETGLUE.COM
GIANTBOMB.COM
GIFTS.COM
GIGAOM.COM
GILT.COM
GIRLSGOGAMES.COM
GIZMODO.COM
GLAM.COM
GLAMOUR.COM
GLASSDOOR.COM
GLOBALGRIND.COM
GLOGSTER.COM
GMC.COM
GNC.COM
GO.COM
GODADDY.COM
GODVINE.COM
GOFREE.COM
GOGECAPITAL.COM
GOGOANIME.COM
GOLF.COM
GOLFLINK.COM
GOOD.IS
GOODCHOLESTEROLCOUNT.COM
GOODHOUSEKEEPING.COM
GOODREADS.COM

GOOGLE.CA
GOOGLE.CO.UK
GOOGLE.COM
GOOGLE.COM.MX
GOOGLE.ES
GOOGLE.NL
GORILLALEAK.COM
GOSSIPCENTER.COM
GOSSIPCOP.COM
GOTHAMIST.COM
GOTOMEETING.COM
GOURMANDIA.COM
GOVERNMENTJOBS.COM
GQ.COM
GRADESAVER.COM
GRAINGER.COM
GRANTLAND.COM
GRASSCITY.COM
GREATSCHOOLS.ORG
GREENDOT.COM
GREYHOUND.COM
GRINDTV.COM
GROOVESHARK.COM
GROUPON.COM
GROUPRECIPES.COM
GSN.COM
GUAMPDN.COM
GUARDIAN.CO.UK
GUITARCENTER.COM
GUYISM.COM
HALF.COM
HALLMARK.COM
HAMPTON-INN.COM
HARBORFREIGHT.COM
HARK.COM
HARVARD.EDU
HASBRO.COM
HAUTELOOK.COM
HBO.COM
HBOGO.COM
HEALTH.COM
HEALTHBOARDS.COM
HEALTHCENTRAL.COM
HEALTHGRADES.COM
HEALTHGURU.COM
HEALTHLINE.COM
HEAVY.COM
HELIUM.COM
HERDAILY.COM
HERTZ.COM
HEWITT.COM
HGTV.COM
HGTVREMODELS.COM
HHS.GOV
HIGHBEAM.COM
HILLSHIREFARM.COM
HILTON.COM
HISTORY.COM
HLNTV.COM
HM.COM
HOBBYLOBBY.COM
HODESIQ.COM
HOLIDAYINN.COM
HOLLISTERCO.COM
HOLLYSCOOP.COM
HOLLYWIRE.COM
HOLLYWOOD.COM
HOLLYWOODLIFE.COM
HOLLYWOODREPORTER.COM
HOMEAWAY.COM
HOMEDEPOT.COM
HOMEFINDER.COM
HOMES.COM
HOMESTEAD.COM
HOMETOWNLOCATOR.COM
HONDA.COM
HOODAMATH.COM
HOOVERS.COM
HOTELPLANNER.COM
HOTELS.COM
HOTELSONE.COM
HOTPADS.COM
HOTTOPIC.COM
HOTWIRE.COM
HOUSEHOLDBANK.COM
HOUZZ.COM
HOWSTUFFWORKS.COM
HOWTOGEEK.COM
HP.COM
HRDEPARTMENT.COM
HRSACCOUNT.COM
HRW.COM
HSBC.COM
HSBCCREDITCARD.COM
HSN.COM
HTC.COM
HUBPAGES.COM
HUFFINGTONPOST.CA
HUFFINGTONPOST.CO.UK
HUFFINGTONPOST.COM
HULKSHARE.COM
HUMORSWITCH.COM
HYATT.COM
HYPSTER.COM
HYUNDAIUSA.COM
IAMCATWALK.COM
IAPPLICANTS.COM
IBM.COM
IBTIMES.COM
ICANHASCHEEZBURGER.COM
ICHOTELSGROUP.COM
ICIMS.COM
ICLOUD.COM
ICONTACT.COM
IEGALLERY.COM
IFOOD.TV
IFUNNY.MOBI
IGN.COM
IHEART.COM
IHOTELIER.COM
IKEA.COM
ILLINOIS.EDU
IMDB.COM
IMESH.COM
IMGFAVE.COM
IMGUR.COM
IMINENT.COM
IMOTORS.COM
IMVU-CUSTOMER-SANDBOX.COM

IMVU.COM
IN.COM
IN.GOV
INBOX.COM
INBOXDOLLARS.COM
INC.COM
INCREDIBAR.COM
INDEED.COM
INDEPENDENT.CO.UK
INDIATIMES.COM
INDYSTAR.COM
INFO.COM
INFOPLEASE.COM
INFORMER.COM
INGDIRECT.COM
INQUISITR.COM
INSIDERPAGES.COM
INSTAGR.AM
INSTAGRAM.COM
INSTANTCHECKMATE.COM
INSTRUCTABLES.COM
INSTYLE.COM
INTEL.COM
INTELIUS.COM
INTELLICAST.COM
INTERIORCOMPLEX.COM
INTUIT.COM
INVESTOPEDIA.COM
INVESTORS.COM
IO9.COM
IOFFER.COM
IPLAY.COM
IREPORT.COM
IRS.GOV
ISOHUNT.COM
ISSOLUTIONS.INFO
ISSUU.COM
ISTOCKPHOTO.COM
ITIBITIPHONE.COM
ITT-TECH.EDU
IVILLAGE.COM
IWASTESOMUCHTIME.COM
IWIN.COM
JACKHENRY.COM
JALOPNIK.COM
JANGO.COM
JAVA.COM
JCPENNEY.COM
JCWHITNEY.COM
JEST.COM
JETBLUE.COM
JEZEBEL.COM
JOANN.COM
JOB.COM
JOBAMATIC.COM
JOBRAPIDO.COM
JOBS-TO-CAREERS.COM
JOBSONLINE.NET
JOBSRADAR.COM
JOIN.ME
JOYSTIQ.COM
JR.COM
JSONLINE.COM
JSTOR.ORG
JUSTANSWER.COM
JUSTFAB.COM
JUSTIA.COM
JUSTIN.TV
JUSTJARED.COM
K12.CA.US
K12.FL.US
K12.GA.US
K12.IN.US
K12.NC.US
K12.NJ.US
K12.OH.US
KABAM.COM
KABOODLE.COM
KABOOSE.COM
KANSASCITY.COM
KARMALOOP.COM
KAT.PH
KAYAK.COM
KBB.COM
KEEPVID.COM
KELLOGGS.COM
KHANACADEMY.ORG
KICKSTARTER.COM
KIDSHEALTH.ORG
KIZI.COM
KMART.COM
KNOWYOURMEME.COM
KODAK.COM
KODAKGALLERY.COM
KOHLS.COM
KOMONEWS.COM
KONGREGATE.COM
KOTAKU.COM
KRAFTRECIPES.COM
KROGER.COM
KRONOSTM.COM
KSL.COM
KTLA.COM
KUAM.COM
KUDZU.COM
LANDSEND.COM
LANEBRYANT.COM
LAST.FM
LATIMES.COM
LDS.ORG
LEAGUEOFLEGENDS.COM
LEAWO.COM
LEGACY.COM
LEGO.COM
LENOVO.COM
LEVI.COM
LG.COM
LIFEHACKER.COM
LIFESCRIPT.COM
LIGHTINTHEBOX.COM
LIJIT.COM
LINKEDIN.COM
LISTVERSE.COM
LIVE.COM
LIVEJOURNAL.COM
LIVELEAK.COM
LIVENATION.COM
LIVESCIENCE.COM
LIVESTREAM.COM

