**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ALLISON GAY, SANDAHL NELSON, ) **No: 14-cv-60604-KMM**
MOLLY MARTIN and GENEVIEVE )
GAMEZ, On Behalf of Themselves and All )
Others Similarly Situated, )
 )
      Plaintiffs, )
 )
   vs. )
 )
TOM'S OF MAINE, INC., )
 )
      Defendant. )
 )
 )
 )

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT, APPLICATION FOR SERVICE AWARDS,**
**AND CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND**
**EXPENSES**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

I.      THE SETTLEMENT ....................................................................................... 1

II.     HISTORY OF THE LITIGATION ................................................................. 4

III.    PRELIMINARY APPROVAL, NOTICE AND ADMINISTRATION ........................ 5

IV.     THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR
        FINAL APPROVAL ....................................................................................... 6

        A.      The Standard For Granting Final Approval ........................................... 6

        B.      The Proposed Settlement Resulted From Serious, Informed, And
                Non-Collusive, Arm's-Length Negotiations .......................................... 7

        C.      The Complexity And Expense Of Further Litigation, And Plaintiffs'
                Obstacles To Obtaining Relief, Favor Approval Of The Proposed
                Settlement .......................................................................................... 8

        D.      The Stage Of Proceedings At Which Settlement Was Achieved Also
                Support Final Approval ........................................................................ 9

        E.      The Proposed Settlement Is Fair, Reasonable, And Adequate When
                Compared To The Possible Range Of Recovery ................................... 10

        F.      The Opinions Of Class Counsel, The Class Representative, And Absent
                Class Members Strongly Favor Approval Of The Settlement ................... 12

V.      THE PROPOSED SERVICE AWARDS TO THE CLASS
        REPRESENTATIVES ARE FAIR AND REASONABLE ........................................ 15

VI.     CLASS COUNSEL SHOULD BE AWARDED THE REASONABLE
        ATTORNEYS' FEES AND COSTS AUTHORIZED BY THIS COURT .................... 16

        A.      The Contingent Nature Of The Fee, Class Counsel's Financial Burden In
                Litigating This Case, And The Economics Of Prosecuting A Class Action
                Support The 23% Award ....................................................................... 17

        B.      The Requested Fees Are Below The Market Rate In Complex, Contingent
                Litigation ........................................................................................... 17

        C.      The Novelty And Difficulty Of The Questions At Issue ........................ 18

        D.      The Skill, Experience, And Reputation Of Class Counsel ..................... 18

E.      The Results Achieved For The Class ................................................................. 19

F.      The Time And Labor Of Class Counsel ............................................................. 19

G.      The Reaction Of The Class ................................................................................ 19

H.      Class Counsel's Request For Reimbursement Of Costs Is
        Warranted ........................................................................................................... 20

VII.    CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Access Now, Inc. v. Claire's Stores, Inc.*,
   2002 WL 1162422 (S.D. Fla. May 7, 2002) ............................................................................ 9

*Allapattah Servs., Inc. v. Exxon Corp.*,
   2006 U.S. Dist. LEXIS 88347 (S.D. Fla. Apr. 7, 2006) ..................................................... 15, 17

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 543 (S.D. Fla. 1988) ............................................................................................ 9, 10

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ....................................................................................... 6, 7, 10, 11

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982) aff'd, 737 F.2d 982 (11th Cir. 1984) ..................................... 14

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   587 F. Supp. 2d 1266 (N.D. Ga. 2008) .................................................................................... 20

*Chavez v. Netflix, Inc.*,
   75 Cal. Rptr. 3d 413 (Ct. App. 2008) ...................................................................................... 13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................................... 7, 9

*Curry v. AvMed, Inc.*,
   2014 WL 7801286 (S.D. Fla. Feb. 28, 2014) .......................................................................... 15

*Domonoske v. Bank of Am., N.A.*,
   790 F. Supp. 2d 466 (W.D. Va. 2011) ..................................................................................... 12

*Figueroa v. Sharper Image Co.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) .............................................................................. 10, 11

*Fladell v. Wells Fargo Bank, N.A.*,
   2014 WL 5488167 (S.D. Fla. Oct. 29, 2014) .......................................................................... 13

*Fresco v. Auto. Directions, Inc.*,
   2009 WL 9054828 (S.D. Fla. Jan. 20, 2009) .......................................................................... 15

*Greco v. Ginn Dev. Co., LLC*,
   2015 WL 7755673 (11th Cir. Dec. 2, 2015) ........................................................................... 14

*Grunin v. International House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ................................................................. 14

*Hillis v. Equifax Consumer Servs., Inc.*,
2007 WL 1953464 (N.D. Ga. June 12, 2007) ......................................... 13

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................ 14, 18

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) ............................................................. 8

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ................................................................. 10

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ........................................................... 12

*In re LivingSocial Mktg. & Sales Practice Litig.*,
298 F.R.D. 1 (D.D.C. 2013) ................................................................... 14

*In re Managed Care Litig. v. Aetna*,
2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ....................................... 18

*In re Mex. Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................... 7

