Patrick Sweeney
SBN 593486
750 South Dixie Highway
Boca Raton, FL 33432
Tel. 561-395-6000
Fax. 561-395-9093

**Attorney for Objector**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALLISON GAY, SANDAHL NELSON, MOLLY MARTIN and GENEVIEVE GAMEZ, On Behalf of Themselves and All Others Similarly Situated<br><br>Plaintiffs,<br><br>vs.<br><br>TOM'S OF MAINE, INC.,<br><br>Defendant. | Case No. 14-cv-60604-KMM<br><br>**CLASS ACTION**<br><br>**OBJECTION OF DAWN WEAVER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: January 28, 2016<br>Time: 11:00 a.m.<br>Judge: Hon. K. Michael Moore<br><br>Action filed: March 7, 2014<br>Trial date: None Set |

Dawn Weaver objects to the proposed settlement. Ms. Weaver is a member of the class and her claim number is 164997. Ms. Weaver's address is 208 Via Morella, Encinitas California, 92024. Her phone number is (858) 829-3659 and her email is Weavdm@gmail.com.  Ms. Weaver has filed a claim, claim ID 164997

## I.    THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement.  *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130, 133 (2008).  In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement because the court was not "provided with basic information about the nature and magnitude of the

1   claims in question and the basis for concluding that the consideration being paid for the release of those

2   claims represents a reasonable compromise." *Id.* at 133.  In *Clark v. American Residential Services*

3   *LLC, et al*., 175 Cal.App.4th 785 (July 6, 2009), the Second Appellate District Court of Appeal

4   reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient

5   information to make a determination as to the fairness of a settlement.

6     *Kullar* further explains that, despite a presumption of fairness for class action settlements

7   negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the

8   court must independently and objectively analyze the evidence and circumstances before it in order to

9   determine whether the settlement is in the best interests of those whose claims will be extinguished.'"

10   *Kullar, supra*, 168 Cal.App.4th at p. 130.

11     California courts have also held that the court has a duty, independent of any objection, to assure

12   that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper,

13   and may not act as a rubber stamp for the parties' agreement.  *In re Consumer Privacy Cases*, 175 Cal.

14   App. 4th 545, 96 Cal. Rptr. 3d 127 (2009). The Court should decline to grant final approval to this

15   proposed class action settlement. Class counsel seek to reap over one million dollars in fees while

16   keeping class members in the dark as to the existence of their so-called "clear-sailing" agreement. *In re*

17   *Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 947 (9th Cir.2011).

18     According to the settlement proponents, ninety-seven to ninety-nine percent of Class

19   members are excepted to take a pass on participation, less than half the weighted average claims filing

20   rates for consumer settlements. The settling parties offer no suggestions to improve the expected claims

21   rate through, for example, reconfiguration of notice or revamped administration procedures.

22     The settling parties ensnared class members with convoluted claims process and

23   misleading settlement notice, ensuring the real beneficiary of this settlement is the liberal advocacy

24   behemoth, "Consumer [sic] Union"[1] along with Class counsel. Consumers Union is not shy about

25   weighing in on controversial political matters. However, this objection does not take issue with

---

[1] The correct name of the organization is "Consumers Union," not "Consumer Union." The incorrect spelling in the proposed settlement agreement confirms the *cy pres* beneficiary met little rigorous analysis by the settling parties.

1   Consumers Union right, guaranteed by the Constitution, to pursue whatever political or social policies it

2   finds appropriate. By the same token, class members have Constitutional rights as well; they may not be

3   compelled to fund political advocacy of any stripe. Put even more simply, Consumers Union free speech

4   should not be underwritten by the class.

5      Seemingly arbitrary in nature or even an attempt to limit Class Member's rights, the

6   claims period is to remain open until May 7, 2016. The final approval hearing occurs on January 28,

7   2016. If the claims period is to remain open until May 7, 2016, then why the rush? Given the existing

8   time schedule order makes it virtually impossible for the Court to ascertain precise individual recoveries,

9   let alone, assess accurate claims data or analyze how much class money is to be misdirected to political

10  speech.