LIVESTRONG.COM
LIVINGSOCIAL.COM
LLBEAN.COM
LOC.GOV
LOCAL.COM
LOCALBUZZ.US
LOCALGUIDES.COM
LOCALHEALTH.COM
LOCALPAGES.COM
LOCKERZ.COM
LOGITECH.COM
LOGMEIN.COM
LOLZBOOK.COM
LONELYPLANET.COM
LOOPNET.COM
LOVETOKNOW.COM
LOWERMYBILLS.COM
LOWES.COM
LOWFARES.COM
LUMOSITY.COM
LYCOS.COM
LYRICS007.COM
LYRICSFREAK.COM
LYRICSMANIA.COM
LYRICSMODE.COM
LYRICSTIME.COM
MAC-FORUMS.COM
MACRUMORS.COM
MACWORLD.COM
MACYS.COM
MADAMENOIRE.COM
MADE-IN-CHINA.COM
MADEMAN.COM
MAGICJACK.COM
MAHALO.COM
MAKERS.COM
MAKEUSEOF.COM
MANAGEYOURLOANS.COM
MANDATORY.COM
MANTA.COM
MANUALSONLINE.COM
MAPQUEST.COM
MAPS4PC.COM
MAPSGALAXY.COM
MAPSOFWORLD.COM
MARKETWATCH.COM
MARRIOTT.COM
MARTHASTEWART.COM
MARVEL.COM
MASHABLE.COM
MATCH.COM
MATHSISFUN.COM
MATHXL.COM
MATTEL.COM
MAXGAMES.COM
MAXIM.COM
MAXPREPS.COM
MAYOCLINIC.COM
MCAFEE.COM
MCDONALDS.COM
MCGRAW-HILL.COM
MEDHELP.ORG
MEDIAFIRE.COM
MEDIAITE.COM
MEDIATAKEOUT.COM
MEDICALNEWSTODAY.COM
MEDICINENET.COM
MEDSCAPE.COM
MEETME.COM
MEETUP.COM
MEFEEDIA.COM
MEGAMILLIONS.COM
MEGAUPLOAD.COM
MEIJER.COM
MEMEBASE.COM
MEMECENTER.COM
MENARDS.COM
MENSHEALTH.COM
MENSHEALTHBASE.COM
MENTALFLOSS.COM
MENUISM.COM
MENUPAGES.COM
MERCHANTCIRCLE.COM
MERCURYNEWS.COM
MERRIAM-WEBSTER.COM
METACAFE.COM
METACRITIC.COM
METAFILTER.COM
METRIC-CONVERSIONS.ORG
METROLYRICS.COM
METROMIX.COM
METROPCS.COM
MEVIO.COM
MGID.COM
MIAMIHERALD.COM
MICHAELS.COM
MICHIGAN.GOV
MICROSOFT.COM
MICROSOFTONLINE.COM
MICROSOFTSTORE.COM
MICROSOFTTRANSLATOR.COM
MILB.COM
MILITARY.COM
MINECRAFT.NET
MINECRAFTFORUM.NET
MINECRAFTWIKI.NET
MINICLIP.COM
MINT.COM
MIRROR.CO.UK
MIT.EDU
MLB.COM
MLIVE.COM
MLXCHANGE.COM
MMO-CHAMPION.COM
MNN.COM
MO.GOV
MOBILEPHONESURVEY.NET
MOCOSPACE.COM
MODCLOTH.COM
MODELMAYHEM.COM
MODERNHOMEMODERNBABY.COM
MOM.ME
MOMMYMIXING.COM
MOMSWHOTHINK.COM
MOMTASTIC.COM
MONEYNEWS.COM
MONKEYQUEST.COM
MONSTER.COM
MORNINGSTAR.COM

MOSHIMONSTERS.COM
MOTIFAKE.COM
MOTORTREND.COM
MOVIEFONE.COM
MOVIEROOMREVIEWS.COM
MOVIES.COM
MOVIESTARPLANET.COM
MOVIETICKETS.COM
MOVIEWEB.COM
MOZILLA.ORG
MRMOVIETIMES.COM
MSN.COM
MSNBC.COM
MTA.INFO
MTV.COM
MULTIPLY.COM
MUSICIANSFRIEND.COM
MUSICNOTES.COM
MUZY.COM
MVGUAM.COM
MYCOKEREWARDS.COM
MYCRICKET.COM
MYDAILYMOMENT.COM
MYDISH.COM
MYFITNESSPAL.COM
MYFLORIDA.COM
MYFOXNY.COM
MYFRIENDSGREETINGS.COM
MYFUNCARDS.COM
MYHOMEMSN.COM
MYLIFE.COM
MYLIFETIME.COM
MYNEWPLACE.COM
MYNEWSLETTERBUILDER.COM
MYPCBACKUP.COM
MYPODSTUDIOS.COM
MYPOINTS.COM
MYRECIPES.COM
MYSANANTONIO.COM
MYSPACE.COM
MYSTART.COM
MYSTORE411.COM
MYVIEW.COM
MYVOICENATION.COM
MYWEBGROCER.COM
MYWEBSEARCH.COM
MYXER.COM
MYYEARBOOK.COM
NADAGUIDES.COM
NARUTOGET.COM
NASA.GOV
NASCAR.COM
NASDAQ.COM
NATIONALGEOGRAPHIC.COM
NATIONALJOURNAL.COM
NATIONALPOST.COM
NATURALNEWS.COM
NATURE.COM
NAVER.COM
NAVY.MIL
NAVYFCU.ORG
NBA.COM
NBAHOOPTROOP.COM
NBC.COM
NBCNEWYORK.COM
NBCSPORTS.COM
NCAA.COM
NCH.COM.AU
NCHSOFTWARE.COM
NEIMANMARCUS.COM
NEOPETS.COM
NEOSEEKER.COM
NESN.COM
NETDOCTOR.CO.UK
NETFLIX.COM
NETSUITE.COM
NEWCOUPONSFOR.ME
NEWEGG.COM
NEWGROUNDS.COM
NEWSBUSTERS.ORG
NEWSDAY.COM
NEWSER.COM
NEWSMAX.COM
NEWYORKER.COM
NEXON.NET
NEXTAG.COM
NEXTSPORTSTAR.COM
NFL.COM
NHL.COM
NICK.COM
NICKJR.COM
NIH.GOV
NIKE.COM
NING.COM
NINTENDO.COM
NISSANUSA.COM
NJ.COM
NME.COM
NOAA.GOV
NOLA.COM
NOMORERACK.COM
NORDSTROM.COM
NORTHERNTOOL.COM
NOTDOPPLER.COM
NOTEBOOKREVIEW.COM
NOVAMOV.COM
NPR.ORG
NPS.GOV
NVIDIA.COM
NY.GOV
NYC.GOV
NYDAILYNEWS.COM
NYMAG.COM
NYPOST.COM
NYTIMES.COM
OCREGISTER.COM
ODDEE.COM
OFFICEDEPOT.COM
OFFICEMAX.COM
OHIO.GOV
OKCUPID.COM
OLDNAVY.COM
OLIVEGARDEN.COM
OLX.COM
OMEGLE.COM
ONEKINGSLANE.COM
ONETRAVEL.COM
ONLINE-REFERENCE-TOOLS.COM
ONSUGAR.COM