*In re NVIDIA GPU Litig.*,
539 F. App'x 822 (9th Cir. 2013) .......................................................... 13

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ................................................................. 6

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .......................................................... 8

*In re WorldCom, Inc. Sec. Litig.*,
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ....................................... 13

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ................................................................. 16

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................. 13

*Lane v. Facebook, Inc.*,
   709 F.3d 791 (9th Cir. 2013) ..................................................................... 13

*Lipuma v. Amer. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ....................................... 8, 9, 11, 15

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) ............................................................. 8

*Miller v. Ghiradelli Chocolate Co.*,
   2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ............................................. 14

*Nelson v. Mead Johnson & Johnson Co.*,
   484 Fed. Appx. 429 (11th Cir. 2012) .......................................................... 6

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................. 7. 9, 11

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 1334 (S.D. Fla. 2007) ..................................... 16, 17, 19

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) .......................................................... 10

*Tapken v. Brown*,
   1992 WL 178984 (S.D.Fla.1995) ............................................................... 18

*Wal-Mart Stores, Inc. v. Buholzer*,
   156 F. App'x 346 (2d Cir. 2005) ............................................................... 13

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) .......................................................... 12

*Waters v. Intl Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ........................................................... 13, 18

*Young v. Katz*,
   447 F.2d 431 (5th Cir. 1971) ....................................................................... 6

## **Statutes**

Fed. R. Civ. P. 23 ............................................................................................. 5

## **Other Authorities**

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions

§ 11.41 (4th ed. 2002) ............................................................................................................... 7

California Consumers Legal Remedies Act, Civ. Code § 1750, *et seq.* ....................................... 4

Plaintiffs, Allison Gay, Sandahl Nelson, Lorette Kenney, Claudia Morales, Molly Martin and Genevieve Gamez (collectively, "Plaintiffs"), respectfully submit this memorandum in support of Plaintiffs' motion for an order granting final approval of the settlement entered into between Plaintiffs and Defendant, Tom's of Maine, Inc. ("Tom's" or "Defendant") (the "Parties"), which was preliminary approved by this Court on September 9, 2015.  *See* D.E. 21.

## I.    THE SETTLEMENT

This class action arises from Defendant's marketing and sale of consumer products, including toothpaste, deodorant/antiperspirant, soap, sunscreen, diaper cream, body wash, shampoo, hand/body lotion, lip gloss/shimmer, lip balm, and mouthwash (the "Product(s)" or "Covered Products"), which Defendant allegedly falsely and misleadingly represented to consumers as being " natural" products containing "natural" ingredients ("Natural Claims"). Plaintiffs assert that Defendant violated multiple states' deceptive and unfair trade practices and warranty laws, and was unjustly enriched.  Defendant denies these allegations.

After extensive, arm's-length settlement negotiations, the Parties reached a settlement in this Action ("Settlement"), the terms of which are fully set forth in the Joint Stipulation of Settlement ("Agreement"), attached as Exhibit "A" to the Declaration of Nathan C. Zipperian in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Zipperian Prelim. App. Decl.").  *See* D.E. 20-2.[1]  Under the Agreement, Tom's has created a non-reversionary Settlement Fund in the amount of $4,500,000 from which Settlement Class Members will be reimbursed at least $4.00 for each purchase of a Covered Product (*see* Agreement, §§  II.A.15-16), for up to seven Covered Products, purchased during the Class

_____

[1] Unless otherwise noted, all capitalized terms have the same meaning as in the Agreement.

1

Period, without the need to present proof of purchase.[2]  *Id.*  In addition, Tom's has made the following labeling and advertising changes as a supplement to its prior disclosures regarding the Covered Products for a period of at least three years:

a.  Tom's will provide information about each of the ingredients in its Products on its website (presently located at www.tomsofmaine.com) in an easy-to-access manner, such as the manner identified in the screenshots located at Exhibit 2 of the Agreement.  These changes will include at least the following:

   i.  Mention of "what's inside" Tom's products (or a word or words conveying a similar meaning) on the front page of Tom's main website, along with a link to a page or pages providing information about each of the ingredients in the Covered Products; and

   ii.  Mention of Tom's "standard" as guided by its Stewardship Model (or a word or words conveying a similar meaning) for the use of terms including at least "natural," "sustainable," and "responsible," along with a link to a page or pages providing information about those terms as used relative to the Covered Products;

b.  Tom's will provide the address of its website in a conspicuous location on all of its product packaging, such as the manner identified in the photographs located at Exhibit 3 of the Agreement; and

c.  Tom's shall, where practical, print on its product packaging language identifying Tom's stewardship model and providing a quick way for

---

[2] If the total amount of the timely, valid, and approved Eligible Claims submitted by Settlement Class Members exceeds the available relief, each eligible Settlement Class Member's Initial Claim Amount shall be proportionately reduced on a *pro rata* basis, such that the aggregate value of the cash payments does not exceed the Settlement Fund balance.  If the total amount of the timely, valid, and approved Eligible Claims submitted by Settlement Class Members results in there being any remaining value in the Settlement Fund, it shall be used to increase eligible Settlement Class Members' relief on a *pro* rata basis such that Settlement Class Members shall receive an increased payment of up to one hundred percent (100%) of the Eligible Class Members' Initial Claim Amount.

consumers to access it and Tom's definition of "natural," such as the examples identified in Exhibit 4 of the Agreement.