11     The Court has a choice. It can, as urged by the settling parties, close its eyes to reality,

12  defer to settling counsel and reflexively adopt the unsupportable notion that this settlement provides a

13  benefit to class members. Or it can, as required by Fed. R. Civ. P. 23, scrutinize the facts, closely inspect

14  the terms of settlement, and demand

15  **II. ARGUMENT**

16   **A. Notice is Inadequate**

17    Class Counsel's Notice, does not inform Class Members of either the nature of the legal rights

18  they are releasing or the remedies available for violations of those legal rights.  Further, the Notice fails

19  to disclose Consumers Union as the *cy pres* beneficiary. The Proposed Settlement Agreement ("P.S.A.")

20  A substantive requirement of the Long Form Notice includes that it "explain the cope of the release."

21  The Release merely states as to the release: "In return for these benefits, what am I giving up? If the

22  Court approves the proposed settlement and you do not request to be excluded from the Class, you must

23  release (give up) all claims that are subject to the Relase, and the case will be dismissed on the merits

24  and with prejudice. **If you remain in the Class, you may not assert any of those claims in any other**

25  **lawsuit or proceeding. This includes any other lawsuit or proceeding already in progress.**

26     The scope of the release is not discussed. The Notice provides, "The Claims

27  Administrator's determination [on a claim] is final. Neither you nor Tom's can appeal or contest the

28

decision of the Claim Administrator." The P.S.A. does not preclude appeal. On the contrary, the Court expressly retains jurisdiction as to the implementation and enforcement of the terms of the Agreement.

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement.  Class Counsel have not identified the operative Complaint or included their Motion for Final Approval.  Identifying which Complaint is the Operative Complaint would inform Class Members about what the claims are and what they are releasing.  Instead they can only speculate which is unacceptable.

A notice may not be misleading. The notice is misleading. It violates due process and Fed. R. Civ. Proc., Rule 23. *Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 952 (Notice is not adequate if it misleads the class); *In re Motor Fuel Temperature Sales Practices Litig.,* 286 F.R.D. 488, 504 (D. Kan. 2012) (denying approval where *cy pres* beneficiaries were not designated.

B. **The Class Benefit is Minimal**

A Settlement Class Member is eligible to obtain up to or greater than $4.00 for each purchase of a Covered Product for up to seven (7) Covered Products. Covered Products include a variety of personal hygiene products, including, deodorant, soap, sunscreen, lip balm, etc. The P.S.A. offers token injunctive relief. If the total amount of timely, valid and approved eligible Claims submitted results in there being any remaining value in the Net Settlement Fund, it shall be used to increase the relief of up to one hundred percent.

C. **Attorneys' Fess and Named Class Awards are Inappropriate**

Class Counsel is seeking attorneys' fees of up to $1,035,000.00 and expenses not to exceed $50,000.00. The named plaintiffs are seeking an amount not to exceed $2,000.00 each. Both amounts are to be paid before the Class Members are to be paid and perhaps be paid even where the Class Members do not recover at all. The Settlement Fund is 4.5 million, after the requested attorneys' fees, expenses, administration costs, costs to send notices, costs to maintain the website, taxes, etc. the Settlement Fund could be be depleted down to next to nothing. This case has not been ongoing for even two years. Discovery has been minimal, if anything. The motion practice has been very minimal. The Notice does not state how the attorneys' fees are projected or what costs have occurred. To think that

Class Counsel and the named Class Members could be considered stewards for the Class Members where the awards are so disproportionate is hardly plausible.

**D. *Cy Pres* Beneficiary is Consumers Union**

Any amount remaining after distributions in the Net Settlement Fund shall, subject to Court approval, be paid to Consumers Union. There is no way to know, at the time of final approval, precisely how much money, if any, Consumers Union shall receive.  Consumers Union has an untapped $150 million war chest, making it the least likely candidate to be selected if based on need alone. The related website of Consumers Union, ConsumerReport.org claims more paid subscribers than any other publication based website. However, most of its information is available only to paid subscribers. How class members fit into this subscription base is unknown. What benefit the class shall gain is also unknown. Consumers Union has used its resources to push for politically divisive issues; including endorsing the Affordable Care Act. It leadership is decidedly left. This Court should be hesitant to allow Class proceeds to be directed to political advocacy which is precisely what Consumers Union does.