ONTHEREDCARPET.COM
OODLE.COM
OPENTABLE.COM
OPERA.COM
OPINIONPLACE.COM
OPM.GOV
OPRAH.COM
OPTIMUM.NET
ORACLE.COM
ORBITZ.COM
ORCHARDBANK.COM
OREGONLIVE.COM
OREILLYAUTO.COM
ORLANDOSENTINEL.COM
ORON.COM
ORTSBOABC.COM
OSU.EDU
OURSTAGE.COM
OURWORLD.COM
OVERDRIVE.COM
OVERSTOCK.COM
OVGUIDE.COM
PACSUN.COM
PALMBEACHPOST.COM
PANDORA.COM
PANERABREAD.COM
PANORAMIO.COM
PAPAJOHNS.COM
PARENTING.COM
PARENTS.COM
PARENTSCONNECT.COM
PARTYCITY.COM
PASSPORT.COM
PASTEBIN.COM
PATCH.COM
PAWNATION.COM
PAYLESS.COM
PAYPAL.COM
PBS.ORG
PBSKIDS.ORG
PBWORKS.COM
PCGAMER.COM
PCH.COM
PCHGAMES.COM
PCMAG.COM
PCPOWERSPEED.COM
PCWORLD.COM
PENNY-ARCADE.COM
PEOPLE.COM
PEOPLECLICK.COM
PEOPLEFINDERS.COM
PEOPLEPETS.COM
PEOPLESMART.COM
PEPBOYS.COM
PEREZHILTON.COM
PERSONALIZATIONMALL.COM
PETCO.COM
PETFINDER.COM
PETSMART.COM
PGATOUR.COM
PHILLY.COM
PHOENIX.EDU
PHONEARENA.COM
PHOTOBUCKET.COM
PHYS.ORG
PHYSICSFORUMS.COM
PICMONKEY.COM
PICNIK.COM
PILLSBURY.COM
PINGER.COM
PINTEREST.COM
PIPL.COM
PIRIFORM.COM
PIXLR.COM
PIZAP.COM
PIZZAHUT.COM
PLANETMINECRAFT.COM
PLAYHUB.COM
PLAYLIST.COM
PLAYSTATION.COM
PNC.COM
POEMHUNTER.COM
POF.COM
POG.COM
POGO.COM
POKEMON.COM
POLITICO.COM
POLYVORE.COM
POPCAP.COM
POPSUGAR.COM
POPTROPICA.COM
POPULARMECHANICS.COM
POST-GAZETTE.COM
POSTINI.COM
POTTERYBARN.COM
PREVENTION.COM
PREZI.COM
PRICEGRABBER.COM
PRICELINE.COM
PRIMARYGAMES.COM
PRLOG.ORG
PRNEWSWIRE.COM
PROACTIV.COM
PROBOARDS.COM
PRODUCTMADNESS.COM
PRODUTOOLS.COM
PROFLOWERS.COM
PROGRESSIVE.COM
PRONTO.COM
PRWEB.COM
PSU.EDU
PSYCHCENTRAL.COM
PSYCHOLOGYTODAY.COM
PUBLICRECORDS.COM
PUBLIX.COM
PURDUE.EDU
PURPLEMATH.COM
PUTLOCKER.COM
QUALITYHEALTH.COM
QUESTBASIC.COM
QUICKBOOKS.COM
QUICKMEME.COM
QUIZLET.COM
QUIZNOS.COM
QUORA.COM
QUOTEGARDEN.COM
QVC.COM
RADARONLINE.COM
RADIO.COM

RADIOSHACK.COM
RALPHLAUREN.COM
RANKER.COM
RANKINGSANDREVIEWS.COM
RAPGENIUS.COM
RAPIDGATOR.NET
RAPIDLIBRARY.COM
RAPIDSHARE.COM
RATEMYPROFESSORS.COM
READERSDIGEST.COM
REAL.COM
REALAGE.COM
REALCLEARPOLITICS.COM
REALSIMPLE.COM
REALTOR.COM
RECIPE.COM
REDBALCONY.COM
REDBOX.COM
REDBUBBLE.COM
REDDIT.COM
REDENVELOPE.COM
REDFIN.COM
REFERENCE.COM
REGALCINEMAS.COM
REGIONS.COM
REI.COM
RELISH.COM
REMAX.COM
RENT.COM
RENTALS.COM
REPLY.COM
RESEARCH.NET
RESEARCHNOW.COM
RESERVEAMERICA.COM
RESTAURANT.COM
RETAILMENOT.COM
REUTERS.COM
REVERBNATION.COM
RHAPSODY.COM
RHYMEZONE.COM
RIGHTDIAGNOSIS.COM
RITEAID.COM
RIVALGAMING.COM
RIVALS.COM
ROADRUNNER.COM
ROBLOX.COM
ROCKETLAWYER.COM
ROCKYOU.COM
RODALE.COM
ROLLINGSTONE.COM
ROTTENTOMATOES.COM
RUNESCAPE.COM
RUNNERSWORLD.COM
RUSHCARD.COM
RXLIST.COM
SACBEE.COM
SAFEWAY.COM
SAIPANTRIBUNE.COM
SAKSFIFTHAVENUE.COM
SALARY.COM
SALESFORCE.COM
SALLIEMAE.COM
SALON.COM
SAMOANEWS.COM
SAMOAOBSERVER.WS
SAMSCLUB.COM
SAMSUNG.COM
SAVINGSTAR.COM
SBNATION.COM
SCHOLASTIC.COM
SCHOOLFEED.COM
SCHOOLLOOP.COM
SCHWAB.COM
SCIENCEDAILY.COM
SCIENCEDIRECT.COM
SCOTTRADE.COM
SCOUT.COM
SCRABBLEFINDER.COM
SCREENRANT.COM
SCRIBD.COM
SEARCH-RESULTS.COM
SEARCHCOMPLETION.COM
SEARCHQUOTES.COM
SEARS.COM
SEARSPARTSDIRECT.COM
SEATTLEPI.COM
SEATTLETIMES.COM
SEAWORLDPARKS.COM
SEEKINGALPHA.COM
SEEKYSEARCH.NET
SELF.COM
SENDEARNINGS.COM
SENDORI.COM
SENDSPACE.COM
SEPHORA.COM
SERIOUSEATS.COM
SERVICEMAGIC.COM
SEVENFORUMS.COM
SEVENTEEN.COM
SFGATE.COM
SGSAPPS.COM
SHAPE.COM
SHAREBEAST.COM
SHARECARE.COM
SHEKNOWS.COM
SHMOOP.COM
SHOCKWAVE.COM
SHOEBUY.COM
SHOEDAZZLE.COM
SHOPATHOME.COM
SHOPAUTOWEEK.COM
SHOPLOCAL.COM
SHOPPING.COM
SHOPSTYLE.COM
SHOPWIKI.COM
SHOPZILLA.COM
SHUTTERFLY.COM
SHUTTERSTOCK.COM
SI.COM
SI.EDU
SIDEREEL.COM
SILKROAD.COM
SIMON.COM
SIMPLYHIRED.COM
SIMPLYRECIPES.COM
SINA.COM.CN
SING365.COM
SIRIUSXM.COM
SIXFLAGS.COM