*Id.*  Lastly, Tom's will pay all the costs of Notice and Claims Administration Expenses, Attorneys' Fees and Expenses, and Incentive Awards.  *Id.*

Consistent with the Court's Order granting preliminary approval of the Settlement, notice advising Settlement Class Members of their Settlement benefits and rights was provided via internet, directed website, national publication, and direct mail.  *See* Declaration of Jeffrey D. Dahl With Respect to Implementation of Notice Plan and Performance of Required Settlement Administration Activities ("Dahl Decl.") of Dahl Administration ("Dahl"), attached as Exhibit "1" to the Declaration of James C. Shah ("Shah Decl.").  To date, 61,294 persons have submitted Claim Forms, and Dahl estimates that, at the conclusion of the Claims Period, between 100,000 and 120,000 Claim Forms will be submitted.  *Id.* at ¶¶ 31, 34.  Moreover, only two Settlement Class Members have objected to the Settlement and only one has requested exclusion.  Shah Decl. at ¶ 17.  The Settlement is expected to provide, on average, Settlement Class Members who submit timely and valid Claim Forms approximately $25 in monetary compensation.  Dahl Decl. at ¶ 32.  Accordingly, in comparison to the number of claims filed (and expected to be filed), the reaction of the Class Members has been overwhelmingly positive.

Now that all Court-ordered directives and deadlines have been satisfied by the Parties, the Court should grant final approval of the Settlement, which provides meaningful economic benefits to Settlement Class Members, as well as significant injunctive relief requiring labeling and additions to advertising related to the Covered Products.  Moreover, the Settlement is the product of protracted arm's-length negotiations, overseen by a well-respected and experienced mediator, the Honorable Peter D. Lichtman (Ret.) of JAMS ("Judge Lichtman"), during multiple

3

mediations sessions over the course many months.  Lastly, as this Court has already determined, the attorneys' fees and expenses requested by Class Counsel are reasonable and consistent with the parameters established by the Eleventh Circuit (D.E. 18), as are the service awards requested for each of the Plaintiffs.  Thus, the Settlement should be approved.

## II.    HISTORY OF THE LITIGATION

On March 7, 2014, Plaintiff Gay filed a class action complaint against Tom's on behalf of herself and all others similarly situated in the United States District Court, Southern District Court of Florida, Case No. 14-cv-60604-KMM (the "Complaint").  *See* D.E. 1.  Before the Complaint was filed, Class Counsel extensively investigated the factual allegations ultimately made in the Complaint.  *See* Zipperian Prelim. App. Decl., at ¶ 7, D.E. 20-1.[3]

After serving the Complaint, counsel for Plaintiff Gay was informed that there were ongoing mediation proceedings between Defendant and Plaintiffs Nelson and Martin, who had served letters pursuant to the CLRA on Defendant on, respectively, March 25, 2013 and April 9, 2013, regarding similar claims in California against Defendant and that they had been meeting with Defendant since December 2013.  *Id.* at ¶ 8, D.E. 20-1.  With the agreement of Defendant and Plaintiffs Nelson and Martin, Plaintiff Gay and her counsel joined the ongoing mediation proceedings.  *Id.* at ¶ 9, D.E. 20-1.  On April 9, 2014, Tom's filed an unopposed motion requesting an extension of time to answer the Complaint (D.E. 8), which the Court granted in

---

[3] Prior to that, Plaintiff Nelson served a letter pursuant to the California Consumers Legal Remedies Act, Civ. Code § 1750, *et seq.* ("CLRA") regarding the Natural Claims of certain of Tom's products on April 9, 2013, while Plaintiff Martin likewise served a CLRA letter regarding the Natural Claims for certain of Tom's products on April 9, 2013.  On April 30, 2014, Plaintiff Gamez filed a lawsuit in the U.S. District Court for the Central District of California, captioned *Gamez v. Tom's of Maine, Inc.*, CV-14-03336-CAS, regarding the Natural Claims for certain of Tom's products.  On May 12, 2014, counsel for Plaintiffs Kenney and Morales also served a letter pursuant to the CLRA regarding the Natural Claims of certain of Tom's products, on behalf of themselves and all others similarly situated who purchased Defendant's products.

part and denied in part on April 15, 2014, granting an extension of time for Tom's to respond to the Complaint to April 29, 2014 (D.E. 9), to facilitate such mediation. *Id.* at ¶ 10, D.E. 20-1. Thereafter, on April 21, 2014, counsel for the Parties scheduled a mediation session in an attempt to resolve the dispute and on the following day, and the Parties confirmed the session before Judge Lichtman in Los Angeles, California, for May 27, 2014. *Id.* at ¶ 11, D.E. 20-1; D.E. 10. In the meantime, on April 30, 2014, counsel for Plaintiff Gamez filed a similar lawsuit in the Central District of California, captioned *Gamez v. Tom's of Maine, Inc.*, Case No. cv-14-03336, while counsel for Plaintiffs Kenney and Morales also served a CLRA letter regarding similar claims for certain of Tom's products on May 12, 2014. *Id.* at ¶ 13, D.E. 20-1. Counsel for Plaintiffs Nelson, Martin, and Gay prepared, exchanged, and submitted mediation briefs, and met with counsel for Tom's on May 27, 2014. *Id.* at ¶ 14, D.E. No. 20-1. Over the course of the following months, with the assistance of Judge Lichtman, the Parties negotiated the precise terms of the Settlement, finalizing the Settlement Agreement on July 24, 2015. *Id.* at ¶ 15, D.E. 20-1.