Further, when possible monies recovered in class actions should go directly to the class members themselves. It is inappropriate for a settlement to pay out all or nearly all of the money in *cy pres* distributions when it is possible to distribute signification sums to the class members themselves. It is also, not appropriate, for the settling parties to attempt to direct *cy pres* distributions to personal favorite charities (such as one's alma mater) or political advocacy organizations that have no relationship to the issues addressed by the underlying lawsuit. Here, because the Notice is insufficient, the proposed settlement agreement is over 200 pages long any many class members will not be afforded an opportunity to object before the final hearing, most of the funds will go to Class Counsel and *cy pres* beneficiaries the P.S.A. is inappropriate.

**E. Settlement class cannot be certified**

"Class action settlements are different from other settlements." *In re Dry Max Pampers Litig.,*724 F.3d 713 (6th Cir. 2013).[2] "[I]n class action settlements the district cannot rely on the

---

[2] "The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contracts, class action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And this there is

1    adverbial process to protect the interests of the persons most affected by the litigation—namely, the

2    class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially,

3    class counsel, to protect those interests. And that means the courts must carefully scrutinize whether

4    those fiduciary obligations have been met. *Id.* at 718.

5         Aside from trial manageability concerns, that burden is no lighter when the Court is confronted

6    with a settlement only class certification. In fact, the specifications of rule Rule23(a) and (b)(3) are

7    "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand to

8    protect absentees by blocking unwarranted or overboard class definition" and "demand undiluted, even

9    heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

10   (1997). Rule 23(b)(3) requires the parties to demonstrate the superiority of the class action device for

11   adjudication of class members' claims. Further, where "individual distributions to class members are not

12   feasible" because class members "cannot be identified through reasonable effort," "individual damages

13   would be if not impossible to calculate" and "individual distributions would be too small to be

14   economically viable," certification is not appropriate.

15        No matter how slim the possibility of attaining, for example, statutory damages, that possibility

16   is superior to releasing those claims for no or little compensation.  See *Brown v. Wells Fargo & Co.,* No.

17   11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262, at *16-*17 (D. Minn. Dec. 30, 2013) (concluding

18   that superiority was not satisfied where individuals would be "entitled to between \$100 and \$1,000

19   dollars in statutory damages" in successful individual litigation, but only \$55 as a class member).

20   **III.    WRITTEN OBJECTION REQUIREMENTS INAPPROPRIATE**

21        The proposed requirements of objectors to include "the name and case number of all objections

22   to class action settlements made by you in the past five (5) years" is inappropriate and harassing. There

23

24

25   _____

26   always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize
     their own." *Pampers,* 724 F.3d at 715. "Because class actions are rife with potential conflicts of interest between class counsel
27   and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed
     settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v.*
28   *Fleet Mortgage Corp.,*356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect
     the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992).

Objection of Dawn Weaver to Proposed Settlement and Notice of Intent to Appear

1   is absolutely no basis in law or in policy of requiring such information. Therefore, Ms. Weaver objects

2   to said proposed requirement.

3 **IV.     JOINDER IN OTHER OBJECTIONS**

4         Ms. Weaver joins in, adopts and incorporates by reference as though fully stated herein each

5   objection by other class members which are not inconsistent with these objections.

6 **V.     CONCLUSIONS**

7         For the foregoing reasons and all others at oral argument, these objectors request that the court

8   sustain their objections and grant the following relief:

9     •  Upon proper hearing, sustain these Objections.

10     •  Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent

11        unfairness, inadequacies and unreasonableness of the Settlement.

12     •  The Court should deny final approval to Settlement Agreement.

13

14

15

16                              Respectfully Submitted,

17

18                              /S/ Patrick Sweeney

19                              Patrick Sweeney
                                 Attorney for Objector Dawn Weaver

20

21

22

23

24

25

26

27

28

Objection of Dawn Weaver to Proposed Settlement and Notice of Intent to Appear