SKYPE.COM
SLACKER.COM
SLASHDOT.ORG
SLASHGEAR.COM
SLATE.COM
SLICKDEALS.NET
SLIDESHARE.NET
SMARTER.COM
SMARTERLIFESTYLES.COM
SMARTMOMSTYLE.COM
SMARTMONEY.COM
SMARTSHOPPINGINFO.COM
SMARTSOURCE.COM
SMILEBOX.COM
SMOSH.COM
SMUGMUG.COM
SNAGAJOB.COM
SNAPFISH.COM
SNOPES.COM
SOCIALSECURITYDISABILITYBENEFITS.ORG
SOCKSHARE.COM
SODAHEAD.COM
SOFT32.COM
SOFTONIC.COM
SOFTPEDIA.COM
SOHU.COM
SOLARMOVIE.EU
SOMEECARDS.COM
SONGKICK.COM
SONGLYRICS.COM
SONGMEANINGS.NET
SONY.COM
SOUNDCLOUD.COM
SOURCEFORGE.NET
SOUTHERNLIVING.COM
SOUTHPARKSTUDIOS.COM
SOUTHWEST.COM
SPACE.COM
SPANISHDICT.COM
SPARKNOTES.COM
SPARKPEOPLE.COM
SPEEDPAY.COM
SPELLINGCITY.COM
SPIKE.COM
SPINNER.COM
SPORCLE.COM
SPORTINGNEWS.COM
SPORTSAUTHORITY.COM
SPOTIFY.COM
SPREADSHIRT.NET
SPRINGERLINK.COM
SPRINT.COM
SPRINTPCS.COM
SPRYLIVING.COM
SQUARESPACE.COM
SQUIDOO.COM
SSA.GOV
STACKEXCHANGE.COM
STACKOVERFLOW.COM
STANFORD.EDU
STAPLES.COM
STAR-TELEGRAM.COM
STARBUCKS.COM
STARDOLL.COM
STARFALL.COM
STARPULSE.COM
STARSJOURNAL.COM
STARTRIBUNE.COM
STARWOODHOTELS.COM
STATE.FL.US
STATE.GOV
STATE.IL.US
STATE.MD.US
STATE.MI.US
STATE.MN.US
STATE.NJ.US
STATE.NY.US
STATE.PA.US
STATE.TX.US
STATEFARM.COM
STCROIXSOURCE.COM
STEADYHEALTH.COM
STEAMCOMMUNITY.COM
STEAMPOWERED.COM
STICKPAGE.COM
STJOHNSOURCE.COM
STLTODAY.COM
STLYRICS.COM
STORIFY.COM
STRAIGHTTALK.COM
STTHOMASSOURCE.COM
STUBHUB.COM
STUDENTLOANS.GOV
STUDYISLAND.COM
STUMBLEUPON.COM
STYLEBISTRO.COM
STYLEBLAZER.COM
STYLELIST.COM
SUALIZE.US
SUBWAY.COM
SUDDENLINK.NET
SUITE101.COM
SUN-SENTINEL.COM
SUNTIMES.COM
SUNTRUST.COM
SUPERCHEATS.COM
SUPERPAGES.COM
SUPERSAVINGSNOW.COM
SURVEYGIZMO.COM
SWAGBUCKS.COM
SWITCHBOARD.COM
SYMANTEC.COM
SYMPTOMFIND.COM
SYRACUSE.COM
T-MOBILE.COM
TAGGED.COM
TALEO.NET
TAMPABAY.COM
TAMU.EDU
TARGET.COM
TARINGA.NET
TASTEOFHOME.COM
TBO.COM
TDAMERITRADE.COM
TDBANK.COM
TECHBARGAINS.COM
TECHCRUNCH.COM
TECHGUY.ORG
TECHRADAR.COM

TECHREPUBLIC.COM
TED.COM
TEENNICK.COM
TELEFLORA.COM
TELEGRAPH.CO.UK
TELEVISIONFANATIC.COM
THEATLANTIC.COM
THEATLANTICWIRE.COM
THEBLAZE.COM
THEBOOMBOX.COM
THEBOOT.COM
THEBUMP.COM
THECARCONNECTION.COM
THECELEBRITYCAFE.COM
THECHIVE.COM
THEDAILYBEAST.COM
THEDAILYSHOW.COM
THEFASHIONSPOT.COM
THEFIND.COM
THEFREEDICTIONARY.COM
THEFRISKY.COM
THEGLOBEANDMAIL.COM
THEGRIO.COM
THEHILL.COM
THEHOLLYWOODGOSSIP.COM
THEKITCHN.COM
THEKNOT.COM
THELADDERS.COM
THEOATMEAL.COM
THEONION.COM
THEPIONEERWOMAN.COM
THEPIRATEBAY.SE
THEPOSTGAME.COM
THEROOT.COM
THERUGGED.COM
THESAURUS.COM
THESIMS3.COM
THESLAP.COM
THESMOKINGGUN.COM
THESTAR.COM
THESTREET.COM
THESUN.CO.UK
THESUPERFICIAL.COM
THEVERGE.COM
THEWEEK.COM
THEWORKBUZZ.COM
THINKEXIST.COM
THINKGEEK.COM
THINKQUEST.ORG
THIRDAGE.COM
THISOLDHOUSE.COM
TICKETLIQUIDATOR.COM
TICKETMASTER.COM
TICKETS.COM
TIGERDIRECT.COM
TIME.COM
TIMEANDDATE.COM
TIMEOUT.COM
TIMESUNION.COM
TIMEWARNERCABLE.COM
TINYCHAT.COM
TINYPIC.COM
TIRERACK.COM
TMZ.COM
TNTDRAMA.COM
TOLUNA.COM
TOMS.COM
TOMSHARDWARE.COM
TOOFAB.COM
TOPIX.COM
TOPTENREVIEWS.COM
TORRENTCRAZY.COM
TORRENTHOUND.COM
TORRENTREACTOR.NET
TORRENTZ.EU
TOSHIBA.COM
TOTALBEAUTY.COM
TOTALRECIPESEARCH.COM
TOTALREWARDS.COM
TOYOTA.COM
TOYSRUS.COM
TRACTORSUPPLY.COM
TRAILS.COM
TRANSLATEYE.COM
TRANSUNION.COM
TRAVEL-TICKER.COM
TRAVELANDLEISURE.COM
TRAVELCHANNEL.COM
TRAVELMATH.COM
TRAVELOCITY.COM
TRAVELZOO.COM
TRENDMICRO.COM
TRIPADVISOR.COM
TRULIA.COM
TRUTV.COM
TRYSENSA.COM
TUBEPLUS.ME
TUDOU.COM
TUMBLR.COM
TUNEIN.COM
TURBOBIT.NET
TURBOTAX.COM
TURNITIN.COM
TV.COM
TVDUCK.EU
TVFANATIC.COM
TVGUIDE.COM
TVLINE.COM
TVTROPES.ORG
TWITCH.TV
TWITPIC.COM
TWITTER.COM
TYPEPAD.COM
UBI.COM
UCLA.EDU
UCOMPAREHEALTHCARE.COM
UFC.COM
UFL.EDU
UHAUL.COM
ULINE.COM
ULTA.COM
ULTIMATE-GUITAR.COM
ULTIRECRUIT.COM
UMICH.EDU
UMN.EDU
UNCOVERTHENET.COM
UNITED.COM
UNIVISION.COM
UOL.COM.BR

UPENN.EDU
UPICKEM.NET
UPLOADED.TO
UPLOADING.COM
UPROMISE.COM
UPROXX.COM
UPS.COM
UPTAKE.COM
URBANDICTIONARY.COM
URBANOUTFITTERS.COM
URBANSPOON.COM
US.COM
USA.GOV
USAA.COM
USAIRWAYS.COM
USAJOBS.GOV
USATODAY.COM
USBANK.COM
USCELLULAR.COM
USCIS.GOV
USDA.GOV
USGS.GOV
USMAGAZINE.COM
USNEWS.COM
USPS.COM
USSEARCH.COM
USTREAM.TV
UTAH.GOV
UTEXAS.EDU
UTORRENT.COM
V2CIGS.COM
VA.GOV
VACATIONRENTALS.COM
VANGUARD.COM
VANITYFAIR.COM
VENTUREBEAT.COM
VEOH.COM
VERIZON.COM
VERIZON.NET
VERIZONWIRELESS.COM
VEVO.COM
VH1.COM
VIBE.COM
VICE.COM
VICTORIASSECRET.COM
VIDDLER.COM
VIDEO2MP3.NET
VIDEOBASH.COM
VIDEOFRAG.COM
VIDEOSURF.COM
VIDEOWEED.ES
VIMEO.COM
VIRGINIA.GOV
VIRGINISLANDSDAILYNEWS.COM
VIRGINMOBILEUSA.COM
VIRTUALLYTHERE.COM
VIRTUALTOURIST.COM
VISTAPRINT.COM
VITALS.COM
VOLUSION.COM
VONAGE.COM
VRBO.COM
VULTURE.COM
VUREEL.COM
WA.GOV
WAHOHA.COM
WAJAM.COM
WALGREENS.COM
WALLSTCHEATSHEET.COM
WALMART.COM
WALMARTMONEYCARD.COM
WALMARTSTORES.COM
WARNERBROS.COM
WASHINGTON.EDU
WASHINGTONEXAMINER.COM
WASHINGTONPOST.COM
WASHINGTONTIMES.COM
WATCHCARTOONONLINE.COM
WATCHSERIES.EU
WAYFAIR.COM
WAYPORT.NET
WE-CARE.COM
WEATHER.COM
WEATHER.GOV
WEATHERBUG.COM
WEBCRAWLER.COM
WEBKINZ.COM
WEBMD.COM
WEBPRONEWS.COM
WEBS.COM
WEBSHOTS.COM
WEDDINGBEE.COM
WEDDINGCHANNEL.COM
WEDDINGWIRE.COM
WEEBLY.COM
WEEKLYSTANDARD.COM
WEHEARTIT.COM
WEIGHTWATCHERS.COM
WELLHABITS.COM
WELLNESS.COM
WELLSFARGO.COM
WESTERNUNION.COM
WETPAINT.COM
WETSEAL.COM
WFAA.COM
WHATTOEXPECT.COM
WHERE2GETIT.COM
WHITEHOUSE.GOV
WHITEPAGES.COM
WHOSAY.COM
WIKIA.COM
WIKIHOW.COM
WIKIMEDIA.ORG
WIKIMEDIAFOUNDATION.ORG
WIKIPEDIA.ORG
WIKIQUOTE.ORG
WIKISPACES.COM
WIKITRAVEL.ORG
WIKTIONARY.ORG
WILEY.COM
WIMP.COM
WINDOWSMEDIA.COM
WINZIP.COM
WIRED.COM
WISC.EDU
WIZARD101.COM
WN.COM
WND.COM
WNLOADS.NET