## III.    PRELIMINARY APPROVAL, NOTICE AND ADMINISTRATION

The Court preliminarily approved the terms of the Agreement and certified the proposed Settlement Class on September 9, 2015. *See* D.E. 21. The Court found that "the Settlement falls within the range of reasonableness meriting possible final approval." *Id*. at 3. The Court also approved the proposed Class Notice and Notice Plan, with Dahl serving as the Court-appointed Settlement Administrator, finding that it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice. *Id*. at 4-5.

Pursuant to the Agreement, Dahl provided notice to Settlement Class Members in myriad ways, including by (1) direct mail; (2) print publication; (3) web-based means; (4) keyword

search; (5) social media; and (6) press release.  *See* Dahl Decl., ¶¶ 8-22.  In addition, Dahl

created a Settlement website and toll-free Settlement information line.  As set forth in more

detail in the Dahl Decl., the Notice Plan resulted in more than 123 million web impressions and

the publication notice was displayed to an estimated 45 million readers.  *See* Dahl Decl., ¶ 23.

The last day to request exclusion from and/or object to the Settlement is December 29,

2015.  To date, 61,294 persons have submitted Claim Forms and the Settlement Administrator

projects that approximately 100,000 to 120,000 claims will be filed.  *Id*. at ¶¶ 31, 34.  Moreover,

only two Settlement Class Members have objected to the Settlement and only one Settlement

Class Member has requested to be excluded from the Settlement.  The deadline for filing claims

is May 7, 2016, and, by that time, the Settlement is expected to provide each Settlement Class

Member who submitted a timely and valid Claim Form a cash payment of approximately $25.

*Id*. at ¶ 32.

## IV.   THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

### A.   The Standard For Granting Final Approval

The approval of a proposed class action settlement is a matter within the Court's broad

discretion and will not be overturned unless it "clearly abused its discretion in approving the

settlement."  *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971).  In making this determination, the

Court should evaluate the settlement's fairness in its entirety.  *Bennett v. Behring Corp.*, 737

F.2d 982, 986 (11th Cir. 1984).  Settlements of class actions prior to trial are strongly favored.

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012) ("[o]ur

judgment is informed by the strong judicial policy favoring settlements as well as by the

realization that compromise is the essence of settlement"); *In re U.S. Oil & Gas Litig*., 967 F.2d

6

489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

On final approval, the Court considers whether the settlement is fair, adequate, and reasonable, and not the product of collusion between the parties. *Bennett*, 737 F.2d at 986; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted); *Cotton*, 559 F.2d at 1330-31 ("In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted). Instead, the Court considers the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and duration of litigation; (3) the probability of the plaintiffs' success on the merits; (4) the stage of proceedings at which the settlement was achieved; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement received. *Bennett*, 737 F.2d at 986. Here, the proposed Settlement plainly satisfies the standard for final approval.

### B. The Proposed Settlement Resulted From Serious, Informed, And Non-Collusive Arm's-Length Negotiations

The requirement that a settlement be fair is designed to protect against collusion among the parties. Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002); *see also*

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) ("the court 'must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel'"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

Here, the Parties only reached the Settlement after three intensive and extensive mediation sessions with Judge Lichtman (and prolonged further discussions), beginning in December 2013.  Moreover, the mediation process only occurred after both sides prepared, exchanged, and submitted thorough briefs and relevant information on their respective positions and strengths and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). And even then, the Settlement was only reached on principle; it took almost a year for all of the details to be ironed out in the Agreement to ensure that the execution of the Settlement will have the practical effects that achieve the intended goals of the litigation.

Together, Class Counsel negotiated a comprehensive and fair resolution for the claims asserted in the litigation, and the Settlement was clearly the result of informed, adversarial, and arm's-length negotiations between the Parties.

### C.    The Complexity And Expense Of Further Litigation, And Plaintiffs' Obstacles To Obtaining Relief, Favor Approval Of The Proposed Settlement

The expense, complexity, duration, and challenges of litigation are significant factors in evaluating the reasonableness of a settlement.  In considering this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive

litigation." *Lipuma v. Amer. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F.Supp.2d at 1381 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988)).