WOMANSDAY.COM
WOMENSFORUM.COM
WOMENSHEALTHBASE.COM
WOMENSHEALTHMAG.COM
WONDERHOWTO.COM
WOOT.COM
WORDPRESS.COM
WORDREFERENCE.COM
WORLDATLAS.COM
WORLDSTARHIPHOP.COM
WORLDWINNER.COM
WORTHPOINT.COM
WOWHEAD.COM
WSJ.COM
WTHR.COM
WTSP.COM
WUFOO.COM
WUNDERGROUND.COM
WWE.COM
XBOX.COM
XE.COM
XEGEN.COM
XFINITY.COM
XFINITYTV.COM
XKCD.COM
Y8.COM
YAHOO.CA
YAHOO.CO.IN
YAHOO.CO.KR
YAHOO.CO.UK
YAHOO.COM
YAHOO.COM.AU
YAHOO.COM.CN
YAHOO.COM.MX
YAHOO.COM.PH
YAHOO.COM.SG
YAHOO.ES
YAKAZ.COM
YARDBARKER.COM
YARDSELLR.COM
YELLOWBOOK.COM
YELLOWBOT.COM
YELLOWNOW.COM
YELLOWPAGES.COM
YELP.COM
YEPI.COM
YFROG.COM
YIDIO.COM
YOLASITE.COM
YOUBEAUTY.COM
YOUKU.COM
YOURAVON.COM
YOURDICTIONARY.COM
YOURTANGO.COM
YOUSENDIT.COM
YOUTUBE-MP3.ORG
YOUTUBE.COM
YUKU.COM
YUMMLY.COM
ZAP2IT.COM
ZAPPOS.COM
ZAZZLE.COM
ZBIDDY.COM
ZDNET.COM
ZENDESK.COM
ZILLOW.COM
ZIMBIO.COM
ZIPPYSHARE.COM
ZIPREALTY.COM
ZMOVIE.TV
ZOCDOC.COM
ZOOSK.COM
ZULILY.COM
ZUMIEZ.COM
ZYNGA.COM

#

**EXHIBIT 4**

Dahl ADMINISTRATION | FRWD

Did You Purchase Tom's Natural Products?

**A Class Action Settlement May Affect Your Rights.**

CLICK HERE FOR MORE INFORMATION

## Web Banners

Did you purchase Tom's Natural Products?

**A Class action May Affect Your Rights.**

Click Here

Dahl ADMINISTRATION | FRWD

Tom's Products Lawsuit– If You Purchased Tom's Products
Your Rights May Be Affected.
www.TomsProductsClassAction.com

Google & Bing Keyword Search

Facebook

Tom's Products Lawsuit
www.tomsproductsclassaction.com

Click Here

If You Purchased Tom's Natural Products Your Rights May Be Affected.

Facebook

Tom's Products Lawsuit
www.tomsproductsclassaction.com

CLICK HERE

If You Purchased Tom's Natural Products Your Rights May Be Affected.

**EXHIBIT 5**

**Dahl Administration Announces Class Action Settlement in the *Gay, et al. v. Tom's of Maine, Inc.* Litigation**

MINNEAPOLIS, MN<<DATE>> /PRNewswire/ -- A proposed settlement has been reached in a class action lawsuit about the packaging and advertising of Tom's of Maine products. The plaintiffs in the lawsuit claim that Tom's of Maine mislabeled its Products by describing them as "natural." Tom's of Maine denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

*Am I a Class Member?* You are a Class Member if you bought at least one of the Tom's of Maine Covered Products from March 29, 2009 through [DATE], for individual or household use and not for resale. Excluded from the Class are Tom's of Maine and its board members, officers, and attorneys; governmental entities; the Court presiding over the settlement; those with claims for personal injuries, and those persons who timely and validly request exclusion from the Settlement Class.

*What Can I Get From the Settlement?* A fund of $4.5 million will be created to pay Class Members for a portion of the cost of Covered Products they purchased, for notice and claim administration costs and attorneys' fees and expenses. Tom's will also make changes to the labels for the Tom's of Maine products and to its website.

Settlement Class Members may submit a properly completed and timely filed Claim Form and be eligible to receive a cash refund of up to $28. These awards may be subject to *pro rata* upward or downward adjustment depending on the number of claims approved. A detailed Class Notice and copies of the Claim Form are available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

*What are My Options?* To ask for a cash payment and stay in the Class, you must send in a Claim Form by [DATE]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [DATE]. The detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved. If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide evidence of your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on ________ in ________, Florida. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate and whether to approve the Class Representatives' incentive awards of up to $2,000 each and attorneys' fees up to $1,035,000.00 and expenses not to exceed $50,000.00. You may attend the hearing, and you may hire your own lawyer, but you are not required to do either. The Court will consider timely written objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

*What If I Have Questions?* This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit, can be found online at www.xxxxxxxxxxxxxxx.com. For more information, you may call or write to the Settlement

Administrator at 1-8xx-xxx-xxxx, Tom's of Maine Settlement, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614 or info@xxxxxxxxxxxxxxxxxx.com.

QUESTIONS? CALL 1-8xx- xxx-xxxx or VISIT www.xxxxxxxxxxxxxxx.com

MEDIA: Jeff Dahl, 952-562-3601

SOURCE: DAHL ADMINISTRATION, LLC

RELATED LINKS: www.xxxxxxxxxxxxxxx.com

# EXHIBIT 6

# LEGAL NOTICE

## If You Bought Tom's of Maine Products You May be Entitled to Cash from a Class Settlement

**[website address]**

A proposed settlement has been reached in a class action lawsuit about the packaging and advertising of Tom's of Maine products. The plaintiffs in the lawsuit claim that Tom's of Maine mislabeled its Products by describing them as "natural." Tom's of Maine denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

**Am I A Class Member?** You are a Class Member if you bought at least one of the Tom's of Maine Products from March 29, 2009 through [date of preliminary approval order], for individual or household use and not for resale. Excluded from the Class are Tom's of Maine and its board members, officers, and attorneys; governmental entities; the Court presiding over the settlement; those with claims for personal injuries, and those persons who timely and validly request exclusion from the Settlement Class.

**What Can I Get From the Settlement?** A fund of $4.5 million will be created to pay Class Members for a portion of the cost of products they purchased, for notice and claim administration costs and attorneys' fees and expenses. Tom's will also make changes to the labels for the Tom's of Maine products and to its website.

Settlement Class Members may submit a properly completed Claim Form and be eligible to receive a cash refund of up to $28. These awards may be subject to *pro rata* upward or downward adjustment depending on the number of claims approved.

A detailed Class Notice and copies of the Claim Form are available at [website] or by calling 1-8xx-xxx-xxxx.