Litigating this class action through trial would undoubtedly be time-consuming and expensive, while the results achieved may be no better than the terms reached by the Parties in the Settlement. As with most class actions, this litigation is complex. *Cotton*, 559 F.2d at 1331 ("class action suits have a well-deserved reputation as being most complex"). This is particularly true in this case, given the interplay of the consumer protection laws of multiple jurisdictions and the potentially preemptive effect of federal law. Determining whether Tom's engaged in unfair methods of competition, unconscionable acts and practices, unfair and deceptive acts and practices, and whether the "Natural Claims" were material and false, would require experts and extensive briefing by both Parties before the issues could be presented to the factfinder. At a minimum, absent the Settlement, litigation would likely continue for years before Plaintiffs or the Settlement Class might see any recovery. That a settlement would eliminate the delay in obtaining a recovery and the expenses of litigation strongly weighs in favor of approval. *See Lipuma*, 406 F. Supp. 2d at 1323 (when additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush.").

### D. The Stage Of Proceedings At Which Settlement Was Achieved Also Supports Final Approval

The purpose of this factor is "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383; *see also Access Now, Inc. v. Claire's*

*Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action.").  In the context of early settlements, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.").

Here, even though the litigation is at its early stages, the Agreement was reached only after Class Counsel extensively investigated the factual allegations giving rise to the Complaint; analyzed the substantial information Defendant provided regarding its practices, including its advertising, labels, contents, and sales of the Products; and engaged in extensive negotiations with Defendant over a lengthy period of time.  Class Counsel ensured they had sufficient information necessary to meaningfully evaluate the strengths and weaknesses of the Settlement Class's claims and to weigh the benefits of the Agreement.

E.      **The Proposed Settlement Is Fair, Reasonable, And Adequate When Compared To The Possible Range Of Recovery**

As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members."  *Figueroa v. Sharper Image Co.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (quoting *Lipuma*, 406 F.Supp.2d at 1322).  When considering the question of a possible recovery, the focus is on the possible recovery at trial.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 212.  However, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."  *Behrens*, 118

F.R.D. at 542; *see also Bennett* 737 F.2d at 986 (where range of possible recovery is zero to $12,000,000, a settlement fund of $675,000.00 (or 5.6%) is a fair and adequate sum in view of the risks of further litigation and the fact that damages are not the primary goal of this lawsuit); "[T]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326. "Moreover, the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323 (citing *Bennett*, 737 F.2d at 986)).

The proposed Settlement is fair, reasonable, and adequate because, as discussed above, it squarely addresses and resolves the issues raised by Plaintiffs in this litigation by providing monetary compensation to Settlement Class Members and injunctive relief to protect future consumers of the Covered Products. Under the Agreement, Settlement Class Members will receive at least $4.00 for each purchase of a Covered Product and they may file for up to seven Covered Products. Additionally, Tom's will be required to implement concrete labeling and advertising changes to augment its prior disclosures regarding the Covered Products for a period of at least three years, as well as pay for both Class Notice and the costs of Claims Administration. These are meaningful benefits to the Settlement Class. *See Lipuma*, 406 F. Supp. 2d at 1323 (approving settlement providing monetary payments and injunctive relief).

Moreover, by reaching this Settlement, the Parties have established a means for prompt resolution of the claims against Tom's, while avoiding protracted and expensive litigation that could lead to little or no recovery at all. Given the alternative of long and complex litigation before this Court (and other courts), the risks involved in such litigation, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is also highly

beneficial to the Settlement Class Members.  *See Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

    **F.**    **The Opinions Of Class Counsel, The Class Representative; And Absent Class Members Strongly Favor Approval Of The Settlement**

The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."  *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.  The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (internal quotations omitted)).  Here, Class Counsel deem the Settlement to be fair and equitable to the Settlement Class.  *See* Zipperian Prelim. App. Decl. at ¶ 6, D.E. 20-1.

Moreover, the overwhelmingly positive response from absent Class members further confirms that the Settlement fair.  As stated above, to date, only one Settlement Class Member has opted-out and only two Settlement Class Member objected.[4]  *See* Shah Decl., ¶ 17; D.E. 25 [Objection of David A. Balz ("Objector Balz")], and 27 [Objection and Notice of Intent to Appear of Steven Franklyn Helfand ("Objector Helfand")].  Objector Balz does not include any specific criticism of the Settlement terms in his objection; rather, he merely expresses support for Tom's products and a general disagreement with the litigation.  *See* D.E. 23, 25.  Such objections are insufficient to render a settlement inadequate.  *See, e.g., Domonoske v. Bank of Am., N.A.*,

---

[4] Plaintiffs note that December 29, 2015 is the deadline for objections and requests for exclusion. If additional timely objections or requests for exclusion are received, Plaintiffs will file supplemental briefing on or before the Court's January 14, 2016 deadline for submitting all papers in support of the Settlement to apprise the Court of the same.  *See* D.E. 21, ¶ 11.

790 F. Supp. 2d 466, 474 (W.D. Va. 2011) ("[A] philosophical disagreement with class action litigation, a general disagreement with this litigation in particular, or dissatisfaction with class counsel's requested attorney's fees . . . do not impugn the adequacy of the settlement itself.").