**What Are My Options?** To ask for a cash payment and stay in the Class, you must send in a Claim Form by **[month day, year]**. If you do not wish to participate in the settlement, you may exclude yourself from the Class by **[month day, year]**. The detailed notice available at [website] or by calling 1-__-__-___ explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved. If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide evidence of your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at [website] or by calling 1-__-__-___ .

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on ________ in ________, Florida. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate and whether to approve the Class Representatives' incentive awards of up to $2,000 each and attorneys' fees of up to $1,035,000 plus expenses not to exceed $50,000. You may attend the hearing, and you may hire your own lawyer, but you are not required to do either. The Court will consider timely written objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

**What If I Have Questions?** This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit can be found online at [website]. For more information, you may call or write to the Settlement Administrator at 1-__-__-___, [address] or [email].

# EXHIBIT 7

**EXHIBIT 7**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

# IF YOU PURCHASED CERTAIN TOM'S OF MAINE PRODUCTS YOU MAY BE ENTITLED TO A CASH PAYMENT

***THIS NOTICE AFFECTS YOUR RIGHTS.***

***A Federal Court authorized this notice.***
***This is not a solicitation from a lawyer.***

**PLEASE READ THIS NOTICE AND THE ENCLOSED CLAIM FORM CAREFULLY.**

- You may be a class member in a proposed settlement class of purchasers of Tom's of Maine Covered Products and may be entitled to participate in the proposed settlement. The United States District Court for the Southern District of Florida (the "Court") has ordered the issuance of this notice in the lawsuit entitled, *Gay, et al. v. Tom's of Maine., Inc.*, 0:14-CV-60604-KMM. Defendant denies any wrongdoing in this lawsuit. The Court has not ruled on the merits of Plaintiffs' claims.

- You may be eligible to obtain $4 for each purchase of a Covered Product for up to seven (7) Covered Products purchased during the Class Period defined in the Stipulation of Settlement if you qualify and timely submit a valid Claim Form.

| **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT** | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a cash payment. Postmark or submit your Claim Form by [DATE]. |
| **EXCLUDE YOURSELF** | Get no settlement benefits. Remove yourself from both the settlement and the lawsuit. Postmark your exclusion request by [DATE]. |
| **OBJECT** | Write to the Court about why you don't like the settlement. File and serve your objection by [DATE]. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no cash payment. Give up your rights. |

- Your rights and options — and the deadlines to exercise them — are explained in this notice.

- The Court in charge of this litigation still has to decide whether to approve the settlement of this case. Distribution of settlement benefits will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS


**BASIC INFORMATION ........................................................ 3**

1. What is this lawsuit about?
2. Who is included in the settlement class?

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET ........................ 3**

3. Cash from the claim process.
4. What else does the settlement provide?

**HOW YOU GET A CLASH PAYMENT – SUBMITTING A CLAIM FORM ........ 3-4**

5. How can I get a payment?
6. How do I send in a claim?
7. When is the Claim Form due?
8. Who decides my claim?
9. When would I get my payment?
10. What if the fund is too small? Too large?
11. What happens if I do nothing at all?

**EXCLUDING YOURSELF FROM THE SETTLEMENT ........................ 5**

12. How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU ........................ 5-6**

13. Do I have lawyers in this case?
14. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT ........................ 6**

15. In return for these settlement benefits, what am I giving up?

**THE FINAL APPROVAL HEARING ........................ 7**

16. When and where will the Court decide whether to approve the settlement?
17. Do I have to come to the hearing?
18. May I speak at the hearing?

**GETTING MORE INFORMATION........................................................................................8**
23. Are there more details about the settlement?

## BASIC INFORMATION

### 1. What is this lawsuit about?

A proposed settlement has been reached in a class action lawsuit about the packaging and advertising of Tom's of Maine products. The plaintiffs in the lawsuit allege Tom's of Maine mislabeled its Covered Products by describing them as "natural." Tom's denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

### 2. Who is included in the Settlement Class?

You are a member of the Class if you purchased at least one Tom's of Maine Covered Product from March 25, 2009 through [DATE].

The following persons are excluded from the settlement class: (i) those who purchased Covered Products for purpose of resale; (ii) those with claims for personal injuries arising from the use of Covered Products; (iii) Defendant and its officers, directors and employees; (iv) any person who files a valid and timely Request for Exclusion; and (v) the Judges to whom this Action is assigned and any members of their immediate families.

## SETTLEMENT BENEFTIS – WHAT YOU MAY GET

### 3. Cash from the claims process.

Tom's will create a fund of $4.5 million to pay Class Members' claims, certain administrative costs and attorneys' fees and expenses. You may obtain a cash payment of up to $28 from the fund if you purchased one of the Tom's Covered Products. The amount of your payment will depend on the statements in your Claim Form and the support you may provide. These awards may be subject to *pro rata* upward or downward adjustment depending on the number of claims approved. Details appear below.

### 4. What else does the settlement provide?

As part of the settlement, Tom's has agreed to (1) change the labels and advertising for the Covered Products; and (2) make certain changes to its website.

## HOW YOU GET A CASH PAYMENT – SUBMITTING A CLAIM FORM

### 5. How can I get a payment?

You must return a Claim Form to get a cash payment. A copy of the Claim Form is included in this Notice Package. Claim Forms may be filed online at www.xxxxxxxxxxxxxxxxxxxxxxxxx.com or you may request a Claim Form by calling 1-8xx-xxx--xxxx.

### 6. How do I send in a claim?

The Claim Forms are simple and easy to complete.

The Claim Form requires that you provide:

1. Your mailing address;

2. A description of the total number and type of Products you purchased, as well as the location and approximate date of those purchases; and

3. Your signature affirming that the information provided is true and correct.

***Please return a Claim Form if you think that you have a claim. Returning a Claim Form is the only way to receive a cash payment from this settlement. No claimant may submit more than one Claim Form, and two or more claimants may not submit Claim Forms for the same alleged damage.***

The Claim Administrator may request additional information if the Claim Form is insufficient to process your claim. Failure to provide any requested documentation may result in the denial of your claim and may limit the type of remedy you receive.

### 7. When is the Claim Form due?

If you mail or fax your Claim Form, it must be postmarked or faxed no later than [DATE].

If you submit your Claim Form on the settlement website at www.xxxxxxxxxxxxxxxxxxxx.com, it must be submitted no later than [DATE].

### 8. Who decides my claim?

The Claim Forms will be reviewed by an independent Claim Administrator according to criteria agreed to by the parties.

The Claim Administrator may contact you or other persons listed in your Claim Form if it needs additional information or otherwise wants to verify information in your Claim Form.

The Claim Administrator's determination is final. Neither you nor Tom's can appeal or contest the decision of the Claim Administrator.

## 9. When would I get my payment?

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on _________ in _________, Florida to decide whether to approve the settlement. If the Court approves the settlement, after that there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. If there are no appeals or other delays, you should be sent your cash payment in approximately [NUMBER OF DAYS].

## 10. What if the fund is too small? Too large?

If the total amount of claims, administration costs and attorneys' fees and expenses are more than $4.5 million, the payments to Settlement Class Members will be reduced *pro rata* such that each claimant would receive proportionally less than the amount he or she claimed. If, after everyone sends in Claim Forms, the total of all approved claims and administration costs and attorneys' fees and expenses is less than $4.5 million, the payments to Settlement Class Members will be increased on a *pro* rata basis such that Settlement Class Members shall receive an increased payment of up to one hundred percent (100%) of the initial amount claimed. If, after this distribution, monies still remain in the Settlement Fund, a payment will be made to a non-profit entity and will not be returned to Tom's.

## 11. What happens if I do nothing at all?

You must timely return a valid Claim Form to receive a cash payment. If you do nothing, you will get no money from the settlement. But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Tom's about the legal issues in this case.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

## 12. How do I get out of the settlement?

If you do not wish to be included in the Class and receive settlement benefits, you must send a letter stating that you want to be excluded from this lawsuit. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request post-marked no later than [DATE] to:

TOM's OF MAINE SETTLEMENT
c/o Dahl Administration
P.O. Box 3614
Minneapolis, MN 55403-0614

If you asked to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Tom's in the future.