Objector Helfand, an attorney, is a well-known serial objector who has represented himself and third parties in objecting to multiple class action settlements. *See, e.g., Chavez v. Netflix, Inc*., 75 Cal. Rptr. 3d 413, 423-24 (Ct. App. 2008); *Wal-Mart Stores, Inc. v. Buholzer*, 156 F. App'x 346, 347 (2d Cir. 2005); *Lane v. Facebook, Inc*., 709 F.3d 791, 792 (9th Cir. 2013); *In re NVIDIA GPU Litig*., 539 F. App'x 822,823 (9th Cir. 2013); *In re WorldCom, Inc. Sec. Litig*., No. 02 CIV 3288(DLC), 2004 WL 2591402, at *9 (S.D.N.Y. Nov. 12, 2004); *Hillis v. Equifax Consumer Servs., Inc*., No. 104-CV-3400-TCB, 2007 WL 1953464, at *2 (N.D. Ga. June 12, 2007); *Lane v. Facebook, Inc*., 696 F.3d 811, 816 (9th Cir. 2012).

None of Objector Helfand's criticisms of the Settlement terms have merit. Specifically, the mere fact that the Settlement includes a so-called "clear-sailing" provision is immaterial, where, as here, "[t]here was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself." *Fladell v. Wells Fargo Bank, N.A*., No. 0:13-CV-60721, 2014 WL 5488167, at *4 (S.D. Fla. Oct. 29, 2014) (citing *Waters v. Intl Precious Metals Corp*., 190 F.3d 1291, 1293 n. 4 (11th Cir.1999)).

Objector Helfand also takes exception to the Class Notice and Claim Form, arguing that the Class Notice failed to disclose the clear-sailing provision, *cy pres* designee, scope of the release, and misstated the objection procedure, while the Claim Form omitted the perjury attestation set forth in the Agreement. This Court already expressly considered and approved the form and content of the Class Notice, as well as the Claim Form (s*ee* D.E. 21 at 4-6), and both

satisfy due process as they provide all of the pertinent information to the Class Members in a simple and easy-to-read format.  Moreover, "[i]t is not the function of the settlement notice to fully inform the class of all of the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to the specifics may be obtained." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982) aff'd, 737 F.2d 982 (11th Cir. 1984) (citing *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *Greco v. Ginn Dev. Co., LLC*, No. 14-11443, 2015 WL 7755673, at *6 (11th Cir. Dec. 2, 2015) (same).  The Class Notice readily satisfies this standard.  *See* Section III, *supra*.

Lastly, Objector Helfand's criticism of the Settlement's *cy pres* designee, Consumers Union, is unwarranted.  "The *cy pres* doctrine permits courts to distribute unclaimed settlement amounts to worthy charities, especially to charities whose purposes harmonize with the underlying lawsuit." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1354 (S.D. Fla. 2011).  As a non-profit organization whose mission to "is to work for a fair, just and safe marketplace for all consumers and to empower consumers to protect themselves," Consumers Union is unquestionably aligned with the consumer protection goals of this litigation.  *See* Declaration of Elisa Odabashian, attached as Exhibit "3" to the Shah Decl.; *see also* http://consumersunion.org/.  Indeed, Consumers Union has been approved by courts as the *cy pres* recipient in multiple consumer class action settlements.[5]  Ultimately, this criticism is purely

---

[5] *See, e.g.*, *Miller v. Ghiradelli Chocolate Co*., No. 12–cv–04936–LB, 2015 WL 758094, at *8 (N.D. Cal. Feb. 20, 2015) (listing other cases approving Consumers Union as *cy pres* recipient in false-advertising lawsuits); *In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D.1, 13 (D.D.C. 2013) (finding interests and activities of Consumers Union were "directly aligned with those advanced" in the lawsuit); *see also* Final Order and Judgment at ¶ 14, *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, No. 4:08-MD-1907-ERW (E.D. Mo. Feb. 26, 2013), ECF No. 356 (alleging false advertising concerning "organic" claims); Final Order

a matter of personal and political opinion and, thus, does not bear on the reasonableness, adequacy, and fairness of the Settlement.  Further, given the number of claims submitted, it is a virtual certainty that all of the Settlement Funds will be distributed to Class Members.

The fact that there are only two objections, only one of which even purports to criticize the substance of the Settlement, demonstrates that Class Members find the Settlement reasonable and fair, which strongly favors approval.  *See Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347, at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").

## V.   THE PROPOSED SERVICE AWARDS TO THE CLASS REPRESENTATIVES ARE FAIR AND REASONABLE

The Service Award of $2,000 requested for each Plaintiff should also be approved.  Both the Short-form and Long-form Notice advised Class Members that Plaintiffs would apply for a Service Award of $2,500, and no Class Members have objected to this request.  Moreover, an award of $2,000 is well within the range commonly approved by courts.  *See, e.g., Curry v. AvMed, Inc.*, No. 10-CV-24513-JLK, 2014 WL 7801286, at *3 (S.D. Fla. Feb. 28, 2014) (approving $5,000 service/incentive awards for each plaintiff); *Fresco v. Auto. Directions, Inc.*,