If you have a pending lawsuit against Tom's, speak to your lawyer immediately. You may need to exclude yourself from this lawsuit in order to continue your own lawsuit. Remember, the exclusion date is [DATE].

## THE LAWYERS REPRESENTING YOU

### 13. Do I have lawyers in this case?

The Court appointed the law firms of [LIST COUNSEL] to represent you and other Class Members. These lawyers are called Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14. How will the lawyers be paid?

Class Counsel will ask the Court to award them attorneys' fees and expenses. Plaintiffs' Counsel will seek attorneys' fees of up to $1,035,000.00 and expenses not to exceed $50,000.00.

The named plaintiffs will also ask the Court to award them an amount not to exceed $2,000 each for their time and effort acting as plaintiffs and for their willingness to bring this litigation and act on behalf of consumers. These amounts, if approved by the Court, will be paid from the Settlement Fund.

The costs to administer the settlement, to review Claim Forms, and notify Class Members about this settlement will be paid out of the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

### 15. How do I tell the Court that I do not like the settlement?

If you are a Class Member, you can object to the settlement if you do not like any part of it and the Court will consider your views. To object, you must file an objection with the Court saying that you object to the settlement in *Gay, et al. v. Tom's of Maine, Inc.*, 0:14-CV-60604-KMM.

The written objection must include: (a) a heading which refers to the Action; (b) your name, address, telephone number and, if represented by counsel, your counsel's information; (c) a statement that you purchased one or more products; (d) a statement whether you intend to appear at the Final Approval Hearing, either in person or through counsel; (e) a statement of the objection and the grounds supporting the objection; (f) copies of any papers, briefs, or other documents upon which the objection is based; (g) the name and case number of all objections to class action settlements made by the you in the past five (5) years; and (h) your signature. This objection must be filed with the Court and served on Class Counsel no later than [date]. Send your objection to:

Clerk of the Court
United States District Court
Southern District of Florida
400 North Miami Ave.
Miami, FL 3312B

James C. Shah
Shepherd, Finkelman, Miller & Shah, LLP
35 E. State Street
Media, PA 19106

David K. Callahan
Latham & Watkins LLP
330 N. Wabash, Suite 2800
Chicago, IL 60611

## 16. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class or the lawsuit. You cannot request exclusion **and** object to the settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

# RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUIT

## 17. In return for these benefits, what am I giving up?

If the Court approves the proposed settlement and you do not request to be excluded from the Class, you must release (give up) all claims that are subject to the Release, and the case will be dismissed on the merits and with prejudice. **If you remain in the Class, you may not assert any of those claims in any other lawsuit or proceeding. This includes any other lawsuit or proceeding already in progress.**

## THE FINAL APPROVAL HEARING

### 18. When and where will the Court decide whether to approve the settlement?

The Judge will hold a Final Approval Hearing at [TIME] on [DATE] at the United States District Court for the Southern District of Florida, 400 North Miami Ave., Miami, FL 33128. At this hearing, the Judge will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Judge will consider them. The Judge will listen to people who have asked to speak at the hearing. After the hearing, the Judge will decide whether to approve the settlement. We do not know how long this decision will take.

### 19. Do I have to come to the hearing?

No. Class Counsel will answer questions the Judge may have, but you are welcome to come at your own expense. If you submit an objection, you do not have to come to the Court to talk about it. As long as you deliver your written objection on time, the Judge will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 20. May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file with the Court a ”Notice of Intention to Appear in *Gay, et al. v. Tom's of Maine, Inc.*, 0:14-CV-60604-KMM.” Be sure to include your name, address, telephone number, your signature and *a statement under penalty of perjury that you are a member of the Class* (i.e., that you purchased one of the Naturals Products during the class period). Your Notice of Intention to Appear must be filed no later than [DATE], and be provided to the Clerk of the Court, Class Counsel, and Defense Counsel at the three addresses listed above.

## GETTING MORE INFORMATION

### 21. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by writing or on the internet at www.xxxxxxxxxxxx.com.

If you have questions about how to complete a Claim Form, you can call the Claim Administrator at 1-8xx-xxx-xxxx.

**PLEASE DO NOT CALL OR WRITE TO THE COURT FOR INFORMATION OR ADVICE.**

/s/ K. Michael Moore

DATED: ______________________________

BY ORDER OF THE U.S. DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

# EXHIBIT 8

***Gay, et al. v. Tom's of Maine, Inc.***

| **CLAIM FORM** | | |
|---|---|---|
| **Must be received online or postmarked if mailed no later than [DATE].** | **TOM'S OF MAINE SETTLEMENT**<br>**C/O DAHL ADMINISTRATION**<br>**PO BOX 3614**<br>**MINNEAPOLIS MN 55403-0614**<br>Toll-Free: 1-XXX-XXX-XXXX<br>Fax: 1-952-562-3625<br>Website: www.xxxxxxxxxxxxxxxx.com | This is a two-sided Claim Form. All four Sections of the Claim Form must be completed. |

**You can also file a claim online at:** www.xxxxxxxxxxxxxxxx.com.

## Section I - Class Member Information

**Claimant Name:**

**Street Address:**

**City:** **State:** **Zip Code:**

**Email:**

**Preferred Phone Number:**

## Section II – Covered Products Included in this Settlement

Covered Products that may be included on a valid Claim Form are any Tom's of Maine, Inc. toothpaste, deodorant/antiperspirant, soap, sunscreen, diaper cream, body wash, shampoo, hand/body lotion, lip gloss/shimmer, lip balm, mouthwash or any other personal or oral care product sold in the United States during the Class Period of March 25, 2009 to [DATE], and which is labeled, advertised or promoted as "natural," or, in the case of deodorant/antiperspirant, is labeled, advertised or promoted as "naturally dry."

## Section III – Purchase and Product Information

| **Natural Product(s) Purchased** *(fill in all that apply)* | **Location of Purchase** | **Number Purchased** |
|---|---|---|
| O Toothpaste | ________________ | ________ |
| O Antiperspirant/Deodorant | ________________ | ________ |
| O Soap | ________________ | ________ |
| O Lip Balm/Gloss | ________________ | ________ |
| O Sunscreen | ________________ | ________ |
| O Body Lotion | ________________ | ________ |
| O Hand Cream | ________________ | ________ |
| O Mouthwash | ________________ | ________ |
| O Other (*name below*) ________________ ________________ | ________________ | ________ |

*Note:* A Settlement Class Member is eligible to obtain $4.00 for each purchase of a Covered Product for up to 7 Covered Products purchased during the period defined in the Settlement Class (up to $28 per person). However, the actual amount paid to individual claimants will depend upon the number of valid claims made.

## Section IV – Required Affirmation

**With my signature below I affirm that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Covered Products claimed above in the United States during the Class Period of March 25, 2009 to [DATE] for personal or household use and not for resale.**

SIGNATURE: ________________________________ DATE: ____________________

***Note:*** *The Settlement Administrator has the right to request verification or more information regarding the claimed purchase of Tom's Natural Products for purposes of preventing fraud. If the Class Member does not timely comply or is unable to produce documents or information to substantiate the Claim Form and the Claim is otherwise not approved, the Settlement Administrator may disqualify the Claim.*

**All Claim Forms must be postmarked (if mailed) or electronically submitted online**

**by [DATE], to:**

| | | |
|---|---|---|
| **TOM'S OF MAINE SETTLEMENT**<br>**C/O DAHL ADMINISTRATION**<br>**PO BOX 3614**<br>**MINNEAPOLIS MN 55403-0614** | **OR** | www.xxxxxxxxxxxxxxxxxxxxxxxxx.com |

# EXHIBIT 9

**Dahl Administration Announces Class Action Settlement in the *Gay, et al. v. Tom's of Maine, Inc.* Litigation**

MINNEAPOLIS, MN<<DATE>> /PRNewswire/ -- A proposed settlement has been reached in a class action lawsuit about the packaging and advertising of Tom's of Maine products. The plaintiffs in the lawsuit claim that Tom's of Maine mislabeled its Products by describing them as "natural." Tom's of Maine denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

*Am I a Class Member?* You are a Class Member if you bought at least one of the Tom's of Maine Covered Products from March 29, 2009 through [DATE], for individual or household use and not for resale. Excluded from the Class are Tom's of Maine and its board members, officers, and attorneys; governmental entities; the Court presiding over the settlement; those with claims for personal injuries, and those persons who timely and validly request exclusion from the Settlement Class.