---

Approving Class Action Settlement at ¶ 7, *Trammel v. Barbara's Bakery, Inc*., No. 3:12-cv-02663-CRB (N.D. Cal. Nov. 8, 2013), ECF No. 70 (alleging false claims of "all natural" food products and incorporating terms of Settlement Agreement, ECF No. 37); Order and Final Judgment Approving Class Action Settlement, Awarding Attorneys' Fees and Expenses, and Awarding Class Representative Service Awards at Ex. A, *Golloher v. Todd Christopher Int'l Inc. Dba Vogue Int'l*, No. 3:12-cv-06002-RS (N.D. Cal. Apr. 25, 2014), ECF Nos. 79, 79-1 (alleging false claims of "organic" hair and skin care products); Order Preliminarily Approving Class Settlement Agreement, Conditionally Certifying the Settlement Class, Providing for Notice, and Scheduling Order at 2, *Baharestan v. Venus Labs., Inc., dba Earth Friendly Products, Inc*., No. 3:15-cv-03579-EDL (N.D. Cal. Nov. 5, 2015), ECF No. 23 (alleging false claims of "natural" products and incorporating Class Settlement Agreement, ECF No. 15-2).

No. 03-CIV-61063-MARTINEZ, 2009 WL 9054828, at *6 (S.D. Fla. Jan. 20, 2009) (approving $15,000 service/incentive awards for each plaintiff).  Lastly, by commencing this litigation, Plaintiffs have acted as private attorney generals seeking a remedy for the harm allegedly perpetrated on the public and enforcing consumer protection laws.  *See Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 1334, 1344 (S.D. Fla. 2007).  In doing so, Plaintiffs aided Class Counsel in the investigation and mediation of these claims, and were instrumental in bringing about the monetary and injunctive relief achieved through the Settlement.  In short, approval of the Service Awards is warranted as a matter of policy, is reasonable and appropriate under the applicable precedents, and Plaintiffs are clearly deserving of the Service Awards for their efforts on behalf of the Class.

## VI.   CLASS COUNSEL SHOULD BE AWARDED THE REASONABLE ATTORNEYS' FEES AND COSTS AUTHORIZED BY THIS COURT

Class Counsel seek an award of attorneys' fees in the amount of $1,035,000 (or 23% of the Settlement Fund), as well as reimbursement of expenses and costs in the amount of $50,000, in accordance with the Court's prior determination that these amounts are reasonable under the circumstances of this case.  *See* D.E. 18.  As this Court explained, an award of attorneys' fees must consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), including: (1) time and labor; (2) novelty and difficulty of the questions; (3) requisite skill; (4) preclusion of other employment; (5) customary fee; (6) fixed or contingent fee; (7) time limitations; (8) amount involved and results obtained; (9) experience, reputation, and ability of attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with client; and (12) award in similar cases.  *See* D.E. 18.  Consistent with the Court's prior findings, these factors support the full award Class Counsel requests.

16

**A.     The Contingent Nature Of The Fee, Class Counsel's Financial Burden In Litigating This Case, And The Economics Of Prosecuting A Class Action Support The 23% Award**

A determination of a fair fee award for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and non-payment in a class action are extremely high.  *See Pinto*, 513 F. Supp. 2d at 1339.  Here, Class Counsel have received no compensation during the course of this litigation, but they have incurred significant lodestar in the amount of $1,248,960.50, none of which would have been recoverable if the case had not been successfully concluded.  *See* Shah Decl., ¶ 11.  The requested attorneys' fees, thus, amounts to less than the lodestar incurred to date.  Even before filing suit, when Class Counsel undertook extensive investigation of the potential claims against Defendant, there existed a real possibility that they would achieve no recovery for the Class and, hence, no compensation.  This financial risk supports the fee award requested.

**B.     The Requested Fees Are Below The Market Rate In Complex, Contingent Litigation**

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients."  *Pinto*, 513 F. Supp. 2d at 1340.  In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients, which are the prevailing market rates throughout the United States for contingent representation.  *Id.* at 1341.  Thus, a fee of 23% of the Settlement Fund is below the market for class actions.  Moreover, when compared to the fees typically awarded in common fund cases, an award of 23% falls well within the range of awards.  *See, e.g., Allapattah Servs., Inc. v. Exxon*

*Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3%); *In re Terazosin*

*Hydrochloride Antitrust Litig*, 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of

33 1/3 %); *In re Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla.

Oct. 24, 2003) (35.5% of settlement); *Gutter v. E.I. Dupont De Nemours & Co*., 95–2152–Civ–

Gold (S.D. Fla. May 30, 2003) (33 1/3%); *Waters v. Int;l Precious Metals Corp*., 190 F.3d 1291

(11th Cir. 1999) (affirming fee award of 33 1/3%); *Tapken v. Brown*, Case No. 90-0691-CIV,

1992 WL 178984, Fed. Sec. L. Rep. P 96805 (S.D. Fla. 1995) (awarding 33%); *In re Home*

*Shopping Network Sec. Litig*., Case No. 87-428-T-13(A) (M.D. Fla. 1991) (awarding 33%).

## C.     The Novelty And Difficulty Of The Questions At Issue

This case presents complex questions of law and fact.  As explained above, determining

whether Tom's engaged in unfair methods of competition, unconscionable acts and practices,

unfair and deceptive acts and practices, and whether the "Natural Claims" were material and

false, would have required significant briefing, discovery, and expert analysis for both class

certification and merits determination.  The difficulty inherent in litigating these issues supports

the fee requested.

## D.     The Skill, Experience, And Reputation Of Class Counsel

Class Counsel's reputation, diligence, ability, expertise and skill is reflected in the

significant results achieved on behalf of their clients.  *See* D.E. 20-3 (Firm Resumes of Class

Counsel).  As a testament to the efficiency, skill, and expertise of Class Counsel's effort, this

Action was resolved quickly, with substantial and meaningful results provided to the Settlement

Class.  "[A]n early resolution may demonstrate that the parties and their counsel are well

prepared and well aware of the strength and weaknesses of their positions and of the interests to

be served by an amicable end to the case." *In re Checking Account Overdraft Litig.*, 830 F.Supp. at 1365. (quotation omitted).

### E.   The Results Achieved For The Class

The result achieved is a major factor to consider in making a fee award. *See Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").  Here, the Settlement provides both monetary compensation to Settlement Class Members and significant injunctive relief in the form of labeling and advertising changes to the Covered Products for a period of at least three years.  These are concrete, meaningful benefits to the Class that further support Class Counsel's fee request.

### F.   The Time And Labor Of Class Counsel

Settlement of this Action demanded considerable time and labor of Class Counsel.  To date, Class Counsel expended a total of 2,181.20 hours investigating and researching the claims asserted in the Complaint, conducting informal discovery, negotiating the Settlement, and working through the issues that arose during and after Settlement negotiations concluded.  *See* Shah Decl., ¶ 11.  Class Counsel's efforts have been of the highest quality, and as a result of their efforts, the case was well-positioned for settlement, thereby affording monetary and injunctive relief to the entire Class, while avoiding the inevitable expense and risk attendant with protracted litigation.  By any measure, Class Counsel's work in this case was tremendous, and strongly supports the requested fee award.

### G.   The Reaction Of The Class

Typically, a small number of objections indicates the support of the class.  *See Pinto*, 513 F. Supp. 2d. at 1343.  Here, with the exception of Objector Helfand, no Class Member has objected to Class Counsel's fee request.  Indeed, the Objector Helfand's objection is limited to

criticizing the Agreement's purported "clear-sailing" provision, not the amount of fees requested. *See* D.E. 27 at 2.  The absence of a single objection to the amount of fees sought by Class Counsel supports the fee request.

### H.   Class Counsel's Request For Reimbursement Of Costs Is Warranted

"Class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008).  Consistent with the Court's prior order (*see* D.E. 18), Class Counsel also request an award of less than $50,000 in unreimbursed out-of-pocket expenses.  *See* Shah Decl., ¶ 14 (current expenses incurred by Class Counsel are $25,953.53).  These expenses were necessarily incurred in connection with the successful prosecution and settlement of the Action and should be recovered.

## VII.   CONCLUSION

For the reasons set forth above, the Parties respectfully request the Court grant this motion and enter an Order: (1) granting final approval of the Settlement; (2) awarding each Plaintiff a service award in the amount of $2,000; and (3) awarding Class Counsel their reasonable attorneys' fees in the amount of $1,035,000, as well as reimbursement of their expenses and costs.

Dated: December 15, 2015        SHEPHERD, FINKELMAN, MILLER & SHAH, LLP


/s/ Nathan C. Zipperian
Nathan C. Zipperian (#61525)
Scott R. Shepherd (#69655)
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
Email:  nzipperian@sfmslaw.com

sshepherd@sfmslaw.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (866) 300-7367
Email: jshah@sfmslaw.com
        nfinkelman@sfmslaw.com

Jeffrey Feinberg
THE FEINBERG LAW FIRM
382 Springfield Ave, Suite 201
Summit, NJ 07901
Telephone: (212) 372-0297
Email: jfeinberg@nfcounsel.com

James F. Clapp
James T. Hannink
Zach P. Dostart
DOSTART CLAPP & COVENEY, LLP
4370 La Jolla Village Drive, Suite 970
San Diego, CA 92122-1253
Telephone:  (858) 623-4200
Facsimile:  (858) 623-4299
Email: jclapp@sdlaw.com
        jhannink@sdlaw.com
        zdostart@sdlaw.com

Clayton D. Halunen (Bar No. 219721)
Melissa Wolchansky (Bar No. 0387900)
HALUNEN LAW
1650 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099
Email: Halunen@halunenlaw.com
        wolchansky@halunenlaw.com

21

Michael R. Reese
REESE LLP
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-5272
Email: mreese@reeserichman.com
          krichman@reeserichman.com

Aashish Desai
DESAI LAW FIRM, P.C.
3200 Bristol Street, Suite 650
Costa Mesa, CA 92626
Telephone: (949) 614-5830
Facsimile: (949) 271-4190
Email: aashish@desai-law.com

Attorneys for Plaintiffs and the
Proposed Class