*What Can I Get From the Settlement?* A fund of $4.5 million will be created to pay Class Members for a portion of the cost of Covered Products they purchased, for notice and claim administration costs and attorneys' fees and expenses. Tom's will also make changes to the labels for the Tom's of Maine products and to its website.

Settlement Class Members may submit a properly completed and timely filed Claim Form and be eligible to receive a cash refund of up to $28. These awards may be subject to *pro rata* upward or downward adjustment depending on the number of claims approved. A detailed Class Notice and copies of the Claim Form are available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

*What are My Options?* To ask for a cash payment and stay in the Class, you must send in a Claim Form by [DATE]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [DATE]. The detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx explains how to exclude yourself from the settlement. If you exclude yourself, you can't get money from this settlement if it is approved. If you're a Class Member, you may object to any part of the settlement you don't like, and the Court will consider your views. Your objection must be timely, in writing and must provide evidence of your membership in the Class. Procedures for submitting objections are set out in the detailed notice available at www.xxxxxxxxxxxxxxx.com or by calling 1-8xx-xxx-xxxx.

The Court will hold a Final Fairness Hearing at ____ a.m./p.m. on ________ in ________, Florida. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate and whether to approve the Class Representatives' incentive awards of up to $2,000 each and attorneys' fees up to $1,035,000.00 and expenses not to exceed $50,000.00. You may attend the hearing, and you may hire your own lawyer, but you are not required to do either. The Court will consider timely written objections and will listen to people who have made a prior written request to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

*What If I Have Questions?* This Notice is just a summary. Detailed notice, as well as the Settlement Agreement and other documents filed in this lawsuit, can be found online at www.xxxxxxxxxxxxxxx.com. For more information, you may call or write to the Settlement

Administrator at 1-8xx-xxx-xxxx, Tom's of Maine Settlement, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614 or info@xxxxxxxxxxxxxxxxxx.com.

QUESTIONS? CALL 1-8xx- xxx-xxxx or VISIT www.xxxxxxxxxxxxxxx.com

MEDIA: Jeff Dahl, 952-562-3601

SOURCE: DAHL ADMINISTRATION, LLC

RELATED LINKS: www.xxxxxxxxxxxxxxx.com

# EXHIBIT 10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

ALLISON GAY, SANDAHL NELSON, MOLLY MARTIN, LORETTE KENNEY, CLAUDIA MORALES AND GENEVIEVE GAMEZ, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

vs.

TOM'S OF MAINE, INC.,

Defendant.

No. 0:14-CV-60604-KMM

CLASS ACTION

**[PROPOSED] FINAL SETTLEMENT ORDER AND JUDGMENT**

IT IS HEREBY ADJUDGED AND DECREED THAT:

1. This Judgment incorporates by reference the definitions in the Joint Stipulation of Settlement dated _________, 2015 ("Agreement"), attached as Exhibit A, and all capitalized terms used herein shall have the same meanings as set forth in the Agreement unless set forth differently herein. The terms of the Agreement are fully incorporated in this Judgment as if set forth fully herein.

2. The Court has jurisdiction over the subject matter of this action and all Parties to the Aaction, including all Settlement Class Members ("Class Members") who do not timely exclude themselves from the Class. The list of excluded Class Members was filed with the Court on FILL IN DATE and is attached as Exhibit B.

3. Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court hereby certifies the following Class:

> All individuals in the United States who purchased Tom's of Maine products from March 25, 2009 until (the date notice of this Settlement to the Class is first published). Specifically excluded from the Class are (i) those who purchased Covered Products for purpose of resale; (ii) those with claims for personal injuries arising from the use of Covered Products; (iii) Defendant and its officers, directors and employees; (iv) any person who files a valid and timely Request for Exclusion; and (v) the Judges to whom this Action is assigned and any members of their immediate families.

4. Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such persons or entities who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Class, are Class Members bound by this Judgment.

5. For settlement purposes only, the Court finds:

(a) Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are members of the Class, their claims are typical of the Class, and they fairly and adequately protected the

interests of the Class throughout the proceedings in the Action. Accordingly, the Court hereby appoints Plaintiffs as Class representatives;

(b) The Class meets all of the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) for certification of the Class claims alleged in the First Amended Complaint filed by Plaintiffs, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representative and Class Counsel; (e) predominance of common questions of fact and law among the Class for purposes of settlement; and (f) superiority; and

(c) Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, Class Counsel have fairly and adequately represented the Class for purposes of entering into and implementing the settlement. Accordingly, the Court hereby appoints Class Counsel as counsel to represent Class Members.

6. Persons or entities who filed timely exclusion requests are not bound by this Judgment or the terms of the Agreement and may pursue their own individual remedies against Defendant. However, such excluded parties are not entitled to any rights or benefits provided to Class Members by the terms of the Agreement. The list of persons and entities excluded from the Class because they filed timely and valid requests for exclusion is attached hereto as Exhibit B.

7. The Court directed that notice be given to Class Members by publication and other means pursuant to the notice program proposed by the Parties in the Agreement and approved by the Court. The Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan attesting to the dissemination of the notice to the Class, demonstrates compliance with this Court's Preliminary Approval Order. The Class Notice advised Class Members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights

to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class.

8. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.

9. Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based upon all submissions of the Parties and other persons that the settlement proposed by the Parties is fair, reasonable, and adequate. The terms and provisions of the Stipulation are the product of arm's-length negotiations conducted in good faith and with the assistance of an experienced mediator, the Honorable Peter J. Lichtman (retired). The Court has considered any timely objections to the Settlement and finds that such objections are without merit and should be overruled. Approval of the Stipulation will result in substantial savings of time, money and effort to the Court and the Parties, and will further the interests of justice.

10. Upon the Effective Date, the named Plaintiffs and each Class Member (other than those listed on Exhibit B) shall be deemed to have, and by operation of this Final Settlement Order and Judgment shall have, released all Released Claims as defined in the Agreement.

11. All Class Members who have not timely and validly submitted requests for exclusion are bound by this Judgment and by the terms of the Agreement.

12. The Plaintiffs in the Action initiated this lawsuit, acted to protect the Class, and assisted their counsel. Their efforts have produced the Agreement entered into in good faith that provides a fair, reasonable, adequate and certain result for the Class. Plaintiffs are each entitled

to an incentive award of $____. Class Counsel is entitled to reasonable attorneys' fees and expenses, which the Court finds to be $____.

13. The Court hereby dismisses with prejudice the Action, and the Released Parties are hereby released from all further liability for the Released Claims.

14. The Court enjoins all Class Members from (i) filing, commencing, prosecuting, intervening in or participating as a plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on the Released Claims; (ii) filing, commencing or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on claims made in this Litigation; (iii) pursuing any Released Claims; and (iv) attempting to effect Opt-Outs of individuals or a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims.

15. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration and enforcement of this Judgment and the Stipulation, and all matters ancillary thereto.

16. The Court finds that no reason exists for delay in ordering final judgment pursuant to Federal Rule of Civil Procedure 54(b), the clerk is hereby directed to enter this Judgment forthwith.

17. The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such modifications and expansions of the Agreement, including

without limitation, the claim review procedure, that are consistent with this Judgment and do not limit the rights of Class Members under the Agreement.

IT IS SO ORDERED.

DATED: ____________________________

____________________________________
THE HONORABLE K